45. The Miller Property is subject to the NITU but does not include property that is subject to the February 2007 Order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate a Trail Use Agreement.

**The United States of America**

46. The Defendant is the United States of America.

**The Named Plaintiffs Seek To Represent Other Similarly Situated Cochise County, Arizona Property Owners**

47. The Plaintiffs bring this action in their individual capacity as property owners whose land has been taken by the federal government and also as a class action as representative parties on behalf of themselves and all other similarly situated landowners who own property in Cochise County, Arizona subject to the NITU.

48. To the best of Plaintiffs' information and belief, there are more than one hundred (100) other landowners along the approximately Seventy-Six (76) mile length of abandoned right-of-way described in the NITU who hold fee title to property for which their state law "reversionary" property rights were forestalled and, for some, their property is now subject to an easement for recreational trail use and possible future railroad use by reason of the NITU.

49. There are questions of law and fact common to the class; Plaintiffs' claims are typical of the claims of the class; and Plaintiffs will fairly and adequately protect the interests of the class.

## THE TRAILS ACT IS A TAKING OF THE PLAINTIFFS' PROPERTY BY THE FEDERAL GOVERNMENT

50. Part of the property owned in fee by each of the Plaintiffs was formerly subject to an easement for railway purposes. This railroad easement provided that the El

Paso and Southwestern Railroad could use the designated portion of the Plaintiffs' land for the purpose of operating an active railroad.

51. The easement did not provide the El Paso and Southwestern Railroad, or any other person or entity, the right to use the Plaintiff's property for a public access recreational trail.

52. It is long-settled Arizona law that a grant of property to a railroad for a right-of-way is not a grant of fee title but only an easement for use of the property to operate a railroad. Should the railroad abandon operation of the railroad on the right-of-way the property "reverts" to the fee owner. *Atlantic & Pacific Railroad Co. v. Lesueur*, 2 Ariz. 428, 19 P. 157 (1888) and *Boyd v. Atchison, T.& S. F. RY. Co*, 39 Ariz. 154, 4 P 2d 670 (1931).

53. The railroad easement was expressly limited to use of the property "as and for a right-of-way for [the El Paso and Southwestern] Railroad" for the purpose of operating an active railroad.

54. Under the terms of the relevant easement and under Arizona law, when the railroad abandoned operation of a railroad over the property, the easement was abandoned and the Plaintiffs' regained the right to use and possess their property free of any easement.

55. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes" 16 U.S.C § 1247 (d).

56. On October 17, 2005, the SPROC filed a Petition for Exemption under 49 C.F.R. § 10502 with the Surface Transportation Board ("STB") seeking authorization to abandon railroad service over the 76.2 mile long San Pedro Railroad corridor.

57. On January 27, 2006 the Trust for Public Land ("Trust") submitted a request for public use condition and for issuance of a NITU. The Trust at that time also submitted a statement of willingness to assume financial responsibility for the right-of-way and acknowledged that use of the right-of-way is subject to future reconstruction and reactivation for rail service as required under 49 CFR 1152.29.

58. The Trust is a national, nonprofit, land conservation organization. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. The Trust does not possess the legal authority to operate a railroad in Arizona.

59. On July 20, 2006, SPROC filed a letter with the STB indicating its willingness to enter into trail use negotiations previously requested by the Trust under section 8(d) of the Trails Act.

60. On July 25, 2006 the STB issued an NITU for the "approximately 76.2 miles of railroad line in Cochise County, AZ, as follows: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, a distance of 5.6 miles; and (2) the Douglas Branch (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, a distance of 9.2 miles, (b) between milepost 1055.8 near Charleston and milepost 1097.3 near Paul Spur, a distance of 41.5 miles, and (c) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, a distance of 19.9 miles."

61. The SPROC had ceased and abandoned use of this property as a railroad corridor for the operation of any trains or other aspect of operating a railroad which, under applicable Arizona state law and the terms of the easement instruments, meant that the underlying fee owners' property was no longer burdened by any easement for railroad use.

