**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JACK LADD and MARIE LADD, et al., Plaintiffs, v. THE UNITED STATES OF AMERICA, Defendant. | No. 07-271 L<br>Honorable Robert H. Hodges, Jr. |

**[PROPOSED] CLASS CERTIFICATION ORDER**

## I. INTRODUCTION

On October 15, 2007, counsel for the Plaintiffs filed a Motion to Certify Class Action Pursuant to Rule 23 RCFC. See Pls. Class Cert. Mot. (Doc. No. 19). Specifically, Plaintiffs requested this Court to certify an opt-in class of "fee owners of property located in Cochise County, Arizona." Pls. Class Cert. Mem. (Doc. No. 21) at 1. Plaintiffs seek to bring the class action as "representative parties on behalf of all other landowners holding title to property in Cochise County, Arizona whose property has [allegedly] been taken or damaged as a result of the conversion of their property to a public-use recreational trail pursuant to the National Trails System Act and that Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on July 25, 2006 . . . ." Pls. Class Cert. Mot. at 1. The United States did not oppose the granting of this motion. See Def. Resp. to Mot. to Certify Class (Doc. No. 24).

"The court must – at any early practicable time – determine by order whether to certify the action as a class action." RCFC 23(c)(1)(A). This Court will only certify a class action

where the strictures of RCFC 23 have been met. This Court's rules permit only opt-in class certifications, not opt-out classes. See, e.g., RCFC 23 committee Notes to 2002 Revision. If the Court grants a motion for class certification, it must simultaneously "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)." RCFC 23(c)(1)(B).

As discussed below, the Court grants Plaintiffs' Motion to Certify Class.

## II. ANALYSIS OF RULES 23(A) AND (B)

### A. The Prerequisites of Rule 23(a) are Satisfied

The Court may grant a motion to certify a class only when the prerequisites to a class action have been met:

> **Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). As discussed below, the Court is satisfied as to each of these elements.

First, this Court will grant a motion for class certification only when the potential class "is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Based on Plaintiffs' representations drawn from an initial review of the records of the Cochise County Tax Assessor and Recorder of Deeds, Plaintiffs estimate that there are approximately 100 individuals or entities who owned property abutting or underlying the subject railroad corridor on July 25, 2006. Pls. Class Cert. Mem. at 13. This number of potential class members satisfies the numerosity requirement.

Second, class certification is appropriate only when there are questions of law or fact

common to the class. See RCFC 23(a)(2). The principal legal issue in this case is whether the STB's issuance of a NITU on July 25, 2006 resulted in an unconstitutional taking under the Fifth Amendment. The primary question of law, therefore, is common to all class members. The Court recognizes that in order to address this primary legal issue, the parties will have to address several sub-issues, including: (1) What interest did the El Paso and Southwestern Railroad, the predecessor in interest of the San Pedro Railroad Operating Company, LLC ("SPROC"), obtain in the early 1900s when it acquired this right-of-way; (2) what was the effect of the STB's issuance of the July 25, 2006 NITU on the railroad's interest; and (3) did the class members own a compensable property interest on July 25, 2006. Resolution of these issues will require attention to the specific facts relevant to any individual class member.

Third, the Court may grant a motion for class certification only if the claims of the representative parties are typical of the claims of the class. See RCFC 23(a)(3). The named Plaintiffs and class members allege similar legal claims. Specifically, the representative parties allege that the STB's issuance of the July 25, 2006 NITU effected a taking of their property in violation of the Fifth Amendment to the United States Constitution. Although there may specific factual differences among class members, the Court is satisfied that the claims of the representative parties are typical of the claims of the class.

Fourth, class certification is permitted only if the Court is satisfied that the representative parties will fairly and adequately protect the interests of the class. See RCFC 23(a)(4). The Court is aware of no facts that might raise a potential conflict of interest between the named Plaintiffs and potential class members. Accordingly, the Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

### B. The Requirements of Rule 23(b) are Satisfied

In addition to satisfying the prerequisites set forth in Rule 23(a), Plaintiffs must also show that the requirements of Rule 23(b) have been satisfied:

> **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or failed to act on grounds generally applicable to the class; and (2) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of the class action.

As discussed below, the Court is satisfied as to each of these elements.

First, the Court finds that the United States acted on grounds generally applicable to the named Plaintiffs. Plaintiffs' claims, like those of the potential class members, relate to the STB's issuance of the July 25, 2006 NITU. The United States' act, therefore, is generally applicable to the proposed class members. See RCFC 23(b)(1).

Second, the Court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that class action is the superior method of resolving this controversy. The three legal issues presented above in the analysis of RCFC 23(a)(2) will be the predominate questions this court needs to answer in adjudicating this matter on behalf of all class members. It follows that the commonality requirement of RCFC 23(b)(2) is satisfied.

Finally, also pursuant to RCFC 23(b)(2), the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The superiority requirement is met where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Barnes v. United States, 68 Fed.Cl. 492, 499 (2005) (quoting Fed.R.Civ.P. 23 advisory committee notes (1966 amendment)). Class certification is clearly a superior method of adjudicating the claims of this class because, according to Plaintiffs' estimates, the number of potential class members is approximately 100. A scenario where these approximately 100 individuals or entities either seek to join a lawsuit or initiate their own separate lawsuits to remedy their claims would undoubtedly involve the expenditure of more time, effort and expense by the United States and the potential plaintiffs than will be necessary if this matter proceeds as a class action.

What remains, then, is for this court to determine that the class vehicle will promote uniformity of decisions without sacrificing fairness to the potential class members. Id. Treating this matter as a class will promote uniformity of decision because it will obviate the possibility of inconsistent rulings in individually pursued cases. Further, because the class members claims are not adverse to one another, there appears to be very little likelihood that class proceedings in this case will be unfair or cause other undesirable results to the members. For these reasons, the court finds that a class action is the superior method of resolving this case.

## III. ANALYSIS OF RULE 23(C)(B)

In addition to the above findings, an order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g). RCFC 23(c)(1)(B).

### A. Definition of the Class

The class shall consist of those individuals

(1) who, on July 25, 2006, owned property abutting or underlying the approximately 76.2 miles of SPROC railroad line in Cohcise County, AZ, described as follows: (a) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee; (b) the Douglas Branch between milespost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, and between milepost 1055.8 near Charleston and milepost 1097.3 near Paul Spur; and (c) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston;

(2) whose property was allegedly taken in violation of the Fifth Amendment to the United States Constitution as a result of the STB's issuance of the July 25, 2006 NITU; and

(3) who affirmatively opt-into this lawsuit in accordance with the procedures outlined in the Court's Scheduling Order, dated ________.

**B. Definition of the Class Claims**

The class claims a violation of the Fifth Amendment of the United States Constitution resulting from the STB's issuance of the July 25, 2006 NITU. The class seeks just compensation under the Tucker Act, 28 U.S.C. § 1491. The class also claims delay damages from the date of alleged taking (July 25, 2006) and the date the compensation is paid. In addition, the class seeks reimbursement for its attorneys' fees, costs, and expenses of this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§4651-4655.

**C. Identification of Class Issues**

The principal legal issue in this case is whether the STB's issuance of a NITU on July 25, 2006 resulted in an unconstitutional taking under the Fifth Amendment. In order to address this primary legal issue, the parties will have to address several sub-issues, including:

(1) What interest did the El Paso and Southwestern Railroad, the predecessor in interest of the SPROC, obtain in the early 1900s when it acquired this right-of-way?

(2) What was the effect of the STB's issuance of the July 25, 2006 NITU on the railroad's interest?
(3) Did the class members own a compensable property interest on July 25, 2006?

**D. Identification of Potential Defenses**

The United States defenses may include:

(1) the STB's issuance of July 25, 2006 NITU did not result in the taking of any property owned by a specific class member;
(2) the class members did not own a compensable property interest on July 25, 2006; and
(3) the class members were not the owner of any relevant property on the date of alleged taking, July 25, 2006.

**E. Appointment of Class Counsel**

Under RCFC 23(g), this court is tasked with appointing class counsel when it certifies a class action. See RCFC 23(g)(1)(A). To serve as class counsel, an attorney must be able to fairly and adequately represent the interests of the class. See RCFC 23(g)(1)(B). In appointing class counsel, the court must evaluate 1) the work the potential class counsel has done in identifying or investigating potential claims in the action; 2) the potential class counsel's experience handles class actions and claims of the type asserted; 3) the potential class counsel's knowledge of the applicable law; and 4) the resources the potential class counsel will commit to representing the class. See RCFC 23(g)(1)(C)(i).

The Plaintiffs' lead counsel, Mark F. (Thor) Hearne, II, is a member and principle with the law firm Lathrop & Gage L.C.. Mr. Hearne's law firm, Lathrop & Gage L.C., is a large regional law firm with approximately 250 attorneys, and maintains an office in Washington, D.C. Mr. Hearne has more than twenty years of experience in real estate, land use regulation, and related federal and state litigation. Mr. Hearne has practiced before this Court representing property

owners in other Trails Act taking cases. See Miller v. United States, No. 03-2489; Illig v. United States, No. 98-934; The Town of Grantwood Village v. United States, No. 98-176. Two of these cases, Miller and Illig, were certified as class actions in this court and each included claims by approximately 100 landowners. Mr. Hearne's co-counsel, Lindsay S.C. Brinton, an associate at Lathrop & Gage L.C, has experience with rails-to-trails litigation and assisted Mr. Hearne as a law clerk with the litigation of Illig and Miller.

Based on the foregoing, the Court finds that the appointment of Mr. Hearne comports with the requirements of RCFC 23(g) and hereby appoints him class counsel in this matter.

**CONCLUSION**

**IT IS HEREBY ORDERED,** that the Court certifies the class in this matter as defined supra in Section III.A. Notification, identification and closing of the class shall and the filing of dispositive motions shall proceed in accordance with the schedule set forth in the Scheduling Order entered___________________.

_________________________________

Judge Robert H. Hodges, Jr.