**PUBLIC COPY**

No. 03-5152

In the United States Court of Appeals for the Federal Circuit

**WILLIAM B. CALDWELL, III and BEN FRANK BILLINGS, III,**
(for themselves and as representative of a class of similarly situated persons)

RECEIVED
FROM NIGHT BOX
FEB 23 2004
United States Court of Appeals
For The Federal Circuit

Plaintiffs - Appellants,

v.

**UNITED STATES,**

Defendant - Appellee.

Appeal from the United States Court of Federal Claims in 02-CV-1347
Judge Christine O.C. Miller

**BRIEF OF APPELLEE**

FILED
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
FEB 20 2004
JAN HORBALY
CLERK

THOMAS L. SANSONETTI
Assistant Attorney General

JOHN SMELTZER
KRISTINE TARDIFF
KATHRYN E. KOVACS
U.S. Department of Justice
Environment & Natural Resources Division, Appellate Section
P.O. Box 23795 l'Enfant Plaza Sta.
Washington, D.C. 20026
(202) 514-4010

OF COUNSEL:

EVELYN KITAY
Surface Transportation Board
Office of the General Counsel
Washington, D.C. 20423

February 20, 2004

EXHIBIT
1 (Part 1)
tabbies

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I. The CFC held correctly that Caldwell's taking claim accrued when the City and Norfolk Southern reached a trail use agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II. The CFC held correctly that the statute of limitations was not tolled by another pending class action . . . . . . . . . . . . . 25

III. The CFC did not err in its procedural handling of this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

STATUTORY ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

Cases:

Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998) ..... 33,34
Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478 (Fed. Cir. 1994) ..... 16-17,23
American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) ..... 27,29-32
Andrews v. Orr, 851 F.2d 146 (6th Cir. 1988) ..... 31
Basch v. Ground Round, Inc., 139 F.3d 6 (1st Cir.), cert. denied, 525 U.S. 870 (1998) ..... 31
Birt v. STB, 90 F.3d 580 (D.C. Cir. 1996) ..... 4
Block v. North Dakota, 461 U.S. 273 (1983) ..... 35
Boateng v. InterAmerican Unviersity, Inc., 210 F.3d 56 (1st Cir. 2000) ..... 37,38
Caguas Central Federal Savings Bank v. United States, 215 F.3d 1304 (Fed. Cir. 2000) ..... 34
Caldwell v. United States, 57 Fed. Cl. 193 (2003) ..... iii
Cannon v. United States, 338 F.3d 1183 (10th Cir. 2003) ..... 35
Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993) ..... 38
Chicago and N.W. Transp. Co. v. Kalo Brick and Title Co., 450 U.S. 311 (1982) ..... 2
Citizens Against Rails-To-Trails v. Surface Transp. Bd., 267 F.3d 1144 (D.C. Cir. 2001) ..... 6
Cooley v. United States, 324 F.3d 1297 (Fed. Cir. 2003) ..... 21
Creppel v. United States, 41 F.3d 627 (Fed. Cir. 1994) ..... 16
Crown, Cork, & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983) ..... 28,30
Florida Rock Industries, Inc. v. United States, 18 F.3d 1560 (Fed. Cir. 1994) ..... 20
Frazer v. United States, 288 F.3d 1347 (Fed. Cir. 2002) ..... 15,34
Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298 (1999), aff'd 250 F.3d 762 (Fed. Cir. 2000) ..... 27,28
General Electric Co. v. United States, 189 Ct. Cl. 116 (1969) ..... 28
Geo. Knight & Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210 (1st Cir. 1999) ..... 25
Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002) ..... 35

Goos v. ICC, 911 F.3d 1283 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Griffin v. Singletary, 17 F.3d 356 (11th Cir. 1994), cert. denied sub nom. Florida v. Platt, 513 U.S. 1077 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 31
Hart v. United States, 910 F.2d 815 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . 15
Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-36
Irwin v. Department of Veterans Affairs, 498 U.S. (1990) . . . . . . . . . . . . . . . . 36
Jost v. STB, 194 F.3d 79 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18
Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994) . . . . . . 34
Korwek v. Hunt, 827 F.2d 874 (2nd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 31
Kunkes v. United States, 78 F.3d 1549 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . 37
L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527 (Fed. Cir. 1995) . . . . . . . . . . . . 33
LeBlanc v. United States, 50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . 35
Ledford v. United States, 297 F.3d 1378 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . 35
Loeb Industries, Inc. v. Sumitomo Corp., 306 F.3d 469 (7th Cir. 2002) . . . . . . 38
Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . 34
Massachusetts Bay Transp. Auth. v. United States, 254 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
McCall ex rel. Estate of Bess v. United States, 310 F.3d 984 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
McKowan Lowe & Co., Ltd. v. Jasmine, Ltd., 295 F.3d 380 (3rd Cir.), cert. denied, 123 S. Ct. 691 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
National Ass'n of Reversionary Property Owners v. STB, 158 135 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,25
Preseault v. ICC, 494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548 (3rd Cir. 2002) . . . . 37
RHI Holdings, Inc. v. United States, 142 F.3d 1459 (Fed. Cir. 1998) . . . . . . . 34
RLTD Ry. Corp. v. STB, 166 F.3d 808 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . 3,4
Robbin v. Fluor Corp., 835 F.2d 213 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 31
Roche v. District of Columbia, 18 Ct. Cl. 289 (1883) . . . . . . . . . . . . . . . . . . . . 27
Rumsfeld v. Freedom NY, Inc., 346 F.3d 1359 (Fed. Cir. 2003) . . . . . . . . . 26,33
Sage Products, Inc. v. Devron Industires, Inc., 126 F.3d 1420 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,32
Soriano v. United States, 352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . 16
Stephens v. Rheem Mfg., Co., 220 F.3d 882 (8th Cir. 2000) . . . . . . . . . . . . . . . 28
Swisher v. United States, 189 F.R.D. 638 (D. Kan. 1999) . . . . . . . . . . . . . . 25-32
United States v. Dailide, 316 F.3d 611 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . 28

United States v. Middleton, 246 F.3d 825 (6th Cir. 2001) . . . . . . . . . . . . . . . . . 33
[illegible] U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 35
Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc., 278 F.3d 1366
(Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Wyatt v. United States, 271 F.3d 1090 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . 21
Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577
(Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Statutes, Rules and Regulations:

16 U.S.C. 1247(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
28 U.S.C. 1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
28 U.S.C. 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
28 U.S.C. 1295(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
28 U.S.C. 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
28 U.S.C. 2522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
49 U.S.C. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
49 U.S.C. 10101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
49 U.S.C. 10502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,40
49 U.S.C. 10505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
49 U.S.C. 10903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,40
49 U.S.C. 10904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

49 C.F.R. 1152.22(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
49 C.F.R. 1152.27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
49 C.F.R. 1152.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
49 C.F.R. 1152.29(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,23
49 C.F.R. 1152.29(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7
49 C.F.R. 1152.29(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18,22
49 C.F.R. 1152.29(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7
49 C.F.R. 1152.50(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
49 C.F.R. 1152.60(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Miscellaneous:

Fed. R. App. P. 4(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
Pub. L. 94-210, 90 Stat. 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Pub. L. 98-11, Title II, 97 Stat. 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT OF RELATED CASES

Counsel for the United States is unaware of any case that is related to this appeal within the meaning of Federal Circuit rule 47.5. There are, however, approximately twenty cases pending before the federal district courts and the Court of Federal Claims that involve takings claims similar to the claims in this case (*i.e.*, arising out of regulatory actions under Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d)).

## JURISDICTIONAL STATEMENT

The Complaint alleged jurisdiction in the Court of Federal Claims ("CFC") under the Tucker Act, 28 U.S.C. § 1491. JA32. The CFC dismissed the case for lack of jurisdiction on June 30, 2003, JA1, accompanied by a published opinion, Caldwell v. United States, 57 Fed. Cl. 193 (2003), JA2, and denied the plaintiffs' motion for reconsideration on August 11, 2003 in an unpublished order, JA19. Jurisdiction in this Court is based on 28 U.S.C. § 1295(a)(3). The Appellants filed a timely notice of appeal on August 21, 2003. Clerk's Record ("CR") 24; see 28 U.S.C. § 2522; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

The Appellants, William B. Caldwell, III and Ben Frank Billings, III ("Caldwell"), allege that they own property underlying a railroad corridor in Georgia and that the railbanking of that corridor under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d), worked a taking of their property under the Fifth Amendment. The issue on appeal is:

> Whether the CFC held correctly that Caldwell's taking claim was time barred under the federal statute of limitations, 28 U.S.C. § 2501, because it was filed more than six years after the signing of a Trail Use Agreement under the National Trails System Act amendments of 1983 that allowed the railroad corridor on his property to be railbanked and used as a trail.

## STATEMENT OF THE CASE

On June 2, 1995, the Interstate Commerce Commission, acting pursuant to the National Trail System Act Amendments of 1983, 16 U.S.C. § 1247(d), authorized the interim use of the Warm Springs Rail Line in Columbus, Georgia as a trail, contingent upon the rail carrier reaching a trail use agreement with a qualified trail group and subject to the condition that rail service could be restored at any time. By July of 1996, Norfolk Southern Railway Company ("Norfolk

Southern") had entered into such an agreement with the City of Columbus. Caldwell filed a complaint against the United States in the CFC on October 7, 2002, alleging that the railbanking and interim trail use of the corridor constituted a taking under the Fifth Amendment because it preempted his reversionary rights under state law. JA39. The CFC dismissed the case on June 30, 2003, holding it was time-barred because it was filed more than six years after the federal authorization to convert the corridor became effective. JA1. Following the denial of his motion to reconsider, JA19, Caldwell filed a timely notice of appeal. JA24.

## STATEMENT OF FACTS[1]

Statutory Background

Under federal law, the Interstate Commerce Commission ("ICC" or "Commission")[2] has exclusive and plenary authority over the construction, operation and abandonment of virtually all of the nation's rail lines. Chicago and N.W. Transp. Co. v. Kalo Brick and Tile Co., 450 U.S. 311, 319 (1981). Consequently, a rail carrier providing transportation service subject to the

---

[1] We include a full statement of jurisdiction, issues, case, and facts because Appellants' brief is inaccurate and incomplete. See Fed. Cir. Rule 28(b).

[2] The Surface Transportation Board ("STB" or "Board") assumed authority over railroads on January 1, 1996 as the successor agency to the ICC. See 49 U.S.C. § 702. Since the origins of this case predate the ICC's abolition, we refer to the ICC as the relevant agency. See JA3 n.1.

jurisdiction of the ICC may not abandon or discontinue service on any part of its railroad lines without the express consent of the Commission. Id. at 320; 49 U.S.C. § 10903(a)(1). In federalizing this authority, "Congress sought to balance the railroad companies' need to dispose of trackage that was no longer profitable with the public's need for a working interstate track system." RLTD Ry. Corp. v. STB, 166 F.3d 808, 810 (6th Cir. 1999).

In 1976, concerned about the loss of railroad trackage nationwide, Congress passed the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. 94-210, 90 Stat. 144, to promote the conversion to public use, including recreational use, of rail lines that would otherwise be abandoned. See Preseault v. ICC, 494 U.S. 1, 5 (1990). The 1976 Act authorized the ICC to delay disposition of rail lines subject to abandonment for a period of time to allow for the sale of the line for public purposes. Id. at 6. Congress subsequently found, however, that the 1976 Act had not been successful in preserving railroad rights-of-way. Id. Accordingly, in 1983, Congress enacted the National Trails System Act Amendments of 1983 ("Trails Act"), Pub. L. No. 98-11, Title II, 97 Stat. 42, which sought "to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use," as well as to promote the development of recreational trails. Preseault, 494 U.S. at

17-18.

When the ICC authorizes a rail carrier to abandon a rail line and the rail carrier consummates its abandonment pursuant to that authority,[3] the ICC relinquishes jurisdiction and the property interests in the corridor in some circumstances revert to the owner of the underlying fee. See RLTD, 166 F.3d at 811. Section 8(d) of the Trails Act, 16 U.S.C. § 1247(d), provided an alternative known as "railbanking" whereby the ICC retains jurisdiction so that the corridor may be returned to railroad use in the future, but the rail carrier transfers financial and managerial responsibility to a state or local government or qualified private organization, allowing its use in the interim as a trail. Id. at 810-11. Section 8(d) provides that "if such interim [trail] use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). Section 8(d) further provides that "[i]f a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way * * * then the Board * * * shall not permit abandonment or discontinuance inconsistent or disruptive of such

[3] To finalize an authorized abandonment (and terminate ICC jurisdiction), a rail carrier generally must file a notice of consummation of abandonment after ceasing operations and removing equipment. 49 C.F.R. § 1152.29(e)(2); Birt v. STB, 90 F.3d 580, 585 (D.C. Cir. 1996).

use." Id.; see also 49 C.F.R. § 1152.29 (implementing section 8(d)).

A railroad corridor may be railbanked when the rail carrier files either an abandonment application under 49 U.S.C. § 10903 or seeks an exemption under 49 U.S.C. § 10502 (previously 49 U.S.C. § 10505). Section 10903(d) allows the ICC to authorize abandonment or discontinuance if the Board finds that "present or future public convenience and necessity require or permit the abandonment or discontinuance." Section 10502 allows the ICC to exempt a rail carrier from the requirements of section 10903 and other statutory provisions upon a showing that 1) the statutory requirement in question is "not necessary to carry out [general] transportation policy" under 49 U.S.C. § 10101 and 2) the service being exempted is "of limited scope" or the statutory requirement is "not needed to protect shippers from the abuse of market power." 49 U.S.C. § 10502(a).

When a rail carrier has filed an abandonment application or request for an exemption, a party interested in acquiring or using the right-of-way for interim trail use may file a request or petition that includes: (1) a map of the right-of-way, or portion thereof, that is proposed to be acquired or used; (2) a statement of willingness to assume full responsibility for the right-of-way, including management, legal liability, and payment of taxes; and (3) an acknowledgment that interim trail use is subject to the "possible future reconstruction and reactivation of

the right-of-way for rail service." 49 C.F.R. § 1152.29(a).

In exemption proceedings, if the ICC receives a complete railbanking request or petition and if the railroad agrees to negotiate, then the ICC is required to issue a Notice of Interim Trail Use or Abandonment (NITU), providing time for the parties to negotiate an interim trail use/rail banking agreement. 49 C.F.R. § 1152.29(d)(1);[4] see also Citizens Against Rails-To-Trails v. Surface Transp. Bd., 267 F.3d 1144, 1151-53 (D.C. Cir. 2001); Goos v. ICC, 911 F.2d 1283, 1295 (8th Cir. 1990). At the same time, because the railbanking provisions of the Trails Act are voluntary, the ICC cannot require the railroad or any other party to engage in railbanking negotiations. Goos, 911 F.2d at 1295 n.8.

The NITU permits the rail carrier to discontinue service and salvage the track, but delays the effective date of the abandonment of the line for 180 days to allow the rail carrier and the trail group time to negotiate a railbanking and interim trail use agreement. 49 C.F.R. § 1152.29(d)(1). If the parties do not reach an agreement within the time allowed, then the railroad may "fully abandon the line" and terminate ICC jurisdiction generally by filing a notice of consummation with the ICC "to signify that it has exercised the authority granted and fully abandoned

[4] In abandonment application proceedings, the ICC issues a Certificate of Interim Trail Use or CITU. 49 C.F.R. § 1152.29(b)(1)(ii). This case involves an exemption proceeding and NITU.

the line." 49 C.F.R. §§ 1152.29(d)(1), (e)(2); National Ass'n of Reversionary Property Owners v. STB, 158 F.3d 135, 139 & n.7 (D.C. Cir. 1998). On the other hand, if the parties reach an agreement, the NITU automatically authorizes the interim trail user to take over management of the right-of-way, subject only to the right of a rail carrier to reassert control over the property to restore rail service. 49 C.F.R. § 1152.29(d)(2); Preseault, 494 U.S. at 7 n.5 ("If agreement is reached, interim trail use is thereby authorized."); Jost v. STB, 194 F.3d 79, 82 (D.C. Cir. 1999). When a rail corridor is converted to railbanking and interim trail use, it is not abandoned for federal regulatory purposes, but remains subject to the ICC's jurisdiction, thereby preventing any possible reversion of the property interests in the corridor to the owner of the underlying fee under state law. See Preseault, 494 U.S. at 8. Once an agreement is reached, the only way to terminate interim trail use is for the trail user to file a request with the ICC to reopen the exemption proceeding, vacate the NITU, and reinstate the exemption, thereby permitting full abandonment. 49 C.F.R. § 1152.29(d)(2).

Factual Background

The Warm Springs Rail Line in Columbus, Georgia is approximately 10.5 miles long and was originally part of the 97-mile rail line from Columbus to McDonough, Georgia that opened on December 1, 1887. By 1990, Norfolk

Southern owned and operated the line. JA348.

In 1992, the City of Columbus publicly introduced its "Columbus Alternative Transportation System" or "CATS" plan, which included a recommendation to construct pedestrian walkways and bikeways on existing railroad corridors, including the Warm Springs Rail Line. JA350-69. In a letter to Norfolk Southern dated April 19, 1993, the City expressed its interest in obtaining the corridor. JA370-71. On May 5, 1994, Norfolk Southern published in a local newspaper notice of its intent to abandon a portion of the corridor. JA372. The City again expressed its intent to acquire the corridor in letters to Norfolk Southern and the ICC, stating: "Columbus desires it be stated in the public record that the City intends to obtain the proposed rail corridor and convert its use to a multi-modal transportation facility involving walkways, bikeways, and a battery powered trolley." JA373; see also JA374-79.

On July 5, 1994, Norfolk Southern filed with the ICC a notice of exemption under 49 U.S.C. § 10505 (now § 10502) to abandon 7.4 miles of the Warm Springs Rail Line. JA381-88. On July 26, 1994, the ICC issued an order allowing the exemption (and abandonment) effective August 25, 1994, provided, *inter alia*, that no railbanking requests were filed. JA389-90. The City of Columbus requested issuance of a NITU and, in accordance with the ICC's Trails Act regulations,

submitted a map of the corridor and a statement of its willingness to assume financial responsibility, and acknowledged that use of the corridor as a trail would be subject to future reactivation for rail service. JA393-95. After Norfolk Southern indicated its willingness to negotiate an interim trail use agreement with the City, JA391-92, the ICC issued a NITU effective August 31, 1994, JA396-97. The NITU provided in part: "If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented. If no agreement is reached by the 180th day, [Norfolk Southern] may fully abandon the line." JA397.

On February 23, 1995, before the 180-day negotiating period expired, the City and Norfolk Southern jointly requested that the negotiating period be extended another 180 days and that the NITU be expanded to cover an additional 3.2 mile segment of the Warm Springs Rail Line. JA399-401. Norfolk Southern had obtained permission to abandon the 3.2 mile segment years earlier, but had never consummated the abandonment. JA402. Effective June 2, 1995, the ICC extended the negotiating period 180-days from its original expiration date to August 26, 1995 and consolidated the 3.2 mile segment into the proceeding. JA402-3.

On August 17, 1995, Norfolk Southern entered into a Purchase and Sale Agreement with the Trust for Public Land, the organization the City selected to

negotiate the acquisition of the corridor, JA404, by which it sold its interest in the corridor for $1 million, JA408-9. The Agreement stated that the parties intended for the corridor to be used as "a transportation corridor and greenway," JA407, and that the Trust's goal was "to preserve open space and railroad and trail opportunities along the right of way," JA418. The Purchase and Sale Agreement provided for closing within one year, JA415, and permitted the Trust to terminate the agreement, JA420.

On April 30, 1996, the Columbus City Council authorized the purchase of the corridor. JA434. Around the same time, the Purchase and Sale Agreement was amended to acknowledge that the Agreement was subject to section 8(d) of the Trails Act and to provide that after the sale, "the Property shall be used for interim trail use under the terms of the Trails Act, which use shall be subject to future restoration of rail service as provided in the Trails Act." JA425. The Trust and Norfolk Southern amended the agreement again on July 1, 1996 to include Norfolk Southern's consent to the assignment of the Trust's rights and duties under the Agreement to the City. JA428. The Trust assigned its interests under the Purchase and Sale Agreement to the City the following day. JA404-5.

In the July 1, 1996 amendment, the Trust and Norfolk Southern also agreed to (a) join in the City's motion with the STB (successor the ICC) to again extend

the NITU and (b) extend the closing date to the earlier of 75 days after the granting of that motion or December 20, 1996. JA429. In its motion filed on July 5, 1996, the City informed the ICC that a "railbanking agreement has been reached by the parties," but sought to extend the negotiation period under the NITU to November 1, 1996 "to ensure that the railbanking period extends through the actual transfer of the corridor to the interim trail manager * * * and to cover any gaps that may have inadvertently occurred in the railbanking negotiating period." JA440-1. Although the motion was not necessary to satisfy the Trails Act or regulations since Norfolk Southern had not abandoned the line and the STB retained jurisdiction, the Board granted the City's motion effective August 6, 1996. JA446-7.

By quitclaim deed dated October 9, 1996 and recorded October 14, 1996, Norfolk Southern transferred its interest in the corridor to the City, subject to the terms of the NITU and the Trails Act. JA448-53. On November 5, 1996, the City notified the STB that the corridor had been transferred to the City on October 13, 1996. JA454.

Procedural History

Caldwell filed a complaint in the CFC on October 7, 2002, on behalf of the class of people who own land burdened by the railbanked 10.6 miles of the Warm Springs Rail Line. JA32. Caldwell alleged that the United States preempted the

reversionary rights he enjoyed under Georgia law so as to constitute a taking. JA39.

On June 30, 2003, the CFC dismissed the complaint for lack of jurisdiction under 28 U.S.C. § 2501, holding that Caldwell did not file within the six-year statute of limitations for claims in the CFC. JA1. The court held that Caldwell's claim accrued when his property "had been definitely converted to public use." JA8. The court rejected Caldwell's suggestions that his taking claim accrued when Norfolk Southern delivered the deed to the City, finding no support in case law for Caldwell's contention that a taking can only occur with the passing of title and finding it significant that the Trails Act does not require the title to change hands for a rail corridor to be used as a trail. JA8-10.

The court also rejected the United States' contention that Caldwell's taking claim accrued when the ICC issued the NITUs. Examining this Court's en banc plurality opinion in Preseault, the court concluded that a claim filed after the issuance of the NITU but before the identification of "an appropriate public agency to operate the trail" would be premature and that the statute of limitations cannot run on a premature claim. JA12.

Instead, the court held that the statute of limitations began to run on Caldwell's taking claim on July 5, 1996, when the City notified the ICC that it had

reached a trail use agreement with Norfolk Southern. JA17. The court reasoned that "the NITU takes effect only if the right-of-way meets the criteria for abandonment and negotiation of trail use occurs." JA15. It is when the parties reach a trail use agreement that the "taking becomes fixed * * * . Before that date the outcome of the Government action is not certain, so the taking has not been effected." JA17.

The court denied Caldwell's motion for reconsideration on August 11, 2003, holding that a putative class action pending in federal district court in Kansas did not toll the statute of limitations on Caldwell's claim. JA19. Caldwell filed a timely notice of appeal on August 21, 2003. JA24.

## SUMMARY OF ARGUMENT

The trial court held correctly that Caldwell's taking claim accrued when Norfolk Southern and the City reached a trail use agreement, no later than July 5, 1996. It is when the parties reach a trail use agreement (if ever) that the underlying landowner's reversionary rights are preempted by federal law. Since Caldwell filed his complaint more than six years after the parties reached a trail use agreement, the complaint was barred by the statute of limitations in 28 U.S.C. § 2501. Landowners need not wait until a deed changes hands before filing a taking claim challenging the operation of the Trails Act, since the ownership of the rail corridor

is of no consequence under the federal law and a transfer of title does not implicate the United States in any way.

The trial court also correctly denied Caldwell's motion for reconsideration contending that the statute of limitations was tolled during the pendency of a class action in the federal district court in Kansas. Caldwell did not show in his brief on appeal how his motion for reconsideration met the standard of Rule 59(a): there was no intervening change in controlling law and no new evidence that was previously unavailable, and the motion was not necessary to prevent manifest injustice.

Finally, Caldwell's contention that the trial court erred in its procedural handling of this case is to no avail. Caldwell waived this argument by failing to raise it below, and he fails to show on appeal how handling the case as he now suggests would have altered the outcome. In any event, Caldwell is wrong in asserting that the government's motion to dismiss should have been converted to a motion for summary judgment.

ARGUMENT

Standard of Review

The CFC's legal conclusions, including dismissals for lack of jurisdiction, are reviewed de novo. Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir. 2002). The court's factual determinations are reviewed for clear error. Id. The court's denial of Caldwell's motion under Rule 59(a) for reconsideration is reviewed for abuse of discretion. Massachusetts Bay Transp. Auth. v. United States, 254 F.3d 1367, 1378 (Fed. Cir. 2001); Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

**I. The CFC held correctly that Caldwell's taking claim accrued when the City and Norfolk Southern reached a trail use agreement.**

The applicable statute of limitations provides "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The statute of limitations serves the public interest in that it "protects the government from having to defend suits long after the events sued upon have occurred" and "puts an end to the possibility of litigation after a reasonable time." Hart v. United States, 910 F.2d 815, 818 (Fed. Cir. 1990). In holding a claim barred by section 2501, the Supreme Court observed: "We are not unmindful that

the enforcement of this rule might result in hardship in some cases * * * . Such considerations are not for us, as this Court can enforce relief against the sovereign only within the limits established by Congress." Soriano v. United States, 352 U.S. 270, 277 (1957).

A claim accrues "when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action." Creppel v. United States, 41 F.3d 627, 631 (Fed. Cir. 1994). "A claimant under the Fifth Amendment must show that the United States, by some specific action, took a private property interest for a public use without just compensation. Therefore, a claim under the Fifth Amendment accrues when that taking action occurs." Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1481 (Fed. Cir. 1994). Since Caldwell filed his complaint on October 7, 2002, his claim was only timely if the United States' specific "taking action" occurred after October 7, 1996.[5]

In this case, the government's liability (if a taking occurred) was fixed when

[5] At this point in this case, the date of taking must be determined to establish when Caldwell's claim accrued for purposes of the statute of limitations. The question of when the taking occurred, however, also relates to certification of the class in that the class will include only those persons who owned property on the date of taking, and it relates to the amount of compensation and the calculation of pre-judgment interest. Thus, the issue in this case extends beyond the narrow circumstances presented here.