# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JACK LADD and MARIE LADD, et al.<br><br>For Themselves and As Representatives of a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-271L<br><br>Honorable Robert H. Hodges, Jr. |

## PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT

COME NOW, Plaintiffs, by and through their undersigned counsel, and pursuant to RCFC 56 (d)(1) file with this Court their Proposed Findings of Uncontroverted Fact in Support of their Motion for Partial Summary Judgment in favor of Plaintiffs and adverse to and against the U.S. Government on the issue of the federal government's liability for taking the Plaintiffs' property by operation of the Trails Act (16 U.S.C. § 1241) without paying "just compensation" as required by the Fifth Amendment to the United States Constitution. For its Proposed Findings of Uncontroverted Fact Plaintiffs state as follows:

**A. The railroad right-of-way that crossed the Plaintiffs' land was an easement acquired in 1903 by the El Paso and Southwestern Railroad and this easement only allowed the railroad, as holder of the easement, to use the Plaintiffs' land for the operation of a railroad.**

1. The El Paso and Southwestern Railroad acquired its railroad right-of-way by a number of conveyances, both from the United States government as well as from individual landowners. *See* Tabs A-K.

2. The right-of-way grants from the federal government, over public land owned by the federal government, were made pursuant to the General Railroad Right-of-Way Act of 1875 (42 U.S.C. §§ 934-39 (2007)) and the 1906 Act applying the General Railroad Right-of-Way Act to the Territories of Oklahoma and Arizona (42 U.S.C. § 944). Plaintiffs note that this information is derived from the oversized right-of-way survey maps produced by the Defendant. These maps can be made available to the Court if it so desires.

3. The remaining portions of the right-of-way that runs over the Plaintiffs' property were acquired by the following easement conveyances from individual land owners and entities (a true and accurate copy of each referenced easement is attached under its respective Tab referenced in paragraphs 4-14):

a. Easement granted by B.L. Robinson to the El Paso and Southwestern Railroad Company on July 26, 1903, recorded in Deed Book 19, Page 491 in the Cochise County Recorder of Deed's Office.

b. Easement granted by Lydia L. Fike to the El Paso and Southwestern Railroad Company on July 20, 1903, recorded in Deed Book 19, Page 493 in the Cochise County Recorder of Deed's Office.

c. Easement granted by Henry Lee Hardt to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 496 in the Cochise County Recorder of Deed's Office.

d. Easement granted by E.M Fike to the El Paso and Southwestern Railroad Company on July 9, 1903, recorded in Deed Book 19, Page 498 in the Cochise County Recorder of Deed's Office.

e. Easement granted by August Bhomfolk to the El Paso and Southwestern Railroad Company on July 13, 1903, recorded in Deed Book 19, Page 500 in the Cochise County Recorder of Deed's Office.

f. Easement granted by R.L. Benton and W.W. McKim to the El Paso and Southwestern Railroad Company on September 30, 1903, recorded in Deed Book 23, Page 16 in the Cochise County Recorder of Deed's Office.

g. Easement granted by P.J. Fike to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 488 in the Cochise County Recorder of Deed's Office.

h. Easement granted by Phebe A. Hearst to the Arizona and Southeastern Railroad Company (predecessor to the El Paso and Southwestern Railroad Company on April 4, 1893, recorded in Deed Book 14, Pages 38 and 39 in the Cochise County Recorder of Deed's Office.

i. The Bouquillas Land & Cattle Company ("Bouquillas") subsequently acquired an interest in the land that was previously owned by Phebe A. Hearst. On October 18, 1909, Bouquillas conveyed another right-of-way over this land to the El Paso & Southwestern Railroad Company, recorded

in Deed Book 50, Page 69 in the Cochise County Recorder of Deed's Office.

j. "[I]n the year 1911, a relocation and rebuilding of the main line track of said E.P. & S.W.R.R. was undertaken and carried to completion ...requiring additional lands for right-of-way...." *See* Deed Book 60 Page 205, in the Cochise County Recorder of Deed's Office. As such, on September 20, 1911, the Bouquillas Land & Cattle Company conveyed a quitclaim deed to the El Paso and Southwestern Railroad, in Book 53, Page 252 in the Cochise County Recorder of Deed's Office. "[A]t the time of the execution of said quitclaim deed, said parties entered into an agreement that (among other conditions) '5. Any and all portions of the right-of-way of the Railroad Company, within the boundaries of said grant, not included in the right-of-way as relocated, shall be conveyed by the Railroad Company to the Cattle Company by quitclaim deed." *See* Deed Book 60, Pages 205-06 in the Cochise County Recorder of Deed's Office.

k. Accordingly, the El Paso and Southwestern Railroad conveyed fee title, which was originally conveyed by Phebe A Hearst, et al. and the Bouquillas Land & Cattle Company, to the Bouquillas Land & Cattle Company on October 28, 1914, in Book 60 Pages 205-09 in the Cochise County Recorder of Deed's Office, reserving only an easement across the property for operation of a railroad.

4. Tab A represents a true and accurate copy of the easement conveyance granted by B.L. Robinson to the El Paso and Southwestern Railroad Company on July 26, 1903, recorded in Deed Book 19, Page 491 in the Cochise County Recorder of Deed's Office.

5. Tab B represents a true and accurate copy of the easement conveyance granted by Lydia L. Fike to the El Paso and Southwestern Railroad Company on July 20, 1903, recorded in Deed Book 19, Page 493 in the Cochise County Recorder of Deed's Office.

6. Tab C represents a true and accurate copy of the easement conveyance granted by Henry Lee Hardt to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 496 in the Cochise County Recorder of Deed's Office.

7. Tab D represents a true and accurate copy of the easement conveyance granted by E.M. Fike to the El Paso and Southwestern Railroad Company on July 9, 1903, recorded in Deed Book 19, Page 498 in the Cochise County Recorder of Deed's Office.

8. Tab E represents a true and accurate copy of the easement conveyance granted by August Bhomfolk to the El Paso and Southwestern Railroad Company on July 13, 1903, recorded in Deed Book 19, Page 500 in the Cochise County Recorder of Deed's Office.

9. Tab F represents a true and accurate copy of the easement conveyance granted by R.L. Benton and W.W. McKim to the El Paso and Southwestern Railroad Company on September 30, 1903, recorded in Deed Book 23, Page 16 in the Cochise County Recorder of Deed's Office.

10. Tab G represents a true and accurate copy of the easement conveyance granted by P.J. Fike to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 488 in the Cochise County Recorder of Deed's Office.

11. Tab H represents a true and accurate copy of the easement conveyance granted by Phebe A. Hearst to the Arizona and South Eastern Railroad Company (predecessor to the El Paso and Southwestern Railroad Company) on April 4, 1893, recorded in Book 14, Pages 38 and 39 in the Cochise County Recorder of Deed's Office.

12. Tab I represents a true and accurate copy of the easement conveyance granted by the Bouquillas Land & Cattle Company to the El Paso & Southwestern Railroad, on October 18, 1909, recorded in Deed Book 50, Page 69 in the Cochise County Recorder of Deed's Office.

13. Tab J represents a true and accurate copy of the easement conveyance granted by the Bouquillas Land & Cattle Company to the El Paso and Southwestern Railroad on September 20, 1911, in Deed Book 53, Page 252 in the Cochise County Recorder of Deed's Office.

14. Tab K represents a true and accurate copy of the fee title conveyance of the land originally conveyed by Phebe A. Hearst, et al. and the Bouquillas Land & Cattle Company to the El Paso and Southwestern Railroad, back to the Bouquillas Land & Cattle Company on October 28, 1914, in Deed Book 60, Pages 205-09 in the Cochise County Recorder of Deed's Office.

15. These conveyances explicitly state that the easement was granted solely "for a right-of-way of the El Paso & Southwestern Railroad, through, along and over the same" land and that the railroad was "to have and to hold the said tract, pieces and parcels of land and premises, as and for a right-of-way for said railroad." See Tabs A - K.

**B. The Plaintiffs are the successors in title to the original property owners that granted the rights-of-way to the El Paso and Southwestern Railroad. Each Plaintiff held fee title to their property abutting and underlying the former El Paso and Southwestern Railroad right-of-way on July 25, 2006, the date the STB issued a NITU.**

(1) <u>The Ladd Family</u>

16. The Ladd Family originally acquired its property through land patents issued to Marie Ladd's family by the United States government in 1903. One of these land patents was

that issued to Marie Ladd's great aunt, Ella M. Fike, signed by President Theodore Roosevelt and attached as Tab L. This property has remained in the Ladd family since the original land patents.

17. Marie Ladd's family (the Fike's) originally operated a dairy on the property and title was acquired from the United States by Marie Ladd's great aunts and uncles, Ella M. Fike, Lydia L. Fike, P.J. Fike, and E.M. Fike. *See* Tabs B, D, G, and L. Some of the Fike family employees, B.L. Robinson, and August Bhomfolk, also acquired property by land grant. *See* Tabs A and E.

18. Jack and Marie Ladd (the "Ladds"), husband and wife, live on the Ladd Family Ranch, on which they operate a cattle ranch. The Ladds have conveyed their interests in the Ladd Family Ranch to their trust, the John H. Ladd and Marie W. Ladd Trust, on which they serve as the trustees and the beneficiaries. These conveyances into the Ladd Trust are as follows: the Special Warranty Deeds recorded on June 1, 1998 as Fee #980616283 and Fee #980616286 in the Cochise County Recorder of Deed's Office, and the Special Warranty Deed recorded on October 12, 2002 as Fee #021034971 in the Cochise County Recorder of Deed's Office. (A copy of these Special Warranty Deeds are attached respectively as Tab M, N, and O.)

19. Jack and Marie Ladd's son, John Ladd and his wife, Jobeth, also own fee title to a portion of this land. The Warranty Deed by which John and JoBeth Ladd acquired title to this land, recorded on February 2, 1984, as Docket No. 1736, Page 241-243, is attached as Tab P.

20. The entire Ladd Family Ranch, as owned by Jack and Marie Ladd and by John and Jobeth Ladd on July 25, 2006 (the date of the NITU) is shown on the Cochise County Assessors' map which is attached as Tab Q.

21. That portion of the abandoned railroad right-of-way subject to the NITU which burdens the Ladd Property is approximately six (6) miles long and is also shown on the Cochise

County Assessors' Map attached as Tab Q. This abandoned right-of-way passes about 300 feet from the Ladd's home.

22. The Ladd property abuts and underlies the abandoned San Pedro Railroad Operating Company ("SPROC") right-of-way that was subject to the July 25, 2006 NITU, but is *not* subject to the STB's February 2007 Order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate a Trail Use Agreement. (*See* Tabs M-Q).

(2) <u>The Lindsey Family</u>

23. In 1962, William Lindsey and his brother, Howard Lindsey, and Howard Lindsey's wife, Helen, acquired fee title to more than 60 acres of property in Cochise County, Arizona (the "Lindsey Property"). (A copy of the Warranty Deed by which the Lindseys's acquired title to this property is attached as Tab R.)

24. The location of the Lindsey Property is just south of Charleston, Arizona and is shown on the attached copy of the Assessor's maps attached as Tab S.

25. William Lindsey still holds title to his interest in the Lindsey Property individually (*See* Tab R, Lindseys's Warranty Deed).

26. Howard and Helen Lindsey transferred their interest in the Lindsey Property to the Harold A. Lindsey Revocable Trust ("Lindsey Trust"). On October 30, 2002, the Lindsey Trust conveyed this property to Harold Lindsey's three children, Michael A. Lindsey, Gail A. Lanham, and James A. Lindsey, by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on November 13, 2002 as Fee #021136305. (*See* Tab T, a copy of the Quitclaim Deed conveyed by the Harold A. Lindsey Revocable Trust to Harold Lindsey's three children individually).

27. Currently, Harold Lindsey's three children, Michael A. Lindsey, Gail A. Lanham, and James A. Lindsey, each hold an undivided one-third fee interest in the Lindsey property that was originally acquired by their parents in 1962 (*See* Tabs R and T).

28. The Lindsey family's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and the STB's February 2007 Order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate a Trail Use Agreement. (*See* Tabs R and T).

(3) The Charles Miller Family

29. Charles Raymond Miller and Pauline Miller, husband and wife, individually and through their revocable trusts (the "Charles Miller Family") acquired fee title to a number of parcels of separately described property in Cochise County, Arizona, by the following deeds: that Warranty Deed recorded in the Cochise County Recorder of Deed's Office on October 13, 1999 as Fee #991031019; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000411149; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000411150; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000513793; and by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on August 1, 1986 as Fee #868816356 (A copy of these deeds by which the Charles Miller Family acquired their property are attached respectively as Tabs U, V, W, and X).

30. The Charles Miller Family's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU, but which is *not* subject to the February 2007 order extending the negotiating period for the Trust for Public Land and the

SPROC to negotiate Trail Use Agreement. (*See* Tabs U, V, W, and X, Charles Miller Family's deeds).

(4) Valentin and Deborah Ann Castro

31. The Valentin Castro III and Deborah Ann Castro Revocable Trust, Valentin and Deborah Castro Trustees ("Castros"), acquired fee title to property in Cochise County, Arizona, by that Quit Claim Deed recorded in the Cochise County Recorder of Deed's Office on January 3, 2006 as Fee #080100088. (A copy of the Quit Claim Deed by which the Castros acquired their property is attached as Tab Y).

32. The Castros property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (*See* Tab Y, Castros' Quit Claim Deed).

(5) Singletree Ranch

33. John S. and Mary E. Gay ("Gays"), husband and wife, owned fee title to property in Cochise County, Arizona. The Gays transferred title to the property to Singletree Ranch, LLC, the beneficial ownership of which is held by John and Mary Gay and other members of the Gay family, by Gift Deed recorded with the Cochise County Recorder of Deed's Office on January 1, 2005 as Fee #010100416. (A copy of the Gift Deed by which the Gays conveyed their property to Singletree Ranch, LLC, is attached as Tab Z).

34. The Singletree Ranch property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (*See* Tab BB, the Singletree Ranch's Gift Deed).

(6) Joseph Lawrence Heinzl

35. Joseph Lawrence Heinzl owns fee title to property in Cochise County, Arizona by that Warranty Deed recorded with the Cochise County Recorder of Deed's Office on July 23, 1999 as Fee # 990722817. (A copy of the Warranty Deed by which Mr. Heinzl acquired his property is attached as Tab AA).

36. Joseph Lawrence Heinzl's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (*See* Tab AA, Joseph Lawrence Heinzl's Warranty Deed).

(7) The Col. Quentin Miller Family Trust

37. The Miller Family Trust, Col. Quentin Miller, Trustee, acquired fee title to property in Cochise County, Arizona, by that Warranty Deed recorded in the Cochise County Recorder of Deed's Office on October 22, 1993 as Fee #931028778. (A copy of the deed by which the Col. Quentin Miller Family Trust acquired this property is attached as Tab BB).

38. The Col. Quentin Miller Family Trust's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (*See* Tab BB, the Col. Quentin Miller Family Trust's Warranty Deed).

(8) Tammy Windsor-Brown

39. Tammy Windsor-Brown acquired fee title to property in Cochise County, Arizona by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on December

5, 2002 as Fee #021239035 (a copy of the Quitclaim Deed by which Ms. Windsor-Brown acquired her property is attached as Tab CC).

40. Tammy Windsor-Brown's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (*See* Tab CC, Tammy Windsor-Brown's Quitclaim Deed).

**C. The successor to El Paso and Southwestern Railroad, the San Pedro Railroad Operating Company, LLC ("SPROC"), abandoned the railroad easement in 2005.**

41. In November 2003, The San Pedro Railroad Operating Company, LLC ("SPROC") acquired the right-of-way from SWKR Operating Company, the successor to the Southern Pacific. (*See* STB Docket No. AB-1081X, November 9, 2005 decision; a copy of which is attached as Tab DD).

42. The SPROC acquired the right-of-way with the intent of operating a rail line providing NAFTA-related freight service to Mexico. (*See* STB Docket No. AB-1081X, February 3, 2006 decision; a copy of which is attached as Tab EE).

43. This plan required that the railroad line obtain a border crossing at Naco, Arizona from Ferromex, the Mexican railroad on the other side of the US/Mexican border at Naco. (*See* Tab DD, November 9, 2005 decision.)

44. SPROC failed to persuade Ferromex to restore that gateway. (*See* E-mail correspondence from Ferromex to SPROC's David Parkinson, dated January 25, 2005; a copy of which is attached as Tab FF.)

45. On January 25, 2005, Ferromex emailed SPROC's David Parkinson stating that it was not willing to consider re-establishing the international connection at Naco, stating, "[a]t this

time, we are not considering the opening of a new gateway at Naco because the potential volume does not justify investment and operating expenses." (*See* Tab FF, e-mail from Ferromex).

46. The SPROC's plan "never materialized." (*See* Tab EE, STB's February 3, 2006 decision).

47. The SPROC carried coal and coke for Chemical Lime, the only on-line shipper, for approximately eight months. (*See* Tab EE, STB's February 3, 2006 decision).

48. SPROC subsequently determined that "Chemical Lime's projected level of traffic – between 380 and 500 carloads per year – is inadequate to sustain the railroad." (*See* Tab EE, STB's February 3, 2006 decision).

49. As such, the SPROC "decided to abandon the line in March 2005 due to limited freight business and the lack of prospects for prospects for future traffic increases." (*See* Tab EE, STB's February 3, 2006 decision).

50. On June 11, 2005, the SPROC received notification from the Federal Railroad Administration "recommending that SPROC cease railroad operations over the line due to the poor condition of a bridge at milepost 1044.4 at the northern end of the Douglas Branch." (*See* Tab EE, STB's February 3, 2006 decision).

51. Accordingly, the SPROC "filed an embargo notice with the Association of American Railroads on June 16, 2005, and renewed the embargo of September 22, 2005." (*See* Tab EE, STB's February 3, 2006 decision).

52. "SPROC also states that, in August 2005, heavy rains damaged substantial segments of the line." (*See* Tab EE, STB's February 3, 2006 decision).

53. SPROC subsequently advised Chemical Lime of the need to make "other transportation options." (*See* Tab EE, STB's February 3, 2006 decision).

54. During its eight months of operation, the SPROC calculates that it incurred a loss of $251,410 and would incur an additional loss of $277,736 the following year if it continued to operate. (*See* Tab EE, STB's February 3, 2006 decision).

55. Further, "it would need to invest approximately $710,030 in rehabilitation work to bring the line up to FRA class 1 track standards…it would cost $731,500 to repair all bridges on the line, including $136,496 to repair the bridge at milepost 1044.4…[and the SPROC] estimates the subsidy, including capital cost to restore the line to operations, at $1,798,221 and an annual opportunity cost of $19,974." (*See* Tab EE, STB's February 3, 2006 decision).

56. For these reasons, SPROC filed a petition on October 17, 2005 with the STB seeking an exemption under 49 U.S.C. 10502 to abandon the obligation to provide railroad service over the seventy six mile long railroad line. (*See* STB Docket No. AB-1081X, November 4, 2005 decision; a copy of which is attached as Tab GG).

57. "On October 17, 2005, San Pedro Railroad Operating Company, LLC (SPROC), a wholly owned subsidiary of Arizona Rail Group, filed with the Surface Transportation Board a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon approximately 76.2 miles of railroad in Cochise County, AZ, as follows: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, a distance of 5.6 miles; and (2) the Douglas Branch (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, a distance of 9.2 miles, (b) between milepost 1055.8 near Charleston and milepost 1097.3 near Paul Spur, a distance of 41.5 miles, and (c) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, a distance of 19.9 miles." (*See* Tab GG, STB's November 4, 2005 decision).

58. On November 9, 2005, the STB found that:

> [t]he subject line currently carries no commodities because the condition of a railroad bridge located at MP 1044.4 has deteriorated so substantially that the Federal Railroad Administration instructed SPROC to suspend operations over the bridge, effectively ending all rail service . . . An embargo was posted on June 16, 2005, renewed on September 22, 2005. Flooding on the line in August, 2005 seriously damaged track and structures over a 16 mile segment of the line....

(*See* Tab DD, STB's November 9, 2005 decision).

**D. On July 25, 2006, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") which *inter alia* precluded the Plaintiffs' reversionary rights to their property.**

59. "On January 27, 2006, the Trust for Public Land (the Trust), a non-profit California public benefit corporation, filed a request for a public use condition and for issuance of a notice of interim trail use (NITU)." (*See* Tab EE, STB's February 3, 2006 decision).

60. The Trust's request was made "in order to negotiate with SPROC for acquisition of the right-of-way for interim trail use. The Trust at that time also submitted a statement of willingness to assume financial responsibility for the right-of-way and acknowledged that use of the right-of-way is subject to future reconstruction and reactivation for rail service." (*See* STB Docket No. AB-1081X, July 25, 2006 NITU; a copy of which is attached as Tab HH).

61. On July 25, 2006, the STB ordered that "[b]ecause SPROC has since notified the Board of its willingness to enter into trail use negotiations with the Trust, a 180-day period will now be authorized for the parties to negotiate an interim trail use/rail banking agreement." (*See* Tab HH, July 25, 2006 NITU).

62. The STB issued a NITU for the abandoned SPROC railroad right-of-way on July 25, 2006. (*See* Tab HH, July 25, 2006 NITU).

63. The Trust for Public Land is a tax-exempt charity. *See* the website for The Trust for Public Land: http://www.tpl.org/tier2_sa.cfm?folder_id=170; a print-out is attached as Tab II).

64. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (*See* Tab II, a print-out of the website for The Trust for Public Land.)

65. "On January 22, 2007, the Trust filed a request for a 30-day extension of the NITU negotiating period. The Trust state[d] that it and SPROC [were] in the process of completing negotiations on an option for the Trust's purchase of the portions of the subject right-of-way owned by SPROC in the Douglas Branch as follows: (a) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, and (b) between milepost 1055.8 near Charleston and approximately milepost 1074.3 at the intersection of the rail line with State Highway 92 (subject right-of-way)." (*See* STB Docket No. AB-1081X, February 14, 2007 Decision; a copy of which is attached as Tab JJ.)

66. "According to the Trust, the subject right-of-way [would] not include portions of the railroad line designated under the original abandonment and NITU filing described as: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, and (2) portions of the Douglas Branch, specifically (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, and (b) between approximately milepost 1074.3 at the intersection with State Highway 92 and milepost 1097.3 near Paul Spur. According to the Trust, SPROC has indicated that it desires to remove these portions of the right-of-way from continued trail use negotiations." (*See* Tab JJ, STB's February 14, 2007 decision).

67. "In a letter filed January 25, 2007, SPROC acknowledged receipt of the Trust's extension request and consented to the extension for those portions of the property in the subject right-of-way identified by the Trust." (*See* Tab JJ, STB's February 14, 2007 decision).

68. "On January 29, 2007, SPROC filed a letter stating that it had consummated the abandonment of the line between: (1) milepost 1084.0 and milepost 1097.3 at Paul Spur, (2) milepost 1097.3 at Paul Spur and milepost 1106.5 near Douglas, and (3) milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee." (*See* Tab JJ, STB's February 14, 2007 decision).

69. On February 14, 2007, the Court stated that "[w]here, as here, the carrier has not consummated the abandonment at the end of the previously imposed negotiating period and has indicated its willingness to continue negotiations by requesting an extension...the NITU negotiating period may be extended. " (*See* Tab JJ, STB's February 14, 2007 decision).

70. As such, the STB ordered that "[t]he NITU negotiating period is extended until February 21, 2007, for the portion of the line: (a) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, and (b) between milepost 1055.8 near Charleston and approximately milepost 1074.3 at the intersection of the rail line with State Highway 92." (*See* Tab JJ, STB's February 14, 2007 decision).

71. "On May 11, 2007, SPROC filed a request to postpone for one year, until July 26, 2008, the deadline to consummate abandonment of the remaining portion of the line (from milepost 1040.15 near Curtiss to milepost 1084.0);" the SPROC's request was granted by the STB on June 6, 2007. (*See* STB Docket No. AB-1081X, June 8, 2007 Decision; a copy of which is attached as Tab KK.)

| | |
|---|---|
| Date: 12/4/07 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br><br>ATTORNEYS FOR PLAINTIFFS |