DD

**36361** **SERVICE DATE – NOVEMBER 9, 2005**
SEA

**SURFACE TRANSPORTATION BOARD**
WASHINGTON, DC 20423

**ENVIRONMENTAL ASSESSMENT**

**STB DOCKET NO. AB-1081X**

**San Pedro Railroad Operating Company, LLC–Abandonment Exemption–in Cochise County, AZ**

## BACKGROUND

In this proceeding, the San Pedro Railroad Operating Company, LLC (SPROC) has filed a petition under 49 U.S.C. 10502 seeking exemption from the requirements of 49 U.S.C. 10903. SPROC seeks to discontinue service over and abandon approximately 76.2 miles of track and railroad right-of-way in Cochise County, Arizona. A previously filed petition submitted in STB Docket No. AB-441 (Sub-No. 4X) was denied by the Surface Transportation Board (Board) by decision served September 15, 2005, because SPROC failed to provide all relevant evidence and financial data.

The subject line consists of four segments. The first segment is designated as the Bisbee Branch, which extends between MP 1085.0 at Bisbee Junction and MP 1090.6 at Bisbee, a distance of 5.6 miles. The three remaining segments are collectively designated as the Douglas Branch. The second segment extends between MP 1097.3 near Paul Spur and MP 1106.5 near Douglas, a distance of 9.2 miles. The third segment extends between MP 1055.8 near Charleston and MP 1097.3 near Paul Spur, a distance of 41.5 miles. The fourth segment extends between MP 1040.15 near Curtiss and MP 1055.8 near Charleston, a distance of 19.9 miles. A map depicting the rail line in relationship to the area served is appended this Environmental Assessment (EA). If the petition becomes effective, the railroad will be able to salvage track, ties, and other railroad appurtenances and dispose of the right-of-way.

## DESCRIPTION OF THE LINE

By notice served on November 21, 2003, the Board authorized SPROC to acquire and operate the subject line from SWKR Operating Company, Incorporated. SPROC acquired the line with the intent of using it to restore a connection with the Mexican rail system at Naco, Arizona, and to haul transborder "overhead" freight. The plan never materialized because SPROC was unsuccessful in persuading the Mexican carrier, Ferromex, to restore this gateway for trans-border traffic. SPROC rehabilitated and restored to common carrier service the segment of this railroad between Curtiss and Paul Spur, Arizona. Although SPROC acquired common carrier authority over the segments of the railroad between Bisbee Junction and Bisbee and between Paul Spur and Douglas, SPROC has not attempted to rehabilitate or restore service to these segments.

EXHIBIT
tabbies
DD

Abandonment authority for the first and second segments was originally obtained on October 12, 1995 (SWKR Operating Co., STB Docket No. AB-441 (Sub-No. 1X)). Since February 24, 1997, these segments have been operated under an agreement for trail use/rail banking. Abandonment authority for the third segment was originally obtained on February 14, 1997 (SWKR Operating Co., STB Docket No. AB-441 (Sub-No. 2X)). Since August 17, 1998, this segment has been operated under an agreement for trail use/rail banking. Abandonment authority for the fourth segment was originally obtained on November 4, 2003 (SWKR Operating Co., STB Docket No. AB-441 (Sub-No. 3X)). By decision served on December 17, 2003, the Board vacated the November 4, 2003, decision and dismissed the petition for exemption.

SPROC states that, except at station and yard locations, the rights-of-way are generally 100 feet wide, 50 feet on each side of the center line. The topography of the area is curvy with some gentle grades and high desert. The surrounding land has scrub brush and mesquite. From Curtiss at MP 1040.15 southward for 20 miles, SPROC owns the track materials and operates over the right-of-way via an easement granted by Union Pacific Railroad Company, which owns the underlying right-of-way. SPROC indicates that no in-stream salvage operations would be required.

The subject line serves one principal shipper, Chemical Lime Company (Chemical Lime) at Paul Spur, for which SPROC and its predecessors have handled primarily inbound coal and coke. The subject line currently carries no commodities because the condition of a railroad bridge located at MP 1044.4 has deteriorated so substantially that the Federal Railroad Administration instructed SPROC to suspend operations over the bridge, effectively ending all rail service to Chemical Lime. An embargo was posted on June 16, 2005, renewed on September 22, 2005. Flooding on the line in August, 2005 seriously damaged track and structures over a 16 mile segment of the line between MP 1061.9 and MP 1077.9. Chemical Lime filed a protest on July 14, 2005, protesting SPROC's petition for exemption. Chemical Lime manufactures lime from limestone, and provides lime-based products and services in plants throughout the United States. SPROC delivers coal and coke to Chemical Lime's Douglas lime plant via the Curtiss-to-Charleston and Charleston-to-Paul Spur rail segments. Both coal and coke are essential to Chemical Lime's manufacturing process, and according to Chemical Lime, without either one, the plant must be shut down.

## ENVIRONMENTAL REVIEW

SPROC submitted an environmental report that concludes the quality of the human environment will not be affected significantly as a result of the abandonment or any post-abandonment activities, including salvage and disposition of the right-of-way. SPROC served the environmental and historical reports on a number of appropriate Federal, state, and local agencies as required by the Board's environmental rules [49 CFR 1105.7(b)]. The Board's Section of Environmental Analysis (SEA) has reviewed and investigated the record in this proceeding.

The United States Department of Agriculture, Natural Resources Conservation Service (NRCS) in Phoenix Arizona has indicated that the proposed abandonment is exempt from the

requirements of the Farmland Protection Policy Act, which excludes land which is already in or is committed to urban development, currently used as water storage, or land that is not prime or unique farmland. NRCS does not see any immediate concerns or impact that would directly affect wetland areas associated with agriculture.

**Traffic**

SPROC states that during their first year of operation (between October 15 and December 31, 2004), the railroad carried 82 carloads of freight over the subject line, consisting of inbound coal and coke for the only active customer, Chemical Lime, to its plant located at the end of the line at Paul Spur. For the year to date through June 16, 2005, SPROC carried 190 carloads of inbound coal and coke for Chemical Lime. Neither figure represents a complete year in which the rail line and Chemical Lime were fully operational. In Chemical Lime's July 14, 2005, Statement in Opposition to SPROC's Petition for Exemption, Chemical Lime indicates that since preparations to restart the plant in September-October 2004, Chemical Lime has been taking delivery of coal at the rate of 180 carloads per year and coke at the rate of 200 carloads per year, a total of 380 carloads per year. Using a rail-to-truck conversion factor of 4 trucks per railcar,[1] SEA calculates that on a per day basis, if all the rail traffic is diverted to truck traffic, the abandonment would generate an estimated 1520 new trucks per year (3040 truck trips assuming an empty backhaul). This equates to approximately 13 trucks per day being added to area roads during a 240 workday year.[2] This increase in truck traffic will not exceed the Board's thresholds of an increase of more than 10 percent of the average daily traffic or 50 vehicles a day on any affected road segment [49 CFR 1105.7(e)].

**HISTORIC REVIEW**

SPROC submitted an historic report as required by the Board's environmental rules [49 CFR 1105.8(a)] and served the report on the Arizona State Parks, State Historic Preservation Office (SHPO), pursuant to 49 CFR 1105.8(c). The SHPO has substantial documentation already on file in connection with the previous abandonment efforts for segments one, two, and three. The SHPO has requested that SPROC provide it with a topographic or equivalent map and color photographs for the fourth segment, the 19.9 mile segment between MP 1040.15 at Curtiss and MP 1055.8 at Charleston. At the time this environmental assessment was prepared, the SHPO had not completed its assessment of the proposed abandonment. Pending completion of the SHPO's review, we recommend a condition to ensure compliance with the Section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f.

[1] The conversion factor is an estimate used to calculate the rail to truck conversion of varied commodities.

[2] When weekends and holidays are subtracted from a 365 day year the result is 240 workdays.

The National Park Service National Center for Cultural Resources Native American Consultation Database (NACD) was queried for Cochise County, Arizona to identify consultation contacts for Federally recognized Indian Tribes which might have an interest in the proposed SPROC abandonment. The query resulted in identification of five tribes. SEA has added the Fort Sill Apache Tribe of Oklahoma, Mescalero Apache Tribe, San Carlos Apache Tribe, Tohono O'odham Nation, and the White Mountain Apache Tribe to the service list for this proceeding to ensure that they receive a copy of this environmental assessment for their comment.

## CONDITIONS

SEA recommends that the following environmental condition be placed on any decision granting abandonment authority:

> San Pedro Railroad Operating Company, LLC shall retain its interest in and take no steps to alter the historic integrity of all sites and structures on the right-of-way that are 50 years old or older until completion of the Section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f.

## CONCLUSIONS

Based on the information provided from all sources to date, SEA concludes that, as currently proposed, and if the recommended conditions are imposed, abandonment of the line will not significantly affect the quality of the human environment. Therefore, the environmental impact statement process is unnecessary.

Alternatives to the proposed abandonment would include denial (and therefore no change in operations), discontinuance of service without abandonment, and continued operation by another operator. In any of these cases, the existing quality of the human environment and energy consumption should not be affected.

## PUBLIC USE

Following abandonment and salvage of the rail line, the right-of-way may be suitable for other public use. A request containing the requisite four-part showing for imposition of a public use condition (49 CFR 1152.28) must be filed with the Board and served on the railroad within the time specified in the Federal Register notice.

## TRAILS USE

A request for a notice of interim trail use (NITU) is due to the Board, with a copy to the railroad, within 10 days of publication of the notice of the petition for exemption in the Federal Register. Nevertheless, the Board will accept late-filed requests as long as it retains jurisdiction to do so in a particular case. This request must comply with the Board's rules for use of rights-of-way as trails (49 CFR 1152.29).

## PUBLIC ASSISTANCE

The Board's Office of Public Services (OPS) responds to questions regarding interim trail use, public use, and other reuse alternatives. You may contact OPS directly at (202) 565-1592, or mail inquiries to Surface Transportation Board, Office of Public Services, Washington, DC 20423.

## COMMENTS

If you wish to file comments regarding this environmental assessment, send an **original and two copies** to Surface Transportation Board, Case Control Unit, Washington, DC 20423, to the attention of Kenneth Blodgett, the environmental contact for this case. Environmental comments may also be filed electronically on the Board's web site, www.stb.dot.gov, by clicking on the "E-FILING" link. **Please refer to Docket No. AB-1081X in all correspondence, including e-filings, addressed to the Board.** If you have any questions regarding this environmental assessment, please contact Kenneth Blodgett by phone at (202) 565-1554, fax at (202) 565-9000, or e-mail at blodgettk@stb.dot.gov.

Date made available to the public: November 9, 2005.

**Comment due date: December 9, 2005 (30 days).**

By the Board, Victoria Rutson, Chief, Section of Environmental Analysis.

Vernon A. Williams
Secretary

Attachment

36543
EB

SERVICE DATE – FEBRUARY 3, 2006

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-1081X

SAN PEDRO RAILROAD OPERATING COMPANY, LLC—ABANDONMENT EXEMPTION—IN COCHISE COUNTY, AZ

Decided: January 27, 2006

By petition filed on October 17, 2005, San Pedro Railroad Operating Company, LLC (SPROC) seeks an exemption under 49 U.S.C. 10502 from the prior approval requirements of 49 U.S.C. 10903 to abandon approximately 76.2 miles of railroad line in Cochise County, AZ, as follows: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, a distance of 5.6 miles; and (2) the Douglas Branch (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, a distance of 9.2 miles, (b) between milepost 1055.8 near Charleston and milepost 1097.3 near Paul Spur, a distance of 41.5 miles, and (c) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, a distance of 19.9 miles.[1]

Notice of the filing was served and published in the Federal Register on November 4, 2005 (70 FR 67213-14). On November 29, 2005, Chemical Lime filed in opposition to SPROC's petition. SPROC filed a reply to Chemical Lime's reply on December 8, 2005.[2] On January 27, 2006, the Trust for Public Land (the Trust), a non-profit California public benefit corporation, filed a request for a public use condition and for issuance of a notice of interim trail use (NITU). We will grant the exemption, subject to public use, environmental and standard employee protective conditions.

---

[1] The Board denied SPROC's prior petition for exemption to abandon this line, without prejudice to SPROC's refiling for abandonment authorization. San Pedro Operating Company, LLC—Abandonment Exemption—In Cochise County, AZ, STB Docket No. AB-441 (Sub-No. 4X) (STB served Sept. 15, 2005).

[2] SPROC petitions the Board to accept this pleading "to the extent the Board believes that leave to reply is required." Because our rules at 49 CFR 1104.13(c) do not provide for a reply to a reply and SPROC has presented no justification for the relief sought, we will deny petitioner's request and will not consider the pleading.

EXHIBIT
tabbies
E E

BACKGROUND

In its petition, SPROC states that it acquired the subject line from SWKR Operating Co. Inc. in 2003. See San Pedro Railroad Operating Company, LLC—Acquisition and Operation Exemption—SWKR Operating Co. Inc., STB Finance Docket No. 34430 (STB served Nov. 21, 2003). Petitioner further states that it acquired the line with the intent of restoring transborder rail service with the Mexican rail system at Naco, AZ, and developing NAFTA-related traffic, but that this plan never materialized. SPROC indicates that it has carried coal and coke for Chemical Lime, the only on-line shipper, but that Chemical Lime's projected level of traffic—between 380 and 500 carloads per year—is inadequate to sustain the railroad. SPROC states that it decided to abandon the line in March 2005 due to limited freight business and the lack of prospects for future traffic increases.

According to SPROC, on June 10, 2005, it received a letter from the Federal Railroad Administration (FRA) recommending that SPROC cease operations over the line due to the poor condition of a bridge at milepost 1044.4 at the northern end of the Douglas Branch. Thereafter, SPROC states that it filed an embargo notice with the Association of American Railroads (AAR) on June 16, 2005, and renewed the embargo on September 22, 2005. SPROC also states that, in August 2005, heavy rains damaged substantial segments of the line between milepost 1061.9 and milepost 1077.9. SPROC asserts that it has advised Chemical Lime of other transportation options, including construction of a transload facility at either Curtiss, AZ, or Benson, AZ.

SPROC calculates that it incurred a loss of $251,410 in the base year and that it will incur a loss of $277,736 in the forecast year to operate the line. These calculations are based on operations which SPROC conducted in the final 3 months of 2004 and in the first 5½ months of 2005.[3] Those are the only months in which SPROC carried any traffic over the subject line after acquiring it in November 2003 and before SPROC embargoed the line on June 16, 2005. The remaining base year loss figures are derived from estimates for the period from June 2005 through September 2005.

Petitioner also asserts that it would need to invest approximately $710,030 in rehabilitation work to bring the line up to FRA class 1 track standards. Petitioner also asserts that it would cost $731,500 to repair all bridges on the line, including $136,496 to repair the

[3] SPROC carried 82 carloads of coke and coal to Chemical Lime over the line in the final quarter of 2004 and 190 carloads in 2005. SPROC provided one train round trip with one locomotive per week for 34 weeks. The locomotive carried a crew of 2 persons and took 10 hours per day; each round trip covered 138 miles.

bridge at milepost 1044.4. Finally, petitioner estimates the subsidy, including capital cost to restore the line to operations, at $1,798,221 and an annual opportunity cost of $19,974.[4]

Chemical Lime, which produces lime from limestone, states that it receives coal and coke at its plant in Paul Spur (the Douglas plant) via petitioner's Curtiss-to-Charleston and Charleston-to-Paul Spur rail segments. Chemical Lime does not object to SPROC's proposal to abandon the Bisbee Branch and the portion of the Douglas Branch between Paul Spur and Douglas, neither of which is necessary to serve its plant. However, Chemical Lime asserts that its costs would rise significantly if SPROC were to abandon its entire line. Chemical Lime states that, in reliance on SPROC's service, it has invested significant funds to reopen the Douglas plant ($1.47 million) and to improve and maintain the SPROC tracks leading to the plant ($54,618).

Additionally, Chemical Lime argues that, after filing its petition, SPROC, without any regulatory authorization, unilaterally ceased service on the line, an action that amounts to an illegal embargo and a violation of SPROC's common carrier obligation. Chemical Lime states that, between June 2005, when SPROC ceased providing service, and December 31, 2005, it will have incurred $438,392 in increased shipping costs, including costs related to its having to build a transload facility at Deming, NM. Chemical Lime also argues that the abandonment of this line would subject it to potential market abuses and that the Board should consider the potential free trade consequences of the abandonment. Moreover, Chemical Lime generally disputes SPROC's revenue, expense, and repair estimates and claims that it has suffered substantial damages as a consequence of SPROC's actions here. The shipper argues that the Board must address these contested issues in a formal abandonment proceeding.

DISCUSSION AND CONCLUSIONS

Under 49 U.S.C. 10903, a rail line may not be abandoned without our prior approval. Under 49 U.S.C. 10502, however, we are directed to exempt a transaction or service from otherwise applicable regulatory requirements or procedures when we find that: (1) continued regulation is not necessary to carry out the rail transportation policy of 49 U.S.C. 10101; and (2) either (a) the transaction or service is of limited scope, or (b) regulation is not necessary to protect shippers from the abuse of market power.

Whether abandonment authority is sought by application or petition, the railroad must demonstrate that the line in question is a burden on interstate commerce. Typically, in an attempt to make that showing, the carrier submits evidence to demonstrate that the costs it incurs exceed the revenues attributable to the line, and that keeping the line in service would impose a

[4] In support, SPROC provides detailed economic data with underlying workpapers, a detailed bridge inspection report prepared by Osmose Railroad Services, Inc., a signed salvage agreement, and a property appraisal prepared by Kenneth Young & Associates.

burden on it that outweighs the harm that would befall the shipping public and the adverse impacts on rural and community development if the rail line were abandoned. See Gauley River Railroad, LLC—Abandonment and Discontinuance of Service—In Webster and Nicholas Counties, WV, STB Docket No. AB-559 (Sub-No. 1X) et al., slip op. at 7 (STB served June 16, 1999).

In this case, detailed scrutiny under 49 U.S.C. 10903 is not necessary to carry out the rail transportation policy. Although a shipper opposes the abandonment, it offers no concrete evidence to support its position or to counter petitioner's evidence that the revenues it can expect from handling the shipper's traffic are well below the costs to operate the line. Accordingly, requiring SPROC to expend significant funds to repair and provide service on the line when there is an insufficient amount of traffic available would be an unreasonable burden. By minimizing the administrative expense of the application process, an exemption will reduce regulatory barriers to exit [49 U.S.C. 10101(7)]. An exemption will also foster sound economic conditions and encourage efficient management by allowing SPROC to avoid the cost of owning and maintaining this line [49 U.S.C. 10101(5) and (9)]. Other aspects of the rail transportation policy will not be affected adversely.

Regulation of the transaction is not necessary to protect shippers from an abuse of market power,[5] because Chemical Lime, the only active shipper on the line, has transportation alternatives; it currently uses truck transportation to serve its Douglas Plant, in conjunction with its transload facility in Deming, NM. As the Board has previously held, the fact that a shipper may incur inconvenience and increased shipping costs for alternate transportation is not a basis for denying an abandonment that is in the public interest. Chicago and North Western Transp. Co.—Abandonment, 354 I.C.C. 1, 7 (1977). It is well settled that a railroad will not be required to operate a rail line simply to prevent shippers from incurring higher transportation costs by truck. See CSX Transportation, Inc.—Abandonment Exemption—In Harrison County, WV, STB Docket No. AB-55 (Sub-No. 563X) (STB served Sept. 25, 1998).

Chemical Lime's argument that SPROC has impermissibly embargoed the line likewise does not provide a basis for denying this abandonment petition. An embargo is not unreasonable so long as the railroad either restores the line to service within a reasonable amount of time or promptly seeks abandonment authority. Decatur County Commissioners, et al. v. The Central Railroad Company of Indiana, STB Finance Docket No. 33386 (STB served Sept. 29, 2000). The record shows that SPROC filed a petition for abandonment of this line with the Board on June 6, 2005, six days before the FRA recommended that SPROC cease operations in its June 10, 2005 letter. Petitioner then promptly filed its embargo notice with AAR on June 16, 2005 (and again on September 22, 2005). SPROC's actions were reasonable and do not constitute an illegal embargo of the line.

---

[5] Given our market power finding, we need not determine whether the proposed transaction is limited in scope.

Chemical Lime's request for a formal proceeding is also unpersuasive. Such a proceeding would serve merely to further delay this abandonment with little or no prospect of providing any additional information that would change the result reached in this decision. SPROC based its demonstration of operating losses on all of the operations it had performed for Chemical Lime and it provided a detailed estimate of the cost of rehabilitating the line. Although Chemical Lime disputes SPROC's statements, the shipper has not supported its assertions with any analyses of SPROC's costs or revenues, although the shipper had access to detailed statements of SPROC's analyses. A formal proceeding would offer Chemical Lime no greater opportunity to dispute SPROC's showings than the shipper has had in this proceeding.

We would also point out that, if Chemical Lime believes maintaining rail service on this line is in its best interest, the offer of financial assistance (OFA) procedures at 49 U.S.C. 10904 and 49 CFR 1152.27 are available to it.

SPROC has submitted environmental and historic reports with its petition and has notified the appropriate Federal, state, and local agencies of the opportunity to submit information concerning the energy and environmental impacts of the proposed abandonment. See 49 CFR 1105.11. Our Section of Environmental Analysis (SEA) has examined the environmental report, verified the data it contains, and analyzed the probable effects of the proposed action on the quality of the human environment. SEA served an environmental assessment (EA) on November 9, 2005, and requested comments by December 9, 2005.

In the EA, SEA states that the Arizona State Parks, State Historic Preservation Office (SHPO), has not completed its assessment of the proposed abandonment. Accordingly, pending completion of the SHPO's review, SEA recommends that a condition be imposed requiring SPROC to retain its interest in and take no steps to alter the integrity of the entire rail line until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f.

No comments on the EA were filed. Accordingly, we will impose the condition recommended by SEA in the EA. Based on SEA's recommendation, we conclude that the proposed abandonment, if implemented as conditioned, will not significantly affect either the quality of the human environment or the conservation of energy resources.

As previously noted, the Trust filed a request for the issuance of a NITU under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), and 49 CFR 1152.29. The Trust has submitted a statement of willingness to assume financial responsibility for the right-of-way and has acknowledged that use of the right-of-way is subject to possible future reconstruction and reactivation of the right-of-way for rail service as required under 49 CFR 1152.29. However, because SPROC has not yet submitted a statement indicating whether it is willing to enter into negotiations, we cannot issue a NITU at this time. Once SPROC indicates whether it is willing to enter into trail use negotiations, the Board will be able to address the Trust's request for a NITU as appropriate in a subsequent decision.

SEA has indicated in its EA that the right-of-way may be appropriate for other public use. As noted, the Trust filed a request for a public use condition under 49 U.S.C. 10905 for 180 days.

Persons who request a Trails Act condition may also request a public use condition under 49 U.S.C. 10905. See Rail Abandonments–Use of Rights-of-Way as Trails, 2 I.C.C.2d 591, 609 (1986) (Trails). The Trust has met the public use criteria prescribed at 49 CFR 1152.28(a)(2) by specifying: (1) the condition sought; (2) the public importance of the condition; (3) the period of time for which the condition would be effective; and (4) justification for the period of time requested. Accordingly, a 180-day public use condition, commencing from the effective date of this decision, will be imposed on the rail line to be abandoned to enable any state or local government agency or other interested person to negotiate the acquisition of the line for public use. Also, we note that a public use condition is not imposed for the benefit of any one potential purchaser. Rather, it provides an opportunity for any interested person to negotiate to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, SPROC is not required to deal exclusively with the Trust, but may engage in negotiations with other interested persons.

The parties should note that operation of the public use procedure could be delayed, or even foreclosed, by the financial assistance process under 49 U.S.C. 10904. As stated in Trails, 2 I.C.C.2d at 608, OFAs to acquire rail lines for continued rail service or to subsidize rail operations take priority over interim trail use/rail banking and public use. Accordingly, if an OFA is timely filed under 49 CFR 1152.27(c)(1), the effective date of this decision will be postponed beyond the effective date indicated here. See 49 CFR 1152.27(e)(2). In addition, the effective date may be further postponed at later stages in the OFA process. See 49 CFR 1152.27(f). Finally, if the line is sold under the OFA procedures, the petition for abandonment exemption will be dismissed and public use precluded. Alternatively, if a sale under the OFA procedures does not occur, the public use process may proceed.

Under 49 U.S.C. 10502(g), we may not use our exemption authority to relieve a carrier of its statutory obligation to protect the interests of its employees. Accordingly, as a condition to granting this exemption, we will impose the employee protective conditions set forth in Oregon Short Line R. Co.—Abandonment—Goshen, 360 I.C.C. 91 (1979).

It is ordered:

1. SPROC's request for leave to reply to Chemical Lime's reply is denied.

2. Under 49 U.S.C. 10502, the Board exempts from the requirements of 49 U.S.C. 10903 the abandonment by SPROC of the above-described line, subject to the employee protective conditions in Oregon Short Line R. Co.—Abandonment—Goshen, 360 I.C.C. 91 (1979), and the conditions that SPROC shall: (1) leave intact all of the right-of-way, including bridges, trestles,

culverts and tunnels (except track, ties and signal equipment) for a period of 180 days from the effective date of this decision, to enable any state or local government agency or any other interested person to negotiate the acquisition of the line for public use; and (2) retain its interest in and take no steps to alter the integrity of the entire rail line until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C 470f.

3. An OFA under 49 CFR 1152.27(c)(1) to allow rail service to continue must be received by the railroad and the Board by February 13, 2006, subject to time extensions authorized under 49 CFR 1152.27(c)(1)(i)(C). The offeror must comply with 49 U.S.C. 10904 and 49 CFR 1152.27(c)(1). Each OFA must be accompanied by the filing fee, which is currently set at $1,200. See 49 CFR 1002.2(f)(25).

4. OFAs and related correspondence to the Board must refer to this proceeding. The following notation must be typed in bold face on the lower left-hand corner of the envelope: "**Office of Proceedings, AB-OFA**."

5. Provided no OFA has been received, this exemption will be effective March 15, 2006. Petitions to stay must be filed by February 13, 2006, and petitions to reopen must be filed by February 23, 2006.

6. Pursuant to the provisions of 49 CFR 1152.29(e)(2), SPROC shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by SPROC's filing of a notice of consummation by February 3, 2007, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. If a legal or regulatory barrier to consummation exists at the end of the 1-year period, the notice of consummation must be filed no later than 60 days after satisfaction, expiration, or removal of the legal or regulatory barrier.

By the Board, Chairman Buttrey and Vice Chairman Mulvey.

Vernon A. Williams
Secretary