**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | No. 07-271 L |
| | ) | |
| | ) | Honorable Robert H. Hodges, Jr. |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f) AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f) . . . . . . . . . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. RCFC 56(f) is Properly Invoked Where, As in This Case, The Party Opposing A Motion For Summary Judgment Has Not Been Afforded Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. Defendant Has Satisfied The Five Part Test For Parties Seeking Relief Under RCFC 56(f) And Should Be Allowed Discovery Prior to Responding To Plaintiff's Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Defendant Satisfies the Five-Part Test for Relief Pursuant to RCFC 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1. Defendant Can Specify the Particular Factual Discovery Being Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. The Discovery Is Reasonably Expected To Engender A Genuine Issue of Material Fact . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3. Defendant Can Demonstrate An Adequate Factual Predicate For The Belief That There Are Discoverable Facts Sufficient To Raise A Genuine And Material Issue . . . . . . . . . . . . . . . . . . . 13

4. The United States Has Made Efforts To Obtain The Necessary Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5. Defendant Can Show Good Grounds For The Failure To Have Discovered The Necessary Facts Sooner . . . . . . . . . . . . . . . . . . . 15

B. Defendant's Position Is Similar To That Of The Nonmovant In Jade Trading, LLC v. United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. A Stay Of Summary Judgment Briefing To Allow Appropriate Discovery Will Also Allow A Controlling Legal Issue In This Case To Proceed Toward Interlocutory Consideration By The Federal Circuit . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES**

Blendu v. United States,
75 Fed. Cl. 543 (2007) . . . . . . . . . . 17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 8

Chevron U.S.A., Inc. v. United States,
72 Fed. Cl. 817 (2006) . . . . . . . . . . 9

Dunkin' Donuts of America, Inc. v. Metallurgical Exoproducts Corp.,
840 F.2d 917 (Fed. Cir. 1988) . . . . . . . . . . 8

Ellamae Phillips Co. v. United States,
77 Fed. Cl. 387 (2007) . . . . . . . . . . 3, 17, 18

Flowers v. United States,
75 Fed. Cl. 615 (2007) . . . . . . . . . . 8, 9

Hash v. United States,
No. CV-99-324, 2001 WL 35986188 (D. Idaho Nov. 27, 2001) . . . . . . . . . . 17

Hash v. United States,
403 F.3d 1308 (Fed. Cir. 2005) . . . . . . . . . . 17, 18

Hash v. United States,
No. CV-99-324, 2007 WL 1309548 (D. Idaho Feb. 1, 2007) . . . . . . . . . . 17

Jade Trading, LLC v. United States,
60 Fed. Cl. 558 (2004) . . . . . . . . . . 8, 9, 15

Mansfield v. United States,
71 Fed. Cl. 687 (2006) . . . . . . . . . . 8

Opryland USA, Inc. v. Great American Music Show,
970 F.2d 847 (Fed. Cir. 1992) . . . . . . . . . . 8

Resolution Trust v. Bridge Assoc., Inc.,
22 F. 3d 1198 (lst Cir 1994) . . . . . . . . . . 9

Theisen Vending Co. v. United States,
58 Fed. Cl. 194 (2003) . . . . . . . . 8

Vivid Techs., Inc. v. Am. Sci. & Eng'g Inc.,
200 F.3d 795 (Fed. Cir. 1999) . . . . . . . . 9

**STATUTES**

16 U.S.C. § 1247(d) . . . . . . . . 6

43 U.S.C. §§ 934-939 . . . . . . . . 16

**RULES**

RCFC 26(a) . . . . . . . . 15

RCFC 56(f) . . . . . . . . 1, 4, 5, 7, 8-11, 15,16, 18

RCFC 56 . . . . . . . . 8

**DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f)**

Defendant, United States of America, hereby moves this Court for relief under Rule 56(f) of the Rules of the Court of Federal Claims ("RCFC"), which provides that "[s]hould it appear from the affidavits of a party opposing [a] motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order depositions to be taken or discovery to be had or may make such other order as is just." Defendant respectfully requests that the Court stay proceedings on Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' motion") (Doc. No. 32) and allow a six month period of discovery pursuant to RCFC 56(f). Such discovery would include, but is not limited to, title searches of the subject properties, contention interrogatories and other discovery propounded on Plaintiffs, and discovery of information from two third parties.

Title searches are necessary to (1) confirm the deeds, or other documentation, by which named Plaintiffs or their predecessors acquired their alleged interests in the right-of-way; (2) determine whether any subsequent deeds in the chain of title altered the interest in the right-of-way as the property was transferred from the named Plaintiffs' predecessors ultimately to the named Plaintiffs; and (3) determine the method by which the railroad acquired its interest in the subject right-of-way.

Discovery is also necessary to clarify, among other things, the type of claim that each Plaintiff asserts in this lawsuit. Plaintiffs have made allegations of both temporary and permanent takings related to the subject right-of-way. However, Plaintiffs have not identified which particular Plaintiff(s) are alleging which type of claim. Because the Notice of Interim

Trail Use or Abandonment ("NITU") negotiation period for all portions of the subject right-of-way has ended with no trail use agreement, Defendant does not believe any Plaintiff can properly state a permanent taking claim.[1/] Thus, the discovery period sought by the United States would be used to propound contention interrogatories and other discovery on Plaintiffs related to their claim in the First Amended Complaint that a trail use agreement has been reached, to probe whether Plaintiffs intend to continue to pursue permanent taking claims and, if Plaintiffs do intend to continue to pursue permanent taking claims, the bases for that decision. Moreover, to bolster its defense to any claims of permanent takings, the United States will also seek discovery, including subpoenas for written discovery and potential depositions, from the San Pedro Railroad Operating Company ("SPROC") and the Trust for Public Land ("Trust"), which previously conducted some negotiations with SPROC regarding entry into a trail use agreement for a portion of the right-of-way. The discovery would seek information related to the status of negotiations, if any, regarding the establishment of interim trail use. Information that no negotiations are currently ongoing would confirm that any claim for a taking in this case is, at most, a temporary taking claim. This argument would be a central focus of Defendant's response to Plaintiffs' Motion for Partial Summary Judgment.

Finally, by Plaintiffs' own admission, this case involves claims related to establishment of parts of the right-of-way pursuant to the General Railroad Right of Way Act of 1875 ("1875

---

[1/]Defendant does not concede that even a temporary taking claim is appropriate in the instant case. The appropriateness and merits of Plaintiffs' temporary taking claims, which are unprecedented in National Trails System Act cases, are not addressed in this motion or its supporting memorandum. In future filings, however, Defendant intends to defend against the validity and, if necessary, the merits of Plaintiffs' temporary taking claims, and expects to show that Plaintiffs are not due any compensation under these novel claims.

Act"). Similar claims have been at the heart of several recent rails-to-trails cases and have engendered an ongoing question regarding whether 1875 Act claims can establish liability for a Fifth Amendment Taking. Because of the continued arguments related to 1875 Act claims, Judge Baskir of the Court of Federal Claims recently certified the question of 1875 Act liability to the Federal Circuit for interlocutory consideration. Ellamae Phillips Co. v. United States, Case No. 04-1544L, Slip. Op. at 8 (Dec. 21, 2007, Docket No. 92). A reasonable discovery period in the instant case would simultaneously allow the issue of potential liability for 1875 Act claims to move at least to the next step in the interlocutory appeal process: a decision on whether to accept the appeal by the Federal Circuit. Any subsequent guidance from the Federal Circuit would ultimately assist in the resolution of the 1875 Act claims in the instant case.

If the Court denies the instant motion, Defendant respectfully requests, in the alternative, that it be given thirty (30) days from the date of the order containing such denial for the filing of its opposition to Plaintiffs' motion. A memorandum and declaration in support of this motion follow.

**WHEREFORE**, Defendant respectfully requests that this Court stay proceedings on Plaintiffs' Motion for Partial Summary Judgment, to and until July 31, 2008, and allow Defendant time to conduct the discovery detailed in the following memorandum and the declaration attached as Exhibit 1 thereto.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f)**

**INTRODUCTION**

This is not a standard rails-to-trails takings case. There is no trail, no trail use agreement has been reached, and the period of time in which the railroad had to negotiate a trail use agreement has passed. No other case in this Court has presented these facts. In addition to these unique facts, this case presents a legal issue of first impression: whether the issuance of a Notice of Interim Trail Use or Abandonment ("NITU") can be the basis for a "temporary" taking claim under the Fifth Amendment of the United States Constitution and, if so, how such a claim should be analyzed by this Court.

Under these novel circumstances and prior to any discovery, Plaintiffs filed a Motion for Partial Summary Judgment ("Plaintiffs' motion") on the issue of liability for the named Plaintiffs alleging temporary and permanent takings. Docket No. 32. Defendant respectfully moves this Court to stay proceedings on Plaintiffs' motion and allow a six month period of discovery pursuant to RCFC 56(f) so that Defendant can discover facts that are essential to its opposition to Plaintiffs' motion. Defendant believes that contention interrogatories and other discovery are necessary to elucidate the type of taking claim (temporary or permanent) on which each named Plaintiff is seeking summary judgment. In addition, Defendant needs time to conduct title examinations so that it can determine the type of interests, if any, the named Plaintiffs may have in the right-of-way. Although the named Plaintiffs have provided some documentation related to their claim that they held title to property underlying or abutting the right-of-way, Defendant needs time to confirm through title examinations whether Plaintiffs held their alleged property interests on the date of the NITU and, if so, the scope of such interests. Moreover, title

examination work is needed to determine the accuracy of Plaintiffs' claim that they are successors in title to the original property owners that granted the right-of-way to the railroad. To date, Plaintiffs have not produced the requisite title documentation to complete the chain of title for each named Plaintiff. Moreover, although Plaintiffs have alleged that the railroad acquired its interests in the right-of-way through two sources – (1) various land grants from private parties and (2) pursuant to the General Railroad Right of Way Act of 1875 – Plaintiffs' partial summary judgment filing fails to specify which of these sources form the basis for each named Plaintiffs' claim. A discovery period is therefore critical to afford Defendant an opportunity to gather facts necessary to oppose Plaintiffs' motion. Finally, Defendant requires time to obtain discovery from the railroad and its previous rails-to-trails negotiating partner, the Trust for Public Land ("Trust"). For these reasons, this Court should stay proceedings on Plaintiffs' motion and allow a period of discovery pursuant to RCFC 56(f).

Defendant notes that Plaintiffs have encouraged this Court to adopt the scheduling order that was previously entered in a pending rails-to-trails case, Rogers v. United States, No. 07-273 L (Fed. Cl.).[2/] See Docket No. 28. In Rogers, the plaintiffs moved for partial summary judgment and, under the Court's initial schedule, the United States was ordered to respond within the timeframe ordinarily provided by this Court's rules. Id. However, since that initial scheduling order, in response to the United States' RCFC 56(f) motion, the Rogers Court stayed Plaintiffs' motion for partial summary judgment to allow completion of discovery on liability. See Rogers, No. 07-273 L, Docket No. 37 (attached as Exhibit 2). A similar result is warranted here.

---

[2/] Pending before the Court is Defendant's motion to strike that filing. Docket No. 29.

**PROCEDURAL BACKGROUND**

Plaintiffs' First Amended Complaint seeks just compensation for both alleged permanent and temporary takings without just compensation in violation of the Fifth Amendment as the result of the Surface Transportation Board's ("STB") issuance of a NITU pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"). Docket No. 6 at 2-3. The Amended Complaint states that the named Plaintiffs filed their claims "in their individual capacity . . . and also as . . . representative parties on behalf of themselves and all other similarly situated landowners. . . ." Id. ¶ 59. The United States answered Counts One and Two of the Amended Complaint, Docket No. 9, and this Court granted Defendant's motion to dismiss Count Three of the Amended Complaint, Docket No. 27.

The parties filed a Joint Preliminary Status Report on October 9, 2007. Docket No. 16. On October 15, 2007, Plaintiffs filed a motion to certify this lawsuit as a class action. Docket No. 19. Defendant did not oppose the granting of that motion. Docket No. 24. Plaintiffs' class certification motion is thus fully briefed and awaiting decision by this Court.

On November 8, 2007, Defendant filed a motion requesting that the Court approve a proposed scheduling order. That schedule set forth dates for the parties to propose a class certification order and then, assuming the Court granted Plaintiffs' unopposed motion to certify a class action, dates for notifying potential class members, entering the appearance of class members, and other actions related to closing the class. Docket No. 25, Exhibit 1. On November 13, 2007, this Court denied Defendant's motion to approve its proposed schedule. Docket No. 27. Currently, there is no schedule in place for completion of the various steps necessary for the closing of the class and no schedule for discovery.

As noted above, on November 21, 2007, Plaintiffs filed a "memorandum" accompanied by a class certification order and a scheduling order that were issued in Rogers, No. 07-273 L. Docket No. 28. Defendant moved to strike this filing. Docket No. 29. Defendant's motion to strike is fully briefed and awaiting decision by this Court.

On December 4, 2007, Plaintiffs filed a Motion for Partial Summary Judgment regarding the United States' liability with respect to the eight named Plaintiffs.[3/] Defendants have until February 4, 2008, to file their response. See Docket No. 27 ("Upon receipt of plaintiffs' motion for summary judgment, defendant will have sixty days in which to respond . . .").

## ARGUMENT

### I. RCFC 56(f) IS PROPERLY INVOKED WHERE, AS IN THIS CASE, THE PARTY OPPOSING A MOTION FOR SUMMARY JUDGMENT HAS NOT BEEN AFFORDED DISCOVERY

When a party files a motion for summary judgment, the burden of producing evidence sufficient to demonstrate the existence of genuine issues of material fact for trial shifts to the

---

[3/] Although there are 16 named Plaintiffs in this lawsuit, see Docket No. 6-2 at 2 (Plaintiff list), Plaintiffs' summary judgment memorandum identifies the named Plaintiffs as "eight Arizona landowners" and groups together the named Plaintiffs that allege common interests. See Docket No. 33, Mem. at 1 n.1, Docket No. 35 at 6-12. For purposes of this memorandum, Defendant will also refer to the "grouped" Plaintiffs as a single named Plaintiff. The eight named Plaintiffs are thus : (1) the Ladd Family, which includes Jack Ladd, JoBeth Ladd, John Ladd, and Marie Ladd; (2) the Lindsey Family, which includes Gail Lanham, James A. Lindsey, Michael A. Lindsey, and William Lindsey; (3) the Charles Miller Family; (4) Valentin Castro; (5) the Singletree Ranch, LLC; (6) Joseph Lawrence Heinzl; (7) the Miller Family Trust; and (8) Tammy Windsor-Brown. Plaintiffs' Proposed Findings of Uncontroverted Fact identifies two individuals in connection with the Charles Miller Family: Charles Raymond Miller and Pauline Miller, see Docket No. 35 at 9. The Plaintiff List accompanying Plaintiffs' Amended Complaint, however, lists three separate individuals with the last name Miller: Charlie Miller, Raymond Miller, and Pauline Miller. Docket No. 6-2 at 2. Among the other things that Defendant intends to clarify through discovery, is whether Charlie Miller and Raymond Miller are separate individuals and, if so, which individual bases his property interest on which of the four deeds submitted by Plaintiffs, which name Charles Raymond Miller. See Docket No. 35 (Exs. U-X).

nonmoving party. See Flowers v. United States, 75 Fed. Cl. 615, 626 (2007) (discussing RCFC 56); Jade Trading, LLC v. United States, 60 Fed. Cl. 558, 565 (2004). If a nonmoving party asserts by affidavit that it lacks sufficient evidence to demonstrate the existence of disputed issues of material fact by affidavits or other evidence, that party is entitled to relief pursuant to RCFC 56(f). See Mansfield v. United States, 71 Fed. Cl. 687, 688 n.2 (2006); Jade Trading, 60 Fed. Cl. at 559.

As RCFC 56(f) provides, "[s]hould it appear from the affidavits of a party opposing [a RCFC 56] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order . . . depositions to be taken or discovery to be had or may make such other order as is just." Further, "[t]he Supreme Court has made clear that summary judgment is inappropriate unless a tribunal permits the parties adequate time for discovery." Dunkin' Donuts of America, Inc. v. Metallurgical Exoproducts Corp., 840 F.2d 917, 919 (Fed. Cir. 1988) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). The Federal Circuit has also recognized that "when the discovery is reasonably directed to 'facts essential to justify the party's opposition,' such discovery must be permitted or summary judgment refused." Opryland USA, Inc. v. Great American Music Show, 970 F.2d 847, 852 (Fed. Cir. 1992) (internal citation omitted). These rules are meant to provide nonmovants with protection from being "railroaded" by prematurely filed motions for summary judgment. See Celotex, 477 U.S. at 326; Opryland, 970 F.2d at 852; Jade Trading, 60 Fed. Cl. at 565. For this reason, "Rule 56(f) motions are generally favored and should be liberally granted." Jade Trading, 60 Fed. Cl. at 565 (quoting Theisen Vending Co. v. United States, 58 Fed. Cl. 194, 197 (2003)).

To garner relief under RCFC 56(f), the non-moving party must do more than baldly assert its need for discovery. See Flowers, 75 Fed. Cl. at 626. Rather, the party moving for discovery should state with some amount of precision the materials it hopes to obtain and exactly how those materials can be expected to aid in opposing summary judgment. See id. "In short, the facts that the [RCFC 56(f)] movant seeks to discover must be foreseeably capable of breathing life into his claim or defense. Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low." Vivid Techs., Inc. v. Am. Sci. & Eng'g Inc., 200 F.3d 795, 809 (Fed. Cir. 1999) (citing Resolution Trust v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1207 (1st Cir. 1994)).

## II. DEFENDANT HAS SATISFIED THE FIVE PART TEST FOR PARTIES SEEKING RELIEF UNDER RCFC 56(f) AND SHOULD BE ALLOWED DISCOVERY PRIOR TO RESPONDING TO PLAINTIFFS' MOTION.

To ensure that nonmovants have met their burden under 56(f), this Court has in recent years required a party seeking relief pursuant to RCFC 56(f) to satisfy a five part test. This test requires the nonmoving party seeking discovery to:

> (1) specify the particular factual discovery being sought, (2) explain how the results of the discovery are reasonably expected to engender a genuine issue of material fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts and (5) show good grounds for the failure to have discovered those facts sooner.

Jade Trading, 60 Fed. Cl. at 565. See also Chevron U.S.A., Inc. v. United States, 72 Fed. Cl. 817, 819 (2006).

A. Defendant Satisfies the Five-Part Test for Relief Pursuant to RCFC 56(f).

As detailed below, and in the declaration attached as Exhibit 1, Defendant's request satisfies all five elements of the test required of a nonmoving party seeking relief pursuant to RCFC 56(f). Accordingly, proceedings on Plaintiffs' motion should be stayed and Defendant should be allowed an opportunity to conduct discovery in the form of contention interrogatories, title searches, and other discovery from Plaintiffs and third parties prior to making a response to Plaintiffs' motion.

(1) Defendant can specify the particular factual discovery being sought.

For the reasons described infra in section II.A.2, Defendant seeks to conduct full historical title searches of the properties owned by the named Plaintiffs and a full historical title search of the chain of title from the private and/or federal land grants that were made to the predecessor railroads to the San Pedro Railroad Operating Company ("SPROC"). Defendant also seeks the historical documents that would be associated with such title transactions in order to assemble a complete picture of the circumstances surrounding the title issues in this case. Defendant is in the process of finalizing a contract for the title searches that are necessary to defend against Plaintiffs' motion. Ex. 1, Decl. of Dougan, at ¶ 21.

In addition, Defendant seeks to propound contention interrogatories and other discovery on Plaintiffs to determine the basis for the claim in their First Amended Complaint that a trail use agreement was executed by SPROC and the Trust. Docket No. 6 at 10, ¶ 25. The current information obtained by Defendant indicates that the NITU negotiation period ended and there is currently no trail use agreement in place. Ex. 1, Decl. of Dougan, at ¶¶ 12-13. Defendant has begun preparation of contention interrogatories and expects to be prepared to propound them on

Plaintiffs once the Court establishes a discovery period in this case. Id. at ¶ 24.

In the event that Plaintiffs intend to continue to pursue their unprecedented temporary taking claims, Defendant anticipates it will propound additional discovery to establish genuine issues of material fact related to the negotiations for interim trail use on the subject right-of-way. Defendant will seek to obtain information from both SPROC and the Trust regarding the history and current status of negotiations related to establishment of a trail use agreement for the subject right-of-way. Defendant has already contacted counsel for SPROC and counsel for the Trust and requested this information informally. Id. at ¶¶ 12-13. Counsel for SPROC and the Trust have informally indicated that there are no ongoing negotiations. Id. If necessary, Defendant will also seek formal discovery from these third parties, most likely through subpoena, to confirm the informal information regarding the history and current status of interim trail use negotiations.

(2) The discovery is reasonably expected to engender a genuine issue of material fact.

Defendant has two bases for its belief that the discovery it seeks is reasonably directed to obtain facts that are essential to justify its opposition to Plaintiffs' motion.

First, Defendant believes that title examination and related discovery will provide a material basis for distinguishing among Plaintiffs' claims, which may have legal significance. Plaintiffs have alleged that the railroad's interests in the railroad right-of-way can be traced to two sources: (1) conveyances from private land owners; or (2) federal land grants pursuant to the 1875 Act. Docket No. 33 at 3. Each named Plaintiff does not, however, identify which particular original land grant forms the basis for their claim. The only exception is the Ladd Family, which Plaintiffs appear to assert is a successor in interest to three particular private land

grants to the El Paso and Southwestern Railroad.[4] Docket No. 35 at ¶ 17 (referencing Exhibits B, D, and G (Docket Nos. 35-2, 35-3)). None of the other named Plaintiffs identify which of the land grants (private or federal) their claim is based upon. For this reason, Defendant needs time to conduct discovery in the form of title searches on the properties of each named Plaintiff from the date of the alleged taking back to original documents in which a private land owner or the federal government conveyed an interest to the railroad (or its predecessors). Because the source of each Plaintiff's claim is a material fact, discovery should be permitted. In addition, title searches and other discovery is reasonably expected to engender a genuine issue of material fact as to whether each named Plaintiff held a property interest on the date of the NITU and, if so, the scope of such interests. Notably, there are language differences among the original granting deeds identified by Plaintiffs. Defendant believes that investigations into the chain of title from predecessor railroads to SPROC and from the original grantees to the named Plaintiffs are likely to yield facts relevant to its defense of Plaintiffs' Motion for Partial Summary Judgment.

Second, the named Plaintiffs have asserted a "permanent taking" for "those property owners whose land remains subject to the NITU." E.g., Docket No. 33-2, Pls.' Mem. at 28. The NITU negotiating period, however, has ended with no trail or trail use agreement in place. Pursuant to the July 25, 2006 NITU, SPROC had until January 22, 2007, to negotiate an interim trail use/rail banking agreement. Docket No. 35 (Exhibit HH). For a portion of the railroad line, the STB extended the NITU negotiating period for 30 days – until February 21, 2007. Docket No. 35 (Exhibit JJ ). According to counsel for SPROC and the Trust, both of these dates passed

---

[4] Even the Ladd Family, however, fails to provide the full chain of title between the original conveyance documents and the deeds that it asserts demonstrate its current property interests.

without any trail use/rail banking agreement being reached.[5] Ex. 1, Decl. of Dougan, at ¶¶ 12-13. In addition, preliminary information from SPROC and the Trust indicates that negotiations are not currently ongoing. Id. Therefore, at most, Plaintiffs can only assert a temporary taking claim of less than seven months – from the date of the NITU (July 25, 2006) until the negotiation period ended (February 21, 2007).[6]

In light of these facts, there can be no claims of permanent taking related to the subject right-of-way. Defendant believes that investigations and discovery related to Plaintiffs' "permanent" taking claims is reasonably likely to engender material facts related to its defenses to these claims and will allow the Court, in due course, to dismiss all permanent takings claims in this case.

(3) Defendant can demonstrate an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue.

Based on the analysis in Section II.A.2, Defendant is confident that it will find material facts to aid its opposition to Plaintiffs' Motion for Partial Summary Judgment. As described above, the conveyance documents submitted by Plaintiffs are themselves a factual predicate for Defendant's belief that title examination may discover facts essential to its opposition to Plaintiffs' motion. In addition, with regard to the facts surrounding Plaintiffs' "permanent"

[5] Although Plaintiffs' filings have emphasized that the original negotiating period was extended by the STB, even with the extension, the negotiation period expired on February 21, 2007. Docket No. 35 (Exhibit JJ at 3).

[6] Moreover, at least two of the named Plaintiffs, the Ladd Family and the Charles Miller Family, allege to have an interest in property that abuts a portion of the rail line that was not subject to the extension order. Docket No. 35 at ¶¶ 22, 30. Therefore, at most, the Ladd Family and the Charles Miller Family can claim a temporary taking of just under six months – from the date of the NITU (July 25, 2006) until the original negotiation period ended (January 22, 2007).

taking claims, Defendant already has received informal information from counsel for the Trust and counsel for SPROC that there are currently no negotiations between the Trust and SPROC regarding a trail use agreement for the subject right-of-way. Ex. 1, Decl. of Dougan, at ¶¶ 12-13. As such, Defendant is confident that it will be able to confirm this material fact through formal discovery, which will aid its opposition to Plaintiffs' Motion for Partial Summary Judgment. Other facts related to any trail use negotiations exist and are discoverable, provided the Court grants time for the undertaking. With time for discovery, Defendant can obtain these items to assist it in responding to Plaintiffs' motion.

(4) The United States has made efforts to obtain the necessary facts.

Despite the lack of a discovery schedule in this case, Defendant has initiated various efforts to discover facts in this case. With regard to the title searches, Defendant has begun the process of engaging LECG, a firm that does title-related work on a contractual basis, to conduct the title searches that are necessary to defend against Plaintiffs' motion. Ex. 1, Decl. of Dougan, at ¶ 21. In addition, Defendant is preparing contention interrogatories to Plaintiffs and anticipates propounding them as soon as a discovery schedule is set by the Court. Id. at ¶ 24. Defendant has also already made contact with counsel for the Trust and counsel for SPROC and has obtained some information on an informal basis. Id. at ¶ 12-13. Defendant anticipates propounding formal written or deposition discovery upon these third parties to confirm the information that has been obtained informally.

As demonstrated, time for discovery would allow Defendant to overcome the hurdles which have, until now, prevented it from discovering the facts described in Sections II.A.1 - II.A.3.

(5) Defendant can show good grounds for the failure to have discovered the necessary facts sooner.

The overarching reason Defendant has not yet transmitted formal discovery is that Plaintiffs provided initial disclosures pursuant to RCFC 26(a) only fairly recently and so Defendant was not in possession of all of the conveyance documents that Plaintiffs allege form the basis of their claims until Plaintiffs filed their Motion for Partial Summary Judgment. In addition, Defendant desired to attempt to work with third parties in a voluntary and cooperative effort to obtain information, and there was no order setting a discovery schedule. Other than the obligatory RCFC 26(a) disclosures, no discovery has yet been propounded by either party. Additionally, Defendant's efforts were slowed by the hopes that its informal discovery efforts with third parties would be more fruitful. See supra Sec. II.A.4.

B. Defendant's Position Is Similar to That of the Nonmovant in Jade Trading, LLC v. United States.

If this motion is denied, Defendant would be forced to defend against Plaintiffs' motion based on little more than the documents which it received as initial disclosures from Plaintiffs and the documents attached to Plaintiffs' motion. The Court of Federal Claims analyzed an analogous situation in Jade Trading, LLC v. United States, 60 Fed. Cl. 558 (2004), and found that the grant of summary judgment in such a situation would be error. Id. at 565. In that case, Jade Trading, LLC asked the Court to deny the defendant's discovery efforts and grant summary judgment over the defendant's RCFC 56(f) motion. Id. This request was based on the affidavit of a party friendly to the corporation. Id. The Court responded that so ruling "without giving [d]efendant the opportunity for adequate discovery, would 'railroad' [d]efendant by preventing it from developing its case and prematurely resolving on motion, a matter that precedent suggests

dictates trial." Id. Plaintiffs here are essentially asking the Court to reach the opposite conclusion on similar facts. They have presented their case, and now want this Court to rule without giving Defendant a chance to defend with anything other than documents provided by Plaintiffs. Ruling in this posture would "railroad" Defendant "by preventing it from developing its case . . . ." The conclusion that Defendant would be "railroaded" is made even stronger by the fact that defendant in Jade Trading had already obtained some discovery at the time it filed its RCFC 56(f) motion. In comparison, Defendant here has not had the chance for any formal discovery to date. See id. at 564-65.

## III. A STAY OF SUMMARY JUDGMENT BRIEFING TO ALLOW APPROPRIATE DISCOVERY WILL ALSO ALLOW A CONTROLLING LEGAL ISSUE IN THIS CASE TO PROCEED TOWARD INTERLOCUTORY CONSIDERATION BY THE FEDERAL CIRCUIT

According to Plaintiffs, the instant case includes claims related to a grant of portions of the subject right-of-way to SPROC's predecessor pursuant to the General Railroad Right of Way Act of 1875 ("1875 Act").[7/] 43 U.S.C. §§ 934-939 (2000). The 1875 Act provided federal grants of rights of way over land owned by the United States. Id. In the instant case, Plaintiffs assert that those portions of the right-of-way that were obtained by SPROC's predecessor pursuant to the 1875 Act have since been acquired by either the named Plaintiffs or proposed members of the class. See Plaintiffs' Motion for Partial Summary Judgment at 3; Plaintiffs' Proposed Findings of Uncontroverted Fact at ¶ 2. As a result, a determination of the property interest

---

[7/]Because Defendant has not had an opportunity to conduct a full investigation and discovery in this case, it has not yet been able to verify this fact. Plaintiffs themselves have not identified which of the named Plaintiffs, if any, claim an interest in the portion of the right-of-way that Plaintiffs assert was acquired by SPROC's predecessor pursuant to the 1875 Act.

obtained by SPROC's predecessor pursuant to the 1875 Act grant will be critical to the resolution of the takings claims in this case.

Issues related to 1875 Act claims first surfaced in the Hash case in the District of Idaho. Hash v. United States, 2001 WL 35986188 (D. Idaho Nov. 27, 2001). In Hash the district court concluded that ownership of the property underlying a right-of-way granted by the United States pursuant to the 1875 Act reverted to the United States upon conversion of the right-of-way to trail use. The Hash plaintiffs appealed that determination, which was reversed by the Federal Circuit. Hash v. United States, 403 F.3d 1308, 1313 (Fed. Cir. 2005) ("Hash II"). Despite the limited issue on appeal in Hash II – whether land subject to 1875 Act grants reverted to the United States upon conversion – on remand the district court issued a decision concluding that the Federal Circuit's decision mandated that it hold the United States liable for an unconstitutional taking without ever addressing the extent of the property interest granted to the railroad pursuant to the 1875 Act grant. See Hash v. United States, 2007 WL 1309548 (D. Idaho Feb. 1, 2007) ("Hash III").

The trial court in Ellamae Phillips Co. v. United States relied upon the reasoning in Hash III to similarly conclude that the United States was liable for an unconstitutional taking of 1875 Act lands. 77 Fed. Cl. 387 (2007).[8] The Phillips court based its decision on the following two sentences from the Federal Circuit's opinion in Hash II:

> On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in

[8]The holding in Hash III was also adopted by the trial court in Blendu v. United States, 75 Fed. Cl. 543 (2007).

> the Preseault cases. On remand the district court shall determine just compensation on the conditions that apply to these landowners.

Hash II, 403 F.3d at 1318. In reaching his decision in Phillips, however, Judge Baskir concluded that "[t]he absence of any predicate to the Federal Circuit's conclusory statement regarding abandonment is troublesome both for the litigants in Hash and for courts attempting to apply correctly precedent in other 1875 Act conversions." 77 Fed. Cl. at 395. "Because [the Phillips court's] Opinion involves a controlling question of law with respect to which there is a substantial ground for difference of opinion, and immediate appeal from this Opinions would materially advance the ultimate termination of the litigation," Judge Baskir has certified this issue for interlocutory appeal to the Federal Circuit. Ellamae Phillips Co. v. United States, No. 04-1544L, Slip. Op. at 8 (Dec. 21, 2007, Docket No. 92) (a copy is attached as Exhibit 3).

Providing Defendant with an opportunity to conduct discovery before being forced into responding to a premature motion for summary judgment, will also allow the 1875 Act issue to proceed toward a more definitive resolution by the Federal Circuit before this Court is required to pass judgment. In fairly short order, the Federal Circuit can be expected to make a determination as to whether it will accept the certification from Judge Baskir. If the Federal Circuit accepts the appeal, it is clear that additional guidance will become available to this Court regarding Plaintiffs' 1875 Act Claims.

## CONCLUSION

As demonstrated, Defendant has satisfied the requirements necessary to obtain relief under RCFC 56(f). Accordingly, Defendant respectfully requests that this Court stay proceedings on Plaintiffs' Motion for Partial Summary Judgment and allow Defendant six

months to conduct the discovery detailed above.

January 31, 2007

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environmental & Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024