# In the United States Court of Federal Claims

Case No. 04-1544L
(FILED: December 21, 2007)
NOT TO BE PUBLISHED

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * |
| | * |
| **THE ELLAMAE PHILLIPS COMPANY,** | * |
| *Plaintiff,* | * |
| v. | * |
| | * |
| **THE UNITED STATES OF AMERICA,** | * |
| *Defendant.* | * |
| | * |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * |

***George M. Allen***, Telluride, Colorado, Counsel of Record for Plaintiff.

***William J. Shapiro***, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice. With him on the briefs were ***Ronald J. Tenpas***, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, and ***Evelyn G. Kitay***, Of Counsel, Surface Transportation Board.

***Richard A. Allen***, Attorney of Record, and ***Christina M. Wenzel***, Zuckert, Scoutt & Rasenberger LLP, Washington, DC, and ***Andrea C. Ferster***, General Counsel, Rails-to-Trails Conservancy, Washington, DC, filed a brief as Attorneys for *Amicus Curiae* Rails-to-Trails Conservancy.

***Lauren A. Weeman***, law clerk.

## ORDER

**BASKIR, Judge.**

This is a takings case brought pursuant to the Rails-to-Trails Act, 16 U.S.C. § 1247(d). The Plaintiff seeks just compensation for the alleged taking by the United States of more than ten acres of property located in Pitkin County, Colorado by operation of the "rail-banking" provisions of the Rails-to-Trails Act.

On July 3, 2007, the Court disposed of the parties' cross-motions for summary judgment. We held that, as a matter of stare decisis, the easement across the Plaintiff's land was abandoned by the United States and that the conversion of the parcel thereafter to public trail use constituted a taking. *Ellamae Phillips Co. v. United States*, 77 Fed. Cl. 387 (2007). Our decision was based on the Federal Circuit's holding in *Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005), *reh'g denied*, 2005 U.S. App. LEXIS 18611 (Fed. Cir. Aug. 15, 2005) ("*Hash II*"), and subsequent application of *Hash II* by this Court in *Blendu v. United States*, 75 Fed. Cl. 543 (2007), and by the United States District Court for the District of Idaho in *Hash v. United States*, 2007 U.S. Dist. LEXIS 15539 (D. Idaho Feb. 1, 2007) ("*Hash III*").

Specifically, we based our decision on the following statement which appeared in the concluding paragraph of *Hash II*:

> We conclude that the land of Category 1 is owned in fee by the landowners, subject to the railway easement. The district court's contrary decision is reversed. *On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use*, in accordance with the principles set forth in the *Preseault* cases. On remand the district court shall determine just compensation on the conditions that apply to these landowners.

403 F.3d at 1318 (emphasis added).

By way of background, *Hash* is a class action of approximately two hundred Idaho landowners who are successors to homesteaders who received land grants under the Homestead Act of 1862,12 Stat. 392, 43 U.S.C. § 161, repealed, 90 Stat. 2787 (1976). The *Hash* plaintiffs' land is traversed by a rail corridor which was originally operated by a railroad. Some of the plaintiffs in *Hash* are similarly situated to the Plaintiff in the instant case. Like the Plaintiff in our case, these "Category 1" landowners in *Hash* had predecessors in title who obtained their land pursuant to a homesteading statute after a railroad had acquired a right-of-way traversing then-public land pursuant to an easement granted by virtue of the General Railroad Right of Way Act of 1875 ("1875 Act"), 43 U.S.C. §§ 934-939.

In *Hash I*, the district court concluded that the United States held the reversionary interest in the subject rights-of-way when the Interstate Commerce Commission ("ICC") issued the notice of interim trail use. *Hash v. United States*, 2001 U.S. Dist. LEXIS 24898, at *10 (D. Idaho Nov. 27, 2001) ("*Hash I*"). The district court accordingly held that the Category 1 plaintiffs did not own a vested property interest in any of the 1875 Act rights-of-way at issue when those rights-of-way were rail-banked and interim trail use was authorized by the ICC. *Id.* In *Hash II*, the Federal Circuit

reversed the district court's decision in *Hash I* with regard to the reversionary interest underlying the right-of-way. This was the only issue appealed and briefed. *Ellamae Phillips Co.*, 77 Fed. Cl. at 392.

However, the Federal Circuit then went further. As we read it, *Hash II* conclusively decided the liability of the United States in the instant case. We stated:

> The discussion of Category 1 and the concluding paragraph in *Hash II* must be read as a determination that conversions of 1875 Act easements to trail use constitute abandonment and give rise to takings liability. Therefore, we must hold the Government liable for a taking of the Plaintiff's property.

*Id.* at 396. We reached this conclusion based on principles of stare decisis. However, we noted "[t]he absence of any predicate to the Federal Circuit's conclusory statement regarding abandonment" which we found "troublesome both for the litigants in *Hash* and for courts attempting to apply correctly precedent in other 1875 Act conversions." *Id.* at 395. Accordingly, we denied the Defendant's motion for summary judgment and granted the Plaintiff's cross-motion.

On October 19, 2007, the Defendant filed a motion pursuant to 28 U.S.C. § 1292(d)(2) seeking to have the Court amend its July 3, 2007, Opinion to certify it for interlocutory appeal to the United States Court of Appeals for the Federal Circuit. The Defendant also asks that the Court stay further proceedings in this matter until the Federal Circuit resolves its petition. By leave of the Court, the Rails-to-Trails Conservancy has submitted an amicus brief in support of the Defendant's motion for certification. The Plaintiff opposes certification and has requested oral argument. The Court does not deem oral argument necessary.

The Court finds that the Defendant has met all three statutory requirements for certification set forth in 28 U.S.C. § 1292(d)(2). **The Court therefore GRANTS the Defendant's motion to certify the Court's July 3 Opinion for interlocutory appeal. In addition, the Court hereby STAYS proceedings in this case until further notice.**

## I. Legal Standard for Certification

The decision whether to grant or deny a motion for certification of an interlocutory appeal lies largely within the discretion of the trial judge. *Scholl v. United States*, 68 Fed. Cl. 58, 61 (2005) (citing *D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 649 (2d Cir. 1967); *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 698 (9th Cir. 1977)). However, interlocutory review should be reserved for "exceptional" cases. *Id.* The United States Supreme Court has noted that "[r]outine resort to . . . requests [for interlocutory review] would hardly comport with Congress' design to reserve [such] review for 'exceptional' cases while generally retaining for the federal

courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978), in turn quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972)). In light of the legislative history and historic policy disfavoring interlocutory appeals, courts are expected to practice great restraint in granting them. *See, e.g., Northrop Corp., Northrop Elec. Sys. Div. v. United States*, 27 Fed. Cl. 795, 798 (1993) (citing Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Sept. 23, 1953, reprinted in 1958 U.S.C.C.A.N., 85th Cong. 2d Sess., at 5260-61).

The statutory scheme governing certification of interlocutory appeals by this Court is codified at 28 U.S.C. § 1292(d)(2). The trial judge must certify: (1) that the order involves a "controlling question of law," (2) as to which there is "substantial ground for a difference of opinion," and (3) that "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2); *see* 19 Moore's Federal Practice § 203.31 (3d ed. 2007) ("Moore's"); *see also Scholl*, 68 Fed. Cl. at 61. Furthermore, while each statutory criterion may be examined separately for purposes of analysis, courts generally treat them as a unitary requirement. Moore's § 203.31.

### A. Timeliness of the Motion for Certification

Before the Court reaches the merits of the certification question, it must be satisfied that the motion has been timely brought. *Scholl*, 68 Fed. Cl. at 59. There is no time limit set forth in the statute governing the certification of interlocutory appeals. *See* 28 U.S.C. § 1292(d)(2). However, this Court has held that there is a "statutory expectation that the appeals process will be implemented with dispatch" and that this expectation "should not be circumvented without reason." *Scholl*, 68 Fed. Cl. at 59-60. The Court finds that the Defendant's motion is timely.

Our July 3, 2007, Opinion required that the parties submit a Joint Status Report ("JSR") proposing a schedule for further proceedings no later than August 3, 2007. *Ellamae Phillips Co.*, 77 Fed. Cl. at 396. The parties complied with this instruction and submitted a JSR on August 1, 2007. In the JSR, the Defendant stated that it "would like an opportunity to consider whether to ask the Court to certify an interlocutory appeal." Defendant's Brief ("Def. Br.") Ex. 1 ¶ 2. The Defendant also indicated in the JSR that the "internal process for determining whether to ask the court to certify a decision for interlocutory appeal is often time-consuming, requiring coordination among the Natural Resources Section of the Department of Justice, agency counsel, the Environmental and Natural Resources' Appellate Section, and the Office of the Solicitor General." *Id.* at Ex. 1 ¶ 3.

As of the date of the JSR, the Plaintiff was aware of the Defendant's intention to explore certification and agreed as of August 1, 2007, that "the best option is to permit the [Defendant] a reasonable period of time to consider the Court's ruling and determine whether to request certification." *Id.* at Ex. 1 ¶ 5. Thereafter, the Defendant

moved for approval of a proposed schedule, which the Plaintiff did not oppose. On October 1, 2007, the Defendant informed the Court and the Plaintiff that the internal process necessary to determine whether to seek certification was ongoing, and noted that the matter was pending before the Solicitor General. *See* Def. Br. Ex. 1. The Defendant filed its motion in this Court shortly thereafter on October 19, 2007.

Based on the foregoing, it is clear that the Defendant has acted expeditiously in seeking certification and has complied with the statutory expectation that the appeals process will be implemented without delay. *Cf. Scholl*, 68 Fed. Cl. at 60 (denying certification on the grounds that the motion was untimely because government counsel had "[a]t no point . . . advise[d] the Court that he had initiated the review process, much less . . . [sought] leave of this Court to stay proceedings pending the completion of the Department of Justice's internal process."). The Defendant's motion is therefore timely.

### B. Controlling Question of Law

The first statutory requirement for certification is that the question to be certified is a "controlling question of law." 28 U.S.C. § 1292(d)(2). Questions of law have only been deemed "controlling" under § 1292(d)(2) if they "materially affect issues remaining to be decided in the trial court." *Scholl*, 68 Fed. Cl. at 61 (citing *Marriott Int'l Resorts, L.P. v. United States*, 63 Fed. Cl. 144 (2004); *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11 (2001); *Brown v. United States*, 3 Cl. Ct. 409, 411 (1983)). In addition, a controlling question of law exists where a different interpretation of the question would entitle the Government to judgment and/or obviate the damages portion of the case. *See Am. Airlines, Inc. v. United States*, 71 Fed. Cl. 744, 746 (2006).

Pursuant to our July 3 Opinion, all that remains to be decided in this case is the amount of just compensation due the Plaintiff for the taking of its property. The Opinion therefore materially affects the issues that remain to be decided by this Court and, as such, presents a controlling question of law. The Plaintiff has conceded this point. *See* Plaintiff's Brief at 8 ("Three federal trial judges, including this Court, have come to identical conclusions as to the import and controlling nature of the Federal Circuit's decision in *Hash II*.").

### C. Substantial Ground for Difference of Opinion

The second statutory requirement for certification is that there be substantial ground for disagreement about the controlling question of law. *See* 28 U.S.C. § 1292(d)(2). The Federal Circuit has instructed that a basis for this "substantial ground for difference" exists where there are two different, but plausible, interpretations of a case or line of cases. *See Vereda, LTDA. v. United States*, 271 F.3d 1367, 1373-74 (Fed. Cir. 2001); *Neb. Pub. Power Dist. v. United States*, 74 Fed. Cl. 762, 764 (2006). While we acknowledge that the certification statute was not intended to provide review of difficult rulings in hard cases, we believe that a substantial ground for difference of opinion exists here.

We base our conclusion on the fact that the Federal Circuit's statement in *Hash II* regarding the Government's takings liability is subject to different interpretations than the one applied by this Court. The Defendant argues that, even assuming *Hash II* did determine liability in that case, there is substantial ground for difference of opinion as to whether the decision should be treated as binding precedent on all other cases involving 1875 Act rights-of-way, including the one at issue in the instant case. Defendant's Reply Brief at 4.

In addition, in its supplemental brief for summary judgment, the Defendant argued that, rather than being a declarative statement written in the past tense, the third sentence of the concluding paragraph of *Hash II* was written as a contingency or hypothetical:

> The third sentence begins with the subordinate clause "[o]n the railway's abandonment of its right-of-way. . . . " Given its context, the only reasonable interpretation of that phrase is that the Federal Circuit intended to frame a contingency – assuming the railroad's interest could be considered abandoned, here is the result. If the Federal Circuit intended to make a finding of abandonment, it would have more clearly stated that intent using, at the very least, an independent clause such as "The railroad abandoned its right-of-way and we, therefore, conclude that . . . ."

*Ellamae Phillips Co.*, 77 Fed. Cl. at 394 (citing Defendant's Response to Court's [March 15], 2007 Order at 20 (citations omitted)).

The Defendant's alternative interpretations of *Hash II*, although strained, are plausible. Having urged such interpretations upon the Court, the Defendant has shown that there is a substantial ground for difference of opinion as to how *Hash II* should be interpreted and applied. Although this Court has read *Hash II* as setting forth a "standard" which determines the Government's liability in rails-to-trails cases, the application of the statement may instead be limited to the *Hash* case. *See Ellamae Phillips Co.*, 77 Fed. Cl. at 396; *Blendu*, 75 Fed. Cl. at 548. In the alternative, *Hash II* may not be conclusive of the Government's liability in this case at all.

Interestingly, the Plaintiff did not argue in its briefs for summary judgment, as it now does, that *Hash II* was dispositive on all the liability issues in the case. We stayed proceedings in this case pending a decision in *Hash II*. Once the stay was lifted, the parties filed cross-motions for summary judgment. The briefing submitted on those motions touched on a number of issues, particularly the scope of the easements created under the 1875 Act and whether rail-banking or interim trail use constituted abandonment of the easement. However, neither party treated *Hash II* as dispositive of the Government's liability. *Ellamae Phillips Co.*, 77 Fed. Cl. at 392. At that time, and to this day, the Defendant's position was that *Hash II* decided only the "threshold question" of whether the United States retained a reversionary interest in the right-of-way and left

open the question of whether or not the easement had terminated through abandonment. Defendant's Brief in Support of its Motion for Summary Judgment at 12. Indeed, as we noted in our July 3 Opinion, the Plaintiff's briefs largely ignored *Hash II*, focusing instead on demonstrating the narrow scope of the 1875 Act railroad easement. *See Ellamae Phillips Co.*, 77 Fed. Cl. at 392.

Once the Court became aware of the two trial court decisions interpreting *Hash II* as determinative of the liability issue in 1875 Act cases (specifically, *Blendu* and *Hash III*), we ordered supplemental briefing on the proper interpretation of the Federal Circuit's holding. *See id.* at 392-93. We did so for the express reason that, up to that point, neither party had relied on *Hash II* in their papers. When we consider that the parties themselves did not initially regard *Hash II* as dispositive of all liability issues in this case and that alternative readings of *Hash II* are plausible, it is clear that there is a substantial ground for difference of opinion which renders our July 3 Opinion eligible for certification.

**D. Materially Advance Ultimate Termination of the Litigation**

Finally, the statute requires that the movant show that certification of the controlling issue for interlocutory review will "materially advance ultimate termination of the litigation." 28 U.S.C. § 1291(d)(2). This Court has indicated that the determination of this final criterion "depends in large part on considerations of 'judicial economy' and the need to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'" *Coast Fed. Bank, FSB*, 49 Fed. Cl. at 14 (quoting *Northrop*, 27 Fed. Cl. at 801).

In light of the implications of a contrary ruling by the Federal Circuit upon interlocutory review, we believe that this final requirement is met. Specifically, should the Federal Circuit determine that the United States is not liable for a taking in this case, the parties would no longer be forced to litigate damages. As the case currently stands, all that is left for this Court to determine is the proper amount of damages due the Plaintiff.

In addition, the fact that there are multiple pending suits involving 1875 Act rights-of-way weighs in favor of certification. *See, e.g., Ad Global Fund, LLC v. United States*, 167 Fed. Appx. 171 (Fed. Cir. 2006) (unpublished) ("We note in particular that resolution of this case will affect the resolution of other pending cases."); *PSEG Nuclear, LLC v. United States*, 140 Fed. Appx. 955 (Fed. Cir. 2005) (unpublished) (noting effect on other pending cases); *Tesoro Hawaii Corp. v. United States*, 89 Fed. Appx. 732 (Fed. Cir. 2004) (unpublished) (granting review because it "may help resolve many other cases pending at the Court of Federal Claims").

## II. Conclusion

Because the three requirements for certification are met, **the Defendant's motion to certify our July 3, 2007, Opinion for interlocutory appeal is hereby GRANTED.** Accordingly, the Court's July 3, 2007, Opinion is amended to add the following:

> "Because this Opinion involves a controlling question of law with respect to which there is a substantial ground for difference of opinion, and an immediate appeal from this Opinion would materially advance the ultimate termination of the litigation, the Court certifies the issue to the United States Court of Appeals for the Federal Circuit for its consideration whether to permit an appeal to be taken from this Opinion should a timely application be made to that court."

In addition, **this case is STAYED pending further notice of the Court. The Defendant shall file a status report within ten days of filing of its petition, and within ten days of any action on its petition by the Federal Circuit.**

**IT IS SO ORDERED.**

s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge