# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al. | ) | |
| | ) | |
| For Themselves and As Representatives of a Class of Similarly Situated Persons, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 07-271L |
| | ) | |
| vs. | ) | Honorable Robert H. Hodges, Jr. |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' OBJECTION TO THE GOVERNMENT'S REQUEST FOR RELIEF UNDER RCFC 56(f)

## I. INTRODUCTION

The Plaintiffs object to the six month enlargement of time requested by the Defendant. The Plaintiffs do not oppose a thirty day enlargement of time.

### A. ***The Plaintiffs' Motion Raises Only Two Simple Questions.***

On April 30, 2007, Plaintiffs filed their complaint seeking "just compensation" for the taking of their land. This taking occurred on July 25, 2006 when the federal Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") that authorized the conversion of an abandoned railroad easement into a public access recreational trail and precluded the landowners' "reversionary" right to their property.

On December 12, 2007, Plaintiffs filed a motion for partial summary judgment. This motion requests that this Court enter an order finding the government obligated to pay "just compensation" to the eight named Plaintiffs for a taking of their land.[1] The eight named Plaintiffs' own fifteen parcels of real estate located in Cochise County, Arizona.

The Plaintiff and Defendant agree that this case should be bifurcated into two phases. The first phase is a determination of the government's liability. The second phase is a determination of the damages owed each plaintiff. The pending motion for partial summary judgment concerns only the first stage, the question of the federal government's liability. This determination of the federal government's liability is premised upon well-settled law and upon established facts.

The Plaintiffs' motion for partial summary judgment presents this Court with two very basic – and straightforward - questions: (1) On July 25, 2006 did the eight named property owners hold title to land that was subject to an easement allowing the San Pedro Railroad a right to operate a railroad across the property? (2) Did the STB issue a NITU on July 25, 2006 that precluded the Plaintiffs' "reversionary" right to their property?

---

[1] The Department of Justice makes much of the "16 named Plaintiffs" in footnote 2 of their memorandum in an attempt to suggest that the property ownership is a more involved issue. This is "much ado about nothing". The fact that husbands and wives or family members jointly own their ranch in no way complicates the title to the land. The motion for summary judgment involves fifteen parcels of property that are owned by eight named entities or families. The fact that family members hold title in their revocable living trust, or as husband and wife or as a limited liability company in no way complicates the matter. In this response we refer to the plaintiff's by their common ownership of the 15 parcels. Thus, when a husband and wife own property jointly, we consider that a single plaintiff, similarly, when family members own property in a trust or a limited liability company.

The first question ("did the eight Plaintiffs own the land") is answered by reference to the deeds by which the Plaintiffs acquired title to the property and the easements by which the El Paso and Southwestern Railroad originally acquired the right to operate a railroad across this land in 1903. All of these documents have been provided to the government as exhibits attached to the Plaintiffs' Proposed Findings of Uncontroverted Fact and most had also been provided to the government as exhibits to the Plaintiffs' complaint and amended complaint.

The second question ("did the STB's issue a NITU that precluded the Plaintiffs "reversionary" right to their property") has also been answered. The STB's NITU of July 25, 2006 is attached as an exhibit to the Plaintiffs' complaint and is undisputed. And, the legal effect of this NITU precluding the property owner's reversionary interest in their land is settled law after the decisions of the Federal Circuit in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), *Barclay v. United States*, 443 F.3d 1368 (2006), and *Renewal Body Works, Inc. v. United States*, 443 F.3d 1368 (2006).

***B. The Defendant Has Had More Than Ample Time to Conduct Any Title Research That May be Necessary.***

The STB issued the NITU on July 25, 2006. This case was filed on April 30, 2007. The Plaintiffs filed both an original and amended complaint that included the title documents which established the Plaintiffs' ownership of the property and the nature of the railroad easement. The Government's answer was due on July 12, 2007. The Government did not file an answer on this date but sought an enlargement of time "in order to provide litigation counsel an opportunity to consult with the Surface Transportation Board, to identify and review the records relevant to Plaintiffs' claims, and to internally coordinate the United States' position in response to the First Amended

Complaint." (Docket No. 7). Finally, on August 10, 2007 the Department of Justice filed its answer. The answer was a boilerplate denial.

On October 9, 2007, Plaintiffs and the Defendant filed a JPSR pursuant to Appendix A of the RCFC which noted that both parties agreed that the most efficient means to resolve this case was to bifurcate the liability and valuation stage of this case with the liability stage being briefed first (*See* Docket No. 16, "[t]he parties agree that the case should be bifurcated, with liability being decided first").

On November 9, 2007, the Plaintiffs provided the government a disclosure pursuant to RCFC 26(a) which included all other title documents then in the Plaintiffs' possession that related to the property upon which the railroad easement was located and the means by which this railroad easement was established.

On December 4, 2007, the Plaintiffs filed a motion for partial summary judgment pursuant to RCFC 56 requesting that this court decide the issue of the Government's liability. This motion for summary judgment was accompanied by a statement of uncontroverted facts that included the title documents by which the named Plaintiffs held title to the land upon which the railroad easement was located and the documents by which the railroad obtained the easement. Under this Court's Rules, the Government's response was due on January 4, 2008. (RCFC 7.2(c)).[2]

---

[2] Plaintiffs note that RCFC 7.2(c) provides that a response to a motion for summary judgment "shall be filed within 28 days after service of the motion." Plaintiffs have extended this 28-day deadline from January 1, 2008 to January 4, 2008 to allow for the three holidays for which this Court is closed (Christmas Eve, Christmas, and New Years' Day).

The Defendant did not file their reply within the time provided by the rules. Rather, the Department of Justice sought to prevent Plaintiffs from even seeking summary judgment. (*See* Docket No. 25). In the alternative, the Department of Justice asked this Court for sixty days in which to file its response to Plaintiffs' motion for partial summary judgment. The Court denied the government's request to stay briefing of this issue but did grant the Department of Justice sixty days until February 4, 2008 to file a response to Plaintiffs' motion.

Now, on the eve of this deadline to file its response, the government does not file a response but instead asks for an additional six months to file its response to Plaintiffs' motion. The government claims this "relief" is necessary because it has chosen to conduct no discovery and has not even retained a title company and now wishes to do so. (*See*, affidavit of Rachel Dougan).

From the moment that the Plaintiffs' complaint was filed, the Department of Justice has known that this case involves a question of the title that the eight named Plaintiffs have to the land upon which the abandoned railroad right-of-way was located. Should the Department of Justice want to deny these property owners compensation by arguing that they did not own the land upon which the railroad easement was located, the Department of Justice has known of their ability to make this argument since April 30, 2007.

The Department of Justice wants this Court to grant "relief" under Rule 56(f) because it has only "begun the process of engaging LECG [the government's title research firm]," "is preparing contention interrogatories...and anticipates propounding

them" and "anticipates propounding formal written or deposition discovery upon third parties to confirm the information that has been obtained informally."

In short, during the more than nine months since this case was filed – including the more than two months of enlargements of time this Court has already granted the government – the Department of Justice has done precisely nothing other than request further extensions of time. At most they have merely "anticipated" conducting research into the substantive issues.

In 2002, Congress held hearings into the failure of the Department of Justice to timely and efficiently resolve Trails Act taking cases.[3] During these hearings, Attorney General Sansonetti testified:

> You asked about: Is it in our best interest to also try and streamline the procedures? Definitely. And as I mentioned in my oral statement, some of the things we're trying to do is to work with the courts where we have the majority of our cases-the Court of Federal Claims-to **get their rules lined out for these kinds of cases, so we can move more quickly through the determination stage of who actually owns the reversionary interest. That's the first thing.**
>
> And making sure that, right from the get-go, the **discovery process is shortened, by making sure that the plaintiff already brings to the table, right at the start, whatever deeds they're relying on, conveyances, old easements, rights-of-way, right from the get-go**....So those are the kinds of things we're trying to do.[4]

[3] Statement of Assistant Attorney General Thomas Sansonetti, *See* Assistant Attorney General Thomas J. Sansonetti's testimony before Congress on June 20, 2002, "Litigation and its Effects on the Rails-to-Trails Program," *available online at*: http://commdocs.house.gov/committees/judiciary.

[4] *Id.* In this case the Plaintiffs did "bring to the table" the deeds and other documents that Assistant Attorney General Sansonetti requested. Yet, the Department of Justice is still trying to extend resolution by more than six months.

In this case the Plaintiffs did "bring to the table" the deeds and other documents that Assistant Attorney General Sansonetti requested. Yet, the Department of Justice is still trying to extend resolution by more than six months.

The issues before the Court are simple, settled and straightforward. There is no justification for further extending the discovery period by an additional six months. The pending motion for summary judgment concerns only title to the fifteen designated properties and all the title documents for these properties have already been provided to the Defendant. Any legitimate outstanding title research sought by the government can be accomplished within thirty days. And, the Plaintiffs would not oppose granting the Defendant thirty days enlargement of time to respond to the motion for summary judgment.

## II. THE DEPARTMENT OF JUSTICE HAS SHOWN NO BASIS UPON WHICH THIS COURT MAY GRANT A SIX MONTH DELAY UNDER RULE 56 (F).

Rule 56 (f) provides,

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Department of Justice has alleged that it has "begun the process of engaging LECG" and is "in the process of finalizing a contract for the title searches" it deems necessary, it "expects to be prepared to propound [contention interrogatories] on Plaintiffs once the Court establishes a discovery period in this case," and that it

"anticipates propounding formal written or deposition discovery upon third parties to confirm information that has been obtained informally." (Docket No. 37, p. 14).

After nine months, Defendant's counsel is only now "contemplating" discovery and has still not retained a title company to research the title. This failure to pursue basic discovery is especially amazing in light of the Department of Justice's prior requests (and this Court's granting of those requests) for additional time. What, precisely did the Department of Justice do with this time? Apparently nothing.

In short, a review of the record indicates that the only thing the Department of Justice has done in this case is to try and delay resolution of the case. By their own admission, they have done absolutely nothing to address the substantive issues before the Court (other than "anticipate" discovery and "begin the process" of signing a contract with a title company). All the while, the Plaintiff property owners await their "just compensation" for the taking of their land and the American taxpayers continue to pay interest on "just compensation" while the Justice Department delays finally resolving this case. [5]

The United States of America and the United States Department of Justice have vast resources at their disposal – far more significant than those resources available to the Plaintiff property owners who are mostly ranchers living in Cochise County, Arizona. Yesterday the Department of Justice announced that it has a budget of $22.7 Billion

[5] The interest and expense to taxpayers due to the government's delay in resolving Trails Act taking cases is substantial. (See *Miller v. United States*, No. 03-2489L, November 21, 2006 Order, Docket No. 126, approving settlement of $8,151,682.73).

Dollars to fund the Department's programs in the current fiscal year.[6] Yet, the Department of Justice claims that it can not complete title research for fifteen parcels of property in less than nine months.

It is the Plaintiff's counsel's understanding that title companies routinely conduct a chain of title search in less than thirty days. All the deeds and other conveyance documents are public records available at the Cochise County Recorder of Deeds Office. Should there be any legitimate title research that the Defendant has chosen to not conduct but now desires to conduct, that can be accomplished within thirty days.

To the extent that the Defendant finds themselves lacking discovery they believe necessary to respond to the Plaintiffs' motion for partial summary judgment, this is a situation of the Defendant's own making. And, Rule 56(f) is not intended to grant "relief" to a party for their failure to diligently pursue their case. No one is trying to "railroad" the federal government and providing them an additional thirty days is more than adequate relief that will allow the Department of Justice to respond to the pending motion.

## III. IN AN EFFORT TO "BUY MORE TIME" THE DEFENDANT SEEKS TO MUDDY THE WATER BUT – IN REALITY – THE LEGAL AND FACTUAL ISSUES ARE SETTLED AND STRAIGHTFORWARD.

The Department of Justice claims that this case presents "unique facts," "novel circumstances," and a "legal issue of first impression: whether the issuance of a Notice

[6] See, http://www.usdoj.gov/ February 4, 2008. The Plaintiffs fully appreciate that the Department of Justice must fund many obligations. It is precisely because of this that the Plaintiffs do not understand why the Department of Justice is pursuing a litigation strategy in this case that will ultimately increase the federal government's financial obligation as opposed to providing a timely and cost efficient resolution.

of Interim Trail Use or Abandonment ("NITU") can be the basis for a "temporary" taking claim under the Fifth Amendment of the United States Constitution and, if so, how such a claim should be analyzed by this Court." (Docket No. 37, p. 4).

The Department of Justice is just flat wrong. The legal issues are settled and the factual questions are resolved by undisputed documents.

### *A.* ***The issue of a temporary versus permanent taking does not arise in the liability stage of this case but in the subsequent valuation stage.***

The issue of whether the named Plaintiffs' land was taken temporarily or permanently has nothing to do with the pending motion for summary judgment on the government's obligation to pay property owners "just compensation" for taking their land. This motion concerns only whether the federal government owes the Plaintiff landowners "just compensation" under the Fifth Amendment. And, on that point, the law is settled.

The STB's issuance of the NITU gave rise to the Government's liability for a taking. Whether this is a permanent or temporary taking is a question of damages which arises in the second (valuation) phase of this case not the liability phase.

There is no need to address the question of whether the landowners' property was taken temporarily or permanently at this point. The Federal Circuit has made this clear in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), *Barclay v. United States*, 351 F.Supp.2d 1169 (2004), and *Renewal Body Works, Inc. v. United States*, 443 F.3d 1368 (2006).

In *Barclay*, the Federal Circuit held,

> the issuance of a NITU is the triggering event for accrual of a "takings" claim under the Trails Act...The *Caldwell* majority recognized that a NITU "operates as a single trigger to several possible outcomes," including the possibility that negotiations may fail, which could lead to abandonment of the easement. In that circumstance, the court said, the taking of the property may be found to have been temporary rather than permanent, but the claim still accrued when the NITU was issued. *Barclay*, 351 F.Supp.2d at 1176.

The government has recognized that the NITU (as opposed to any Trail Use Agreement) is the event determining whether the federal government has liability for a taking. ("the only relevant fact for purposes of the statute of limitations in this type of taking case is the date the STB issued the original NITU," Brief of the Government, p. 12, *Illig v. United States*, (Fed. Cir. No. 2005-5156)).

In *Illig v. United States*, 58 Fed. Cl. 619 (2003), Ms. Kris Tardiff for the Department of Justice addressed precisely the situation now before this Court when she told Judge Bruggink on June 17, 2005:

> Plaintiffs had a valid takings claim against the government because what the NITU does, in these circumstances, by operation of the Trails Act, it preempts the operation of state law in terms of abandonment.
>
> ***
>
> the NITU, at that point, places a burden on the Plaintiffs' property interest, and I think you would be measuring it as a permanent taking if liability is established.
>
> If, by some subsequent act, the NITU is revoked, and the state-law abandonment process if allowed to proceed, then your permanent taking may be converted into a temporary taking. But I think the Federal Circuit addressed that in *Caldwell*, and said: that it doesn't change your claim-accrual date. The claim still accrues when the NITU is issued, regardless of whether it is permanent, or becomes temporary by virtue of a subsequent action. (*See* Appendix 5, Plaintiff's Motion for Partial Summary Judgment).

The Defendant has agreed that it is not necessary for the Plaintiffs to await a future Trail Use Agreement or the actual construction of a public trail upon their property in order to receive the "just compensation" they are due. The Government's liability to pay "just compensation" for a taking of the Plaintiff's land is fixed when the STB issued the NITU.

***B. The Act of 1906 settled the issue that the Railroad held only an easement to use the Plaintiffs' property in Arizona and did not hold fee title.***

The Defendant attempts to suggest that the General Railroad Right of Way Act of 1875 ("Act of 1875") provides a reason to delay this case six months. In truth, the Act of 1875 and the successor 1906 Act, which specifically applies to Arizona land, is the reason why this case need not be delayed and judgment on the government's liability should be entered on the basis of settled law.

The Act of 1875 and the Act of 1906 were passed by Congress to make precisely clear Congress's intent and understanding that railroads in Arizona acquiring right of way over land then owned by the federal government acquired only an easement and did not hold fee title. The United States Supreme Court then considered the Act of 1875 and the 1906 Act and held that the property owners that subsequently acquired title to land in Arizona and Oklahoma encumbered by a railroad easement acquired the fee to the land under the railroad. *Great Northern R. Co. v. United States*, 315 U.S. 262 (1942). In other words, the federal government did not retain an interest in the land under the right-of-way. Title to the land under federally granted railroad easements in Arizona is owned by the landowner not the railroad and not the federal government. This is settled by Acts of Congress and the decision of the U.S. Supreme Court.

The issue that Judge Baskir certified to the Federal Circuit in *Ellamae Phillips Co. v. United States*, No. 04-1544L, is no justification to delay resolution of this case. The *Ellamae Phillips* case concerned property in Colorado subject to a right-of-way created under the 1875 Act. The 1906 Act which specifically applied to Arizona property was not at issue in *Ellamae Phillips*.

To the extent that the 1875 Act comes into this case, it does so as settled law making clear that for those property owners whose predecessors in title acquired title to land from the federal government, took fee title to the property including fee title to any property subject to a railroad easement. This is settled law.[7]

## IV. CONCLUSION

President Lincoln stated the purpose of this Court in his first State of the Union Address when he wrote, "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals." That is the result the Plaintiffs seek. Prompt resolution of their claim against the Government.

The Department of Justice is not entitled to relief under Rule 56(f). It would be wrong to further delay resolution of this case by more than one-half a year because the Department of Justice has – by its own admission – simply chosen to not engage in the basic discovery that they have known (or should have known) was involved since April 2007. To grant the Department of Justice's request to further delay this case by six months would be to increase the amount of interest that the government must ultimately

[7] For a fuller discussion of this point see Plaintiffs' memorandum of law at p. 31.

pay for the taking of the Plaintiffs' land and further delay the Plaintiffs' right to "just compensation" guaranteed by the Fifth Amendment. Delaying resolution of this case does not benefit either the Plaintiffs or the Defendant.

While the Plaintiffs do not believe any enlargement of time is needed, the Plaintiffs do not object to a thirty day enlargement of time through March 6, 2008 in which the Defendant may file their response to the Plaintiffs' motion for partial summary judgment. Despite the Defendant's apparent failure to conduct title research into the fifteen parcels of property owned by the eight Plaintiffs, a thirty day enlargement of time would allow them more than ample opportunity to conduct any necessary title work.

| | |
|---|---|
| Date: 2/5/08 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br><br>ATTORNEYS FOR PLAINTIFFS |