**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JACK LADD AND MARIE LADD, *et al.*,** <br> **Plaintiffs,** | ) | Case No. 07-271 L |
| **v.** | ) | Hon. Robert H. Hodges, Jr. |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**MOTION BY RAILS-TO-TRAILS CONSERVANCY FOR LEAVE TO PARTICIPATE IN CASE AS *AMICUS CURIAE***

## INTRODUCTION

The Rails-to-Trails Conservancy ("RTC" or the "Conservancy"), a national non-profit organization with more than 77,000 members nationwide, respectfully moves this Court for leave to participate in the above-captioned case as *amicus curiae* in support of Defendant United States of America. RTC seeks leave to participate in this case as *amicus curiae* by filing a brief in opposition to Plaintiffs' pending Motion for Summary Judgment in the above captioned-matter. This brief would be filed within the frame established by this Court.[1]

## BACKGROUND

This case was brought by several persons who own land that abuts a 76.2 mile long railroad right-of-way between Curtiss Flats, Arizona, to just north of the U.S.-Mexico border near Bisbee Junction, Douglass, and Paul Spur, Arizona. The corridor is owned by Union Pacific and operated by the San Pedro Railroad Operating Company ("SPROC"). Plaintiffs allege that they have an ownership interest in the railroad right-of-way that has been "taken" as a result of the

[1] On February 2, 2008, the United States filed a motion for relief under RCFC 56(f), seeking a stay of proceedings on the Plaintiffs' motion for partial summary judgment to allow a six-month period of discovery.

issuance by the Surface Transportation Board ("STB") of a decision and Notice of Interim Trail Use ("NITU") pursuant to the Section 8(d) of the National Trails System Act ("Federal Railbanking Law"), 16 U.S.C. § 1247(d).

The Federal Railbanking Law established a mechanism, often referred to as "railbanking," whereby railroads wishing to cease operations on particular lines are encouraged, but not required, to convey those lines to States, local governments, or qualified private organizations that would manage and operate the rights of way as interim trails pending future reactivation of rail use. *See* 16 U.S.C. § 1247(d). Under the statute as implemented by STB regulations, if a railroad seeking abandonment authorization from the STB notifies the agency of its willingness to negotiate an agreement with a State, political subdivision or qualified private organization for railbanking and interim trail use, the STB will issue, in this case, a Notice of Interim Trail Use ("NITU"), establishing a 180-day period in which the parties can negotiate an agreement whereby the corridor will be turned over to an interim trail manager and used for railbanking and interim trail use, until such time as the corridor is needed for rail service. 49 C.F.R. § 1152.29. If an agreement is reached within the 180-day period, the corridor is considered "railbanked" and the rails-to-trails conversion can proceed pursuant to the Federal Railbanking Law. If no agreement is reached, the abandonment authorization becomes fully effective and, upon consummation of that authority, the STB loses jurisdiction to railbank the corridor.

According to public records available on the STB's website (www.stb.dot.gov), on October 17, 2005, SPROC filed a petition to abandon the 76.2 mile long corridor. The Trust for Public Land ("TPL"), a nonprofit land conservation organization, subsequently filed a request with the STB for a NITU to allow for interim trail use negotiations, to which SPROC consented,

and the STB therefore issued a NITU on July 25, 2006.[2] The NITU was extended once until February 27, 2007, but only with respect to 34 miles of the corridor. TPL sought no further extensions of the NITU, and the NITU thereupon lapsed on February 27, 2007.

On January 29, 2007, SPROC filed a notice with the STB that the railroad had consummated abandonment with respect to approximately 19 miles of the corridor, thus ending the STB's regulatory jurisdiction over this portion of the line. *See* 49 C.F.R. § 1152.29(e)(2). While it is still possible that the railroad may request the STB to re-open the abandonment proceeding in order to issue a NITU and permit a new round of interim trail use/railbanking negotiations with respect to the approximately 44 miles of the corridor that continue to be subject to the STB's jurisdiction, no such request has been submitted to date.

**INTERESTS OF *AMICUS CURIAE***

The Rails-to-Trails Conservancy ("RTC") is a nonprofit corporation formed in 1985, with more than 77,000 members nationwide, including approximately 767 active members in the State of Arizona. Its mission is to create a nationwide network of trails from former rail lines and connecting corridors to build healthier places for healthier people. To carry out this mission, RTC identifies rail corridors that are not currently needed for rail transportation and facilitates their preservation and continued public use through conversion to public trails, non-motorized transportation corridors, and other public uses. Through its trail conservancy program, RTC has participated in numerous interim trail use/railbanking negotiations under the Federal Railbanking Law.

---

[2] *See* SAN PEDRO RAILROAD OPERATING COMPANY, LLC—ABANDONMENT EXEMPTION—IN COCHISE COUNTY, AZ, STB Docket No. AB-1081X (STB, served July 26, 206).

The experience of RTC with federal railbanking, as well as RTC's extensive participation federal litigation over the federal Railbanking Law, gives RTC useful perspective on the legal issues in this case. RTC has participated in numerous cases brought by private landowners following the Federal Circuit's plurality decision in ***Preseault v. U.S.A.***, 100 F.3d 1525 (Fed. Cir. 1996), which opened the door to claims by landowners that a rails-to-trails conversion facilitated by the federal Railbanking Law has resulted in a "taking" of their property interests in the underlying railroad corridor.[3] This extensive involvement in the federal railbanking program and in litigation over the ownership issues raised by rails-to-trails conversions renders RTC uniquely suited to provide its views as *amicus curiae* to this Court.

RTC has a particular interest in providing its views on the unresolved legal question presented based on the unique facts of this case. Here, unlike other "takings" cases that have been filed to date, there is no extant STB railbanking order, no ongoing railbanking/interim trail use negotiations, and no rails-to-trails conversion; indeed, the STB no longer even has the authority to issue a railbanking order facilitating a rails-to-trails conversion over a portion of corridor that Plaintiffs' claim has been "taken" as a result of the STB's actions. The Federal Circuilt's plurality decision in ***Preseault v. U.S.A***, which to date has defined the "takings" jurisprudence to be applied to compensation claims arising from STB decisions under the Federal

---

[3] *Preseault v. U.S.A.*, 100 F.3d 1525 (Fed. Cir. 1996); *Chevy Chase Land Co. v. U.S.A.*, 37 Fed. Cl. 545 (1997), *aff'd*, (Fed. Cir., Dec. 17, 1999), *reh'g & reh'g in banc denied*, 2000 U.S.App. LEXIS 8520, 8521 (April 6, 2000), *cert. denied*, 121 S. Ct. 380 (Oct. 30, 2000); ***Toews v. U.S.A.***, 376 F.3d 1371 (Fed. Cir. 2004); ***Hash v. United States***, 403 F.3d 1308 (Fed. Cir. 2005); *Moore v. U.S.A.*, No.93-134L (Fed. Cl., filed March, 1993); *Glosemeyer v. U.S.A*, No. 93-126L (Fed. Cl., filed March, 1993); *Town of Grantwood Village v. U.S.A.*, No. 98-176 L (Fed. Cl., filed Mar. 13, 1998); *Gray v. U.S.A.*, No. 4:99cv3154 (D. Neb., Filed May 17, 1999); *Bywaters v. U.S.A.*, Civil No. 6:99-CV-451 (E.D. TX); *Lowers v. U.S.A.*, No. 1-99-CV-90039 (S.D. Iowa, filed Aug. 16, 1999); *Schneider v. U.S.A*, No. 8-99-CV-315 (D. Neb., ); *Seger v. U.S.A.*, C.A. No. 4:99cv3056 (D. Neb., filed Feb. 16, 1999); *Gray v. U.S.A.*, No. 4:99cv3154 (D. Neb., Filed May 17, 1999); *Taylor v. U.S.A*, No. 00-2385 (W.D. Pa, filed 2001); *Ellamae Phillips Co. v .U.S.A*, C.A. 04-1544 (Fed. Cl., filed Oct. 13, 2003); *Troha v. U.S.A.*, C.A. 05-191 E (W. D. Pa., filed June 21, 2005).

Railbanking Law, made clear that the Court's finding of a "taking" in that case was limited to the context in which the STB's issuance of a railbanking law actually results in a rails-to-trails conversion. The Court specifically limited its holding as follows::

> We do not hold that every exercise of authority by the Government under the Rails-to-Trails Act necessarily will result in a compensable taking. . . . .
> *Whether, at the time a railroad applies to abandon its use of an easement limited to railroad purposes, a taking occurs under an ICC order to "railbank" the easement for possible future railroad use, and allowing in the interim for use of the easement for trail purposes, is a question not now before us. We offer no opinion at this time on that question.*

*Preseault v. U.S.A.*, 100 F.3d at 1552 (emphasis added).

No "takings" case has yet to address this question, expressly left unresolved by the Federal Circuit in *Preseault*, of whether the STB's issuance of a railbanking order, alone, without the transfer of the corridor to a trail manager and without any interim trail use, constitutes a taking.[4] Accordingly, this case raises an issue of first impression, and would benefit from RTC's participation as a friend of the court.

**CONCLUSION**

For these reasons, Rails-to-Trails Conservancy respectfully requests that this Court enter the attached order granting them leave to participate in this case as *amicus curiae*, and be permitted to file an *amicus* brief on the merits of the case at the appropriate time.

---

[4] In one case, *Troha v. U.S.A.*, C.A. 05-191 E (W. D. Pa., filed June 21, 2005), the Plaintiffs challenged the STB's issuance of a NITU, which authorized railbanking/interim trail use negotiations, in a context in which the potential interim trail manager continued to be engaged in interim trail use/railbanking negotiations with the railroad and where the NITU had had not expired. In that context, the Court opted to deny both parties' motions for summary judgment without prejudice, effectively placing the case in abeyance until such time as the NITU either expired or an interim trail use/railbanking agreement was reached.

Respectfully submitted,

_________/s/___________________
Andrea C. Ferster, General Counsel
RAILS-TO-TRAILS CONSERVANCY
2121 Ward Place, N.W., 5th Floor
Washington, D.C. 20037
(202) 974-5142
(202) 331-9680 (Facsimile)
aferster@railstotrails.org

Attorney for Rails-to-Trails Conservancy

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 13, 2008, a true and correct copy of the foregoing were filed with this Court's electronic filing system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing unable as indicated on the Notice of Electronic Filing

_________/s/___________________
Andrea C. Ferster