**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JACK LADD and MARIE LADD, et al., Plaintiffs, | No. 07-271 L |
| v. | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f)**

Defendant has filed a motion pursuant to RCFC 56(f) seeking nothing more than an opportunity to conduct discovery before being forced to respond to Plaintiffs' premature Motion for Partial Summary Judgment (Doc. No. 32). Doc. No. 37. Rather than responding to the specific discovery sought by the United States, Plaintiffs chose, instead, to oppose the motion based upon inflammatory allegations that Defense counsel has somehow been dilatory in its prosecution of the case. The United States hereby replies.

## I. Defendant Has Sought and Continues to Seek an Orderly and Expeditious Process for the Resolution of this Case

Plaintiffs' opposition memorandum largely does not dispute that the discovery Defendant seeks is essential to Defendant's case. Rather, Plaintiffs argue that Defendant has been "doing nothing" and should have already conducted the discovery and title examination work. Doc. 39. Indeed, Plaintiffs recount in detail the amount of time that has elapsed since the filing of the case

and the instant motion. Plaintiffs, however, fail to disclose that Defendant's counsel received Plaintiffs' initial disclosures pursuant to RCFC 26 just three weeks before Plaintiffs filed their Motion for Partial Summary Judgment on December 4, 2007. Doc. 35. Moreover, some of the conveyance documents that Plaintiffs allege form the basis of their claims were not disclosed until they actually filed their summary judgment motion.

Regardless, as Defendant demonstrated in its opening memorandum and attached declaration, Doc. 37, despite the lack of a discovery schedule in this case, Defendant has taken a number of steps to ascertain the facts in this case and to obtain necessary documentation to support its defenses. See Doc. 37 at 14 and Exhibit 1 at ¶¶ 12, 13, 21, 24 (describing efforts to hire a firm to conduct title searches, preparation of interrogatories, and informal contacts with counsel for the Trust for Public Lands and the San Pedro Railroad Operation Company, LLC). In addition, Defendant has spent substantial additional time related to other aspects of this case, such as class certification, and responding to other filings and arguments made by Plaintiffs. E.g. Docs. 8, 9, 16, 24, 25, 29 (filing Motion to Dismiss Count Three of Plaintiffs' First Amended Complaint, Answer, Joint Preliminary Status Report, Response to Plaintiffs' Motion for Class Certification, Motion to Approve a Proposed Schedule, and Motion to Strike). In short, Defendant has consistently attempted to negotiate with Plaintiffs an orderly and expeditious process for the resolution of this case. Plaintiffs, conversely, have rebuffed each of Defendant's efforts to establish a collegial and effective approach to the ultimate resolution of this case.

## II. Discovery Is Necessary to Afford Defendant the Due Process Necessary to Respond to Plaintiffs' Motion for Partial Summary Judgment

"Rule 56(f) motions are generally favored and should be liberally granted." Jade Trading, LLC v. United States, 60 Fed. Cl. 558, 565 (2004) (citation omitted). Here, Defendant has identified the particular information that it seeks to discover and explained how that information is imperative to its defense to Plaintiffs' motion for partial summary judgment. Doc. 37. As the Federal Circuit has stated, "when the discovery is reasonably directed to 'facts essential to justify the party's opposition,' such discovery must be permitted or summary judgment refused." Opryland USA, Inc. v. Great American Music Show, 970 F.2d 847, 852 (Fed. Cir. 1992) (internal citation omitted). Because Defendant has demonstrated that the United States needs time to conduct discovery and investigate facts essential to its opposition to Plaintiffs' motion, this Court should grant Defendant's motion.

Plaintiffs argue that their summary judgment motion can be decided based on two "very basic" questions: (1) was Plaintiffs' property subject to an easement, and (2) was a Notice of Interim Trail Use ("NITU") issued on July 25, 2006. Doc. 39 at 2. Plaintiffs suggest that if the Court answers both of these questions in the affirmative it must grant summary judgment for Plaintiffs on the issue of liability. The analysis in this case, however, is not so superficial. While these two questions may be elements of the Court's analysis of this case, they do not include all of the issues that must be addressed by the Court in resolving the issue of liability. For example, even if there is an easement over Plaintiffs' property, fundamental questions in all rails-to trails cases include (1) what is the nature of that easement, and (2) does interim trail use and railbanking go beyond the scope of that easement? Preseault v. United States, 100 F.3d

1525, 1533 (Fed. Cir. 1996). Plaintiffs conveniently ignore these very fundamental questions. More importantly, Plaintiffs have, to date, not provided sufficient information for the Court or Defendant to "answer" any of these questions, notwithstanding their burden to do so.

First, although the named Plaintiffs have provided some documentation related to their claim that they held title to property underlying or abutting the right-of-way, they have not each provided documentation to prove they held a property interest on the date of the alleged taking. For example, some of the property owners point to deeds by which they allege to have acquired an interest in property more than 20 years ago. See, e.g., Doc. 35 at Exhibits P (special warranty deed dated January 24, 1984) and Exhibit R (warranty deed dated February 12, 1962). Defendant needs to conduct discovery and necessary investigations to confirm, through title examinations, whether the named Plaintiffs still held their alleged property interests on the date of the NITU and, if so, the scope of such interest.[1/]

Second, Defendant needs to conduct title examination work to determine the accuracy of

[1/] Title searches and other discovery is reasonably expected to engender a genuine issue of material fact regarding the scope of each named Plaintiffs' property interest on the date of the NITU. Notably, there are language differences among the original deeds granting an interest to the railroad in the right-of-way. There are also language differences in the deeds by which Plaintiffs assert they acquired their present day property interests. Often the language used to define the scope of the property interest acquired is dispositive on the issue of liability. For example, in one deed in this case, it appears that two of the named Plaintiffs acquired their property interest through a special warranty deed that generally conveyed the property but excluded the railroad corridor when it made the conveyance "EXCEPTING THEREFROM HOWEVER, the lands and rights of the El Paso and Southwestern Railroad Company, as excepted in that certain Deed Recorded February 17, 1943 . . ."). Docket No. 35 at Exhibit N. Because Plaintiffs have not provided the referenced February 17, 1943 deed or otherwise provided the title documentation to complete the chain of title for each named Plaintiff, Defendant cannot reach a final determination on liability related to this property and cannot defend itself from the claims raised by Plaintiffs' motion for partial summary judgment. Without this information, the scope of Plaintiffs' alleged property interest is a disputed fact, for which discovery is necessary.

Plaintiffs' claim that they are successors in title to the original property owners who granted the right-of-way to the railroad. To date, Plaintiffs have not produced the requisite title documentation to complete the chain of title for each named Plaintiff. Moreover, Plaintiffs' summary judgment filing fails to specify the source for each named Plaintiff's claim. Plaintiffs have alleged that the railroad acquired its interests in the right-of-way through two sources: (1) various land grants from private parties, and (2) pursuant to the General Railroad Right of Way Act of 1875. A determination as to which source is the basis for each named Plaintiffs' taking claim is a relevant fact to resolving Plaintiffs' motion because the different source deeds may have different legal significance; in other words, different deeds may have granted different interests in the right way. Therefore, the scope of each named Plaintiff's property interest, if any, on the date of the alleged taking has not and can not be "answered" by Plaintiffs' filings to date. A discovery period is therefore critical to afford Defendant an opportunity to conduct its own investigation and gather facts necessary to oppose Plaintiffs' motion.

Third, discovery is needed to clarify, among other things, the type of claim that each named Plaintiff asserts in this lawsuit. Astonishingly, Plaintiffs argue that the Court should find liability in favor of the named Plaintiffs despite the fact that they have not explained the type of legal claim that each is bringing against the United States. Plaintiffs state that "[t]he issue of whether the named Plaintiffs' land was taken temporarily or permanently has <u>nothing</u> to do with" Plaintiffs' motion. Doc. No. 39 at 10. This statement is simply wrong. The nature of the takings claims (temporary or permanent) will inform how this Court should analyze the claims to determine if, and to what extent, defendant has any liability. The rails-to-trails cases that have been decided to date have exclusively involved claims that the conversion of a railroad right-of-

way to a recreational trail was a permanent taking. Defendant believes that a different analytical framework must be applied for a temporary taking claim.

The Federal Circuit's suggestions in Caldwell v. United States that both temporary and permanent takings claims can accrue, and that the statue of limitations begins to run, upon issuance of the NITU, 391 F.3d 1226, 1233-35 (Fed. Cir. 2004), do not address how these very different types of claims should be analyzed for purposes of determining liability in rails-to-trails cases. Plaintiffs have cited no case that involved a temporary takings claim in the National Trails System Act ("Trails Act") context. As the Federal Circuit made clear, Caldwell "[did] not involve, and [the Court did not] address, whether the issuance of the NITU in fact involves a compensable temporary taking when no [trail use] agreement is reached." 391 F.3d at 1234 n.7. Indeed, no court has determined whether the issuance of the NITU can result in a compensable taking when no trail use agreement was reached. In short, this case presents a legal issue of first impression.[2/] Therefore, the legal effect of the July 25, 2006 NITU is not "settled," as Plaintiffs contend. As explained in Defendant's opening memorandum, the opportunity to pursue discovery related to the type of claims (permanent or temporary) that Plaintiffs are pursuing is reasonably likely to engender material facts related to Defendant's defenses to Plaintiffs' claims. Doc. 37 at 11-13.

---

[2/]In Caldwell, the Federal Circuit explained that "the NITU operates as a single trigger to several possible outcomes. It may, as in [that] case, trigger a process that results in a permanent taking [claim] in the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked. Alternatively, negotiations may fail, and the NITU would then convert into a notice of abandonment." 391 F.3d at 1234 (internal citations omitted). Here, no trail use agreement was reached and the NITU negotiation period has ended. The legal effect of the NITU under these facts is an issue of first impression.

## III. Time for Discovery Will Allow the Federal Circuit to Address the United States' Liability for 1875 Act Claims, a Central Issue in this Case

Contrary to Plaintiffs' assertions, the question of whether the General Railroad Right of Way Act of 1875 ("1875 Act") can form the basis for a takings claim is not "settled law."[3] Doc. 39 at 13. Importantly, Judge Baskir of the Court of Federal Claims recently certified the question of 1875 Act liability to the Federal Circuit for interlocutory consideration. Ellamae Phillips Co. v. United States, No. 04-1544L, Slip. Op. at 8 (Dec. 21, 2007, Docket No. 92) (a copy was attached to Defendant's opening memorandum, Doc. 37, as Exhibit 3). On February 7, 2008, the Federal Circuit accepted the appeal. Ellamae Phillips Co. v. United States, Federal Circuit Misc. Docket No. 867, Order (Feb. 7, 2008) (a copy is attached as Exhibit 1). Any subsequent guidance from the Federal Circuit would ultimately assist in the resolution of the 1875 Act claims in the instant case. Therefore, as Defendant described in its opening brief, Doc. 37 at 16-18, a stay of summary judgment briefing to allow discovery will also allow a controlling legal issue in this case to proceed toward interlocutory consideration and resolution by the Federal Circuit.

[3] Plaintiffs also argue that their claims relate to the 1906 Act, which was not at issue in Phillips. Doc. 39 at 13. Contrary to this assertion, however, Plaintiffs themselves characterize the 1906 Act as a "successor" act, which does nothing more than apply the 1875 Act to property located in Oklahoma and Arizona. Id. at 12; Doc. 35 at 33. Moreover, Plaintiffs have relied extensively upon the 1875 Act to support their motion for summary judgment and discussed the 1875 Act and the case law applying it in great detail. See Doc. 35, pp. 31-33; p. 29, n. 105 ("As we note above, the grant of a right-of-way in this case involve[s] the 1875 Act . . ."). Conversely, Plaintiffs make only passing references to the 1906 Act in their Motion for Summary Judgment. Thus, Plaintiffs' allegation, that the 1875 Act issues to be addressed by the Federal Circuit in the Phillips case are not at issue here, is specious, at best.

## CONCLUSION

Defendant respectfully requests that this Court stay proceedings on Plaintiffs' Motion for Partial Summary Judgment, to and until July 31, 2008, and provide Defendant an opportunity to conduct the discovery detailed in its opening memorandum and attached declaration.

February 13, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environmental & Natural Resources Division

/s/ Rachel A. Dougan by /s/ James D. Gette
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024