U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General

*Washington, D.C. 20530*

August 1, 2006

The Honorable Devin Nunes
Chairman
Subcommittee on National Parks
Committee on Resources
U.S. House of Representatives
Washington, D.C. 20515

Dear Mr. Chairman:

The Department of Justice appreciates the opportunity to share its views with regard to H.R. 4581, the "Easement Owners Fair Compensation Act of 2005," as a follow-up to the Subcommittee hearing held on July 13, 2006. We commend the drafters of the bill for their commitment to ensuring that individuals whose property may have been taken by government action have an opportunity to present their claims in the Federal courts. We share this commitment. H.R. 4581, however, would unnecessarily displace settled, well-reasoned case law, as well as raise other concerns, including constitutional ones. We thus note our opposition to the bill.

Section 2(c) of the underlying bill raises a potentially significant constitutional problem. That provision would require the United States Court of Federal Claims ("CFC") to review on the merits certain claims previously brought against the United States that were dismissed for failure to satisfy the then-applicable statute of limitations, where those claims would have satisfied the new statute of limitations set forth in the bill. This provision would appear to apply to a CFC dismissal that had been appealed to the United States Court of Appeals for the Federal Circuit. In some instances, this provision would appear to require reopening of final judgments of the Federal Circuit and, to that extent, it would appear to violate Article 3 of the Constitution.

In *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), the Supreme Court struck down a similar provision, one that changed the applicable limitations period in securities cases and allowed cases dismissed under the old limitations period to be reinstated under the new period. The Court held that "[w]hen retroactive legislation requires its own application in a case already finally adjudicated," Congress exceeds its power under the Constitution. *Id.* at 225. As applied to Federal Circuit decisions that have become final, section 2(c) seems to violate the constitutional rule set forth in *Plaut*. It is true that cases predating *Plaut* suggest that Congress may waive the res judicata effect of claims brought against the United States without running afoul of separation-of-powers principles, *see United States v. Sioux Nation*, 448 U.S. 371, 397 (1980); *Plaut*, 514 U.S. at 230-31, but, in light of *Plaut*, we are not confident that those cases suffice to establish the constitutionality of section 2(c). We therefore recommend that section

EXHIBIT B

tabbies

2(c) be amended to make clear that it applies only to cases that have not become final judgments, thus rendering the bill immune from constitutional challenge under *Plaut.*

H.R. 4581 would amend section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"), by establishing a new point when a claim against the United States would "first accrue" for purposes of starting the six-year clock for filing a takings claim in the CFC"). *See* 28 U.S.C. § 2501 (statute of limitations for CFC cases). The plaintiffs in these suits typically are landowners whose predecessors-in-interest conveyed (or had condemned) an interest to a railroad company, generally in the late 1800s or early 1900s, for the operation of a railroad across the property. The Trails Act allows these railroad rights-of-way to be "railbanked" and preserved for future rail use and, in the interim, to be used for trails as an alternative to abandonment. This is accomplished by the Surface Transportation Board's ("STB") issuance of a Notice of Interim Trail Use ("NITU"). Under the law of some states, but for the issuance of a NITU, the railroad's property interest would be deemed "abandoned."

Recently, the courts have made clear when the six-year clock begins to run for these takings claims. In *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), *cert. denied*, 126 S. Ct. 366 (2005), the Federal Circuit established a "single, bright-line rule" that a Trails Act takings claim "first accrues" with issuance of "the NITU [because it] is the triggering event that blocks any reversionary interests from ... vesting." *Accord, Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006). Thus, the Federal Circuit gives clear direction that a Trails Act takings claim accrues upon the issuance of the NITU by the STB. The Federal Circuit is the only circuit court with appellate jurisdiction to consider Fifth Amendment takings claims, and there is no contrary precedent from the Supreme Court.

We believe *Caldwell* and *Barclay* were correctly decided. Indeed, the United States advocated in favor of using NITU issuance as the accrual event in both cases. Courts have been clear that only Federal action should trigger a takings claim against the United States. Here, the issuance of the NITU is the *only* relevant Federal action in Trails Act takings cases. Thus, we believe a contrary approach - such as found in H.R. 4581 - would be unnecessary and inconsistent with long-standing takings principles.

We note several other concerns with the bill. First, it would potentially create confusion. Parties involved in Fifth Amendment takings litigation benefit from uniformity in the law. Establishing a special test for a relatively small body of claims - particularly one not dependent on a federal action - could serve as a trap for attorneys and landowners who may be unaware that the general rule is not to be followed. We are unaware of any court decision that has established an accrual test similar to the one proposed in H.R. 4581.

Second, the bill would delay, and in some instances deny, takings relief to some claimants. While shifting the six-year "window" to bring suit may be intended to benefit a limited number of individuals whose claims would otherwise be time-barred, it also would likely

prevent some other landowners from achieving getting prompt resolution of their claims. Under H.R. 4581, these landowners would have to wait for the new accrual requirements to be met in their cases before they could bring suit. Moreover, landowners who had a claim on the date of the NITU would no longer have one under H.R. 4581, if they were divested of their property during the intervening time period. We are not aware of a principled basis for such disparate treatment.

In some situations, the bill could prevent some otherwise viable takings claims from ever reaching court. Section 2(a) of the bill would place a new condition on the right to bring a takings claim under the Trails Act, specifically that the railroad "in writing" convey an interest to the trail operator. Yet the condition may never be met in some situations because the Trails Act does not require such a written conveyance. The applicable regulations likewise contemplate that a trail operator need not acquire the corridor. The operator can merely use the rail corridor for interim trail use, as long as it assumes full responsibility for the corridor and agrees to railbanking. 49 C.F.R. § 1152.29(a).

Finally, the bill would result in different legal standards depending on whether the takings claim was filed in the Court of Federal Claims or a district court. H.R. 4581 applies to cases in the Court of Federal Claims (see Section 2(a)), and not to cases before district courts.[1] Creating different accrual requirements based on the court in which the claim is brought would not only add confusion, but it would invite forum shopping and inequitable results.

[1]The appropriate court for hearing Fifth Amendment takings claims is determined by the amount of compensation sought by the plaintiff. For claims in excess of $10,000, the CFC has exclusive jurisdiction. 28 U.S.C. § 1491. For claims of $10,000 or less, the CFC has concurrent jurisdiction with the Federal district courts. 28 U.S.C. § 1346(a)(2). In either instance, the applicable statute of limitations allows six years to bring a claim from when the claim "first accrues." *See* 28 U.S.C. § 2501 (CFC); 28 U.S.C. § 2401 (district court). Appeals of Fifth Amendment takings claims from either court are heard in the United States Court of Appeals for the Federal Circuit.

The Honorable Devin Nunes
Page 4

Thank you for the opportunity to present our views. If we can be of further assistance in this matter, please do not hesitate to contact this office. The Office of Management and Budget has advised us that from the perspective of the Administration's program, there is no objection to the submission of this letter.

Sincerely,

William E. Moschella
William E. Moschella
Assistant Attorney General

cc: The Honorable Donna M. Christensen
Ranking Member