62. The SPROC has removed the rails and ties from the former right-of-way.

63. The Plaintiffs property had never – at any time – been subject to an easement allowing the public to use the Plaintiff's property for a recreational trail.

64. The Plaintiffs' property has never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

65. Under Arizona law, the railway easement across Plaintiffs' and the class members' property was extinguished when the SPROC abandoned use of the property for railroad purposes.

66. The federal government, through operation of the Trails Act and issuance of the NITU has: (a) forestalled or taken the Plaintiffs state law "reversionary" right to their property; (b) appropriated an easement for interim public recreational trail use, and (c) appropriated an easement for potential future railroad reactivation across the Plaintiff's property and has taken from the Plaintiffs' the right they enjoy under Arizona law to the exclusive use and physical occupation of their land.

67. Pursuant to the decision of the Federal Circuit in *Caldwell v. United States,* 391 F.3d 1226 (Fed. Cir. 2004) and *Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006), the taking of the Plaintiff's property occurred when the STB issued the NITU on July 25, 2006.

68. On February 12, 2007 the STB issued an order providing that, as of February 14, 2007, the negotiating period for the railroad and Trust for Public Land to reach a Trail Use Agreement was extended, but this extension applied to only a portion of the former SPROC right-of-way that was subject to the NITU. Specifically, the negotiating period was extended for that portion running from Curtiss on the north through the intersection of the abandoned railroad right-of-way and state Highway 92.

69. The United States has neither instituted any condemnation proceeding against Plaintiffs or the other class members, nor paid nor offered to pay the Plaintiff's for the property it has taken from them.

## SPECIFIC CLAIMS FOR RELIEF

### COUNT ONE

**A Claim For "Just Compensation" For The Permanent Physical Taking Of The Lindsey Family's Property And Those Similarly Situated Land Owners Whose Property Is Subject To The NITU And Also Subject To The STB's Order Extending The Negotiating Period For A Trail Use Agreement To Be Reached.**

70. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraph 69 of this complaint.

71. The Fifth Amendment to the Constitution of the United States, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

72. The Fifth Amendment prohibits the United States from taking private property from a citizen without paying that citizen "just compensation".

73. The Fifth Amendment requirement of paying "just compensation" to a property owner from whom the government takes property includes the obligation of the

government to pay the property owner: (a) the fair market value for the property taken as of the date it was appropriated by the federal government – this fair market value includes not only the value of the land actually physically confiscated but also any "severance damages" or loss in value to the property owner's entire parcel caused by the government's taking, (b) payment of an additional amount of delay damages necessary to compensate the property owner for the government's delay in paying compensation.

74. The Tucker Act, 28 U.S.C. § 1491(a)(1) which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

75. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)(2000) provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

76. The actions of the United States have resulted in the taking of Plaintiffs' and the class members' property, by reason of the direct physical taking of Plaintiffs' and the class members' property and by reason of the damage to Plaintiffs' and class members' remaining adjacent property which has suffered a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into smaller separate parcels by the easement for trail use.

## SPECIFIC RELIEF REQUESTED

Plaintiffs respectfully request a judgment in favor of Plaintiffs:

1. Certifying that this action may be maintained as a class action;

2. Awarding Plaintiffs' the full fair market value of the property taken by the government on the date it was taken (including any "severance damages" suffered by the Plaintiff in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking);

3. Compensation for the delay between the date of the government's taking of the Plaintiffs' property (which is the date of the original NITU according to the Federal Circuit's opinion in *Caldwell v. United States,* 319 F.3d 1226 (Fed. Cir. 2004)) and the actual date when the government finally pays "just compensation" to the Plaintiffs';

4. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)(2000) which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

**COUNT TWO**

**A Claim For "Just Compensation" For The Temporary Taking Of Plaintiffs' Property By Reason Of The NITU Forestalling Plaintiff's And Similarly Situated Property Owners State Law "Reversionary" Right To Their Property**

77. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1-76 of this complaint.

78. The Plaintiff's, as fee owners of the property would have enjoyed the right to possess and occupy their property under Arizona law on July 2006 but for operation of the Trails Act.

79. According to the United States Court of Appeals for the Federal Circuit, the STB's issuance of the NITU had the effect of suspending the railroad's abandonment and blocking the landowners state law "reversionary" interests from vesting "entitling the Plaintiff's to institute an action" for a taking of their property. See, *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006).

80. For those property owners whose land was subject to the NITU but whose land is not part of the right-of-way that was described in the February 2007 order of the STB extending the Trail Use Agreement negotiating period, the federal government must pay "just compensation" for that period of time during which the STB's issuance of a NITU blocked or forestalled these property owner's "state law reversionary property interests".

81. The Fifth Amendment to the Constitution of the United States, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

82. The Fifth Amendment prohibits the United States from taking private property from a citizen without paying that citizen "just compensation".

83. The Fifth Amendment requirement of paying "just compensation" to a property owner from whom the government takes property includes the obligation of the government to pay the property owner: (a) the fair market value for the property taken as of the date it was appropriated by the federal government – this fair market value includes not only the value of the land actually physically confiscated but also any "severance damages" or loss in value to the property owner's entire parcel caused by the

government's taking, (b) payment of an additional amount of delay damages necessary to compensate the property owner for the government's delay in paying compensation.

84. The Tucker Act, 28 U.S.C. § 1491(a)(1) which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

85. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)(2000) provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

86. The actions of the United States have resulted in the taking of Plaintiffs' and the class members' property, by reason of the NITU forestalling the property owners' state law "reversionary" rights to their property.

## SPECIFIC RELIEF REQUESTED

Plaintiffs respectfully request a judgment in favor of Plaintiffs:

1. Certifying that this action may be maintained as a class action;

2. Awarding Plaintiffs' the full fair market value of the property taken by the government for that period of time that the Plaintiff's state law "reversionary" interests were forestalled by reason of the NITU and Trails Act.

3. Compensation for the delay between the date of the government's taking of the Plaintiffs' property (which is the date of the NITU according to the Federal Circuit's opinion in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004)) and the actual date when the government finally pays "just compensation" to the Plaintiffs';

4. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c) (2000) which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

## COUNT THREE

### A Claim For Declaratory Judgment Pursuant To The Declaratory Judgment Act, 28 U.S.C. §2201, For The Ladd And Miller Families And Similarly Situated Property Owners.

87. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1- 86 of this complaint.

88. The Plaintiff's, as fee owners of their property would have enjoyed the right to possess and occupy their property under Arizona law but for the STB's issuance of the NITU and operation of the Trails Act.

89. According to the United States Court of Appeals for the Federal Circuit, the STB's issuance of the NITU in July 2006 had the effect of suspending abandonment and blocking the landowners state law "reversionary" interests from vesting "entitling the Plaintiff's to institute an action" for a taking of their property. See, *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006).

90. For those property owners whose land was subject to the NITU but whose land is not subject to that part of the abandoned right-of-way for which the STB extended the negotiating period for the SPROC and Trust for Public Land to reach a Trail Use Agreement, they regained their state law "reversionary" rights free of any easement for

recreational trail use and free of any easement for future or reactivated railroad use upon expiration of the negotiating period which occurred on January 22, 2007.

91. The NITU has clouded these Plaintiff property owner's title.

## SPECIFIC RELIEF REQUESTED

Plaintiffs respectfully request a judgment in favor of Plaintiffs:

1. An Order of this Court declaring that the Ladd Property and the Miller Property (and that land owned by similarly situated property owner's whose land was subject to the NITU but for which the negotiating period was not extended by the February 14th Order) is: (a) free of the STB jurisdiction as of January 22, 2007, (b) the Trails Act did not create an easement for recreational trail use and did not preserve or "railbank" this portion of the railroad corridor for possible future reactivation as a railroad right-of-way; and (c) this property is now free of any easement for a trail or railroad.

2. Such further relief as this Court may deem just and proper.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: April 27, 2007

By: ______________________________

Mark F. Hearne, II
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiffs