**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JACK LADD and MARIE LADD, et al., Plaintiffs, v. THE UNITED STATES OF AMERICA, Defendant. | No. 07-271 L<br>Honorable Robert H. Hodges, Jr. |

**DEFENDANT'S MOTION TO STAY CLAIMS RELATED TO EASEMENTS ACQUIRED PURSUANT TO THE 1875 ACT**

In this case, the named Plaintiffs have moved for summary judgment with respect to the issue of liability, arguing that their alleged interest in property underlying a railroad right-of-way in Cochise County, Arizona, was taken without just compensation as a result of the Surface Transportation Board's ("STB") issuance of a Notice of Interim Trail Use ("NITU") pursuant to the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247(d). The parties concur that certain portions of the right-of-way were acquired by the San Pedro Railroad Operating Company, LLC, or its predecessors in interest (collectively the "Railroad") through easements acquired directly from the United States pursuant to the General Railroad Right-of-Way Act of 1875 ("1875 Act"), 43 U.S.C. §§ 934-939.

The United States Court of Appeals for the Federal Circuit has accepted an interlocutory appeal to address liability in Trails Act takings cases as they relate to easements granted pursuant to the 1875 Act. *Ellamae Phillips Co. v. United States*, No. 2008-5042 (Fed. Cir.). *See* Ex. 1 (Federal Circuit's Feb. 7, 2008, Order on Petition for Permission to Appeal). The United States

believes that the limited resources of the parties and the Court would be best utilized if the Court issued an order staying Plaintiffs' 1875 Act claims pending the Federal Circuit's decision in *Phillips*.[1/] As such, Defendant moves to stay proceedings related to property interests acquired by the Railroad pursuant to the 1875 Act until final resolution by the Federal Circuit of *Phillips*. A memorandum in support of this motion follows.

---

[1/]Simultaneously with the filing of this Motion to Stay, Defendant is filing its opposition to Plaintiffs' motion for partial summary judgment as well as a cross-motion for summary judgment. The cross-motion is based upon two independent grounds: (1) that, when Plaintiffs' takings claims are properly analyzed as potential regulatory takings, Plaintiffs cannot succeed in proving that a taking has occurred; and (2) that the named Plaintiffs lack compensable property interests in portions of the subject right-of-way acquired by the Railroad by deed transfer (as opposed to 1875 Act grants). If the United States is successful in its argument that plaintiff cannot sustain a regulatory taking claim, the issues related to the 1875 Act claims and the need for the requested stay would become moot.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY CLAIMS RELATED TO EASEMENTS ACQUIRED PURSUANT TO THE 1875 ACT**

**FACTUAL BACKGROUND**[2/]

Plaintiffs are the owners of land in Cochise County, Arizona, adjacent to a railroad right-of-way. See Defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-motion for Summary Judgment and its Opposition to Plaintiffs' Motion for Partial Summary Judgment at ¶¶ 19-34. San Pedro Railroad Operating Company, LLC, and its predecessors (collectively the "Railroad") have for approximately 100 years operated a railroad over the right-of-way. *Id*. at ¶¶ 1-4. A portion of the property underlying the right-of-way was acquired by the Railroad through easements obtained directly from the United States under the General Railroad Right-of-Way Act of 1875, 43 U.S.C. §§ 934-939 ("1875 Act"). *Id*. at ¶¶ 22-26; 29-30. Plaintiffs, or their predecessors, then obtained adjoining property through general land patents from the United States, which Plaintiffs allege include fee interests in the land underlying the right-of-way. See e.g., Plaintiffs' Proposed Findings of Uncontroverted Fact (Dkt. 35) at ¶ 16.

**ARGUMENT**

Certain aspects of the interplay between the 1875 Act and the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"), have been answered in a previous decision by the Federal Circuit. *See Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005) ("*Hash II*"). In *Hash II*, the Federal Circuit considered a takings claim brought by landowners, some of whom (designated in that case as "Category 1" claimants) claimed, like some of the named Plaintiffs in this case, that they had obtained their land after the railroad had acquired its right-of-way

[2/]The facts relevant to this case are fully set forth in Defendant's Brief in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment, which is being filed simultaneously with this motion. Only the facts directly relevant to this motion will be repeated here.

pursuant to the 1875 Act. *Id.* at 1312. The narrow question presented in *Hash II* was whether "the ownership of the underlying land remained with the United States for lands subsequently patented to settlers under the Homestead Act. The district court [had] held that the ownership never left the United States and that the land patentee received no rights therein, and therefore had no reversionary right on discontinuance of the railway right-of-way." *Id.* at 1313. The Federal Circuit reversed the trial court and answered the specific question posed to the Court by concluding that "the land of Category 1 is owned in fee by the landowners, subject to the railway easement." *Id.* at 1318.

The Federal Circuit, however, did not have cause to address the liability-related issue of the scope of the railroad's easement created by the 1875 Act and whether that easement was broad enough to encompass the establishment of a recreational trail. Before liability can be established by the owner of the underlying fee interest, that individual must prove that use as a recreational trail is beyond the scope of the easement granted to the railroad.[3/] Rather than addressing this issue, the *Hash II* court was instead focused exclusively on the threshold question of who held the underlying fee interest if the easement were extinguished.

Unfortunately, despite the fact that it never went to the next level of analyzing the breadth of the 1875 Act easements or whether they survived the creation of an interim trail, the Federal Circuit went on to write that:

> On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Presault* cases. On remand the district court shall determine just compensation on the conditions that apply to these

---

[3/] In the instant case no trail has been established and no interim trail use agreement has been reached.

landowners.

*Hash II*, 403 F. 3d at 1318.

But for this seemingly unsupported statement based on no analysis, the Federal Circuit's decision was otherwise narrowly focused on who retained the fee interest in the land, not the breadth or continued viability of the easement. Because of this passing reference, however, on remand the district court felt compelled to conclude that the Federal Circuit's decision mandated that it hold the United States liable for an unconstitutional taking. *See Hash v. United States*, 2007 WL 1309548 (D. Idaho 2007) ("*Hash III*"). The district court admittedly reached this conclusion without ever addressing the open question of whether 1875 Act easements are broad enough to encompass use as a recreational trail.

In other cases presenting the same issue the trial judges also felt compelled to find liability as a result of this passing statement by the Federal Circuit in Hash, while similarly noting the unfortunate dearth of analysis on the continued viability of the easement in the Federal Circuit's opinion. *See Blendu v. United States*, 75 Fed. Cl. 543 (2007) and *Phillips v. United States*, 77 Fed. Cl. 387 (2007). In *Phillips*, however, following the issuance of his decision imposing liability against the United States with respect to 1875 Act claims, Judge Baskir granted the Government's petition for an interlocutory appeal of his order. *Ellamae Phillips Co. v. United States*, No. 04-1544 (Fed. Cl.) Ex. 2 (Dec. 21, 2007 Fed Cl. decision granting Defendant's motion to certify an interlocutory appeal). In the order appealed from in *Phillips*, the trial court concluded that *Hash II*, required it to hold that the United States was liable for a taking where the easement for the railroad right-of-way was created under the1875 Act and subsequently was converted for interim trail use. When certifying its decision for appeal, the trial court concluded that its "order involved a controlling question of law with

respect to which there is a substantial ground for difference of opinion . . ." as to whether the *Hash II* decision did go so far as to establish liability against the United States. (Ex. 1 at 2.).

The Federal Circuit has now accepted the United States' petition for interlocutory appeal in *Phillips*. *See* Ex. 1.[4] The Federal Circuit should be given the opportunity to opine on 1875 Act issues before this Court addresses them in the instant case.

"A motion for stay of proceedings pending resolution of related claims in another forum is directed to the court's discretion." National Bank of Detroit v. United States, 1 Cl. Ct. 712, 714 (1983) (citing Will v. Calvert Fire Insurance Co., 437 U.S. 655, 662-64 (1978) (plurality opinion)). See also Stephenson v. United States, 37 Fed. Cl. 396, 401 (1997) ("Federal courts have 'an ample degree of discretion' in deciding when to defer to other federal proceedings in order to avoid duplicative litigation."). The decision as to whether to stay one case pending resolution of related action before another court turns on consideration of factors such as judicial economy, economy to the parties, and priority in assertion of jurisdiction. National Bank of Detroit v. United States, 1 Cl. Ct. at 714.

The outcome of the appeal in *Phillips* is likely to clarify the breadth of the Federal Circuit's decision in *Hash II* and is likely to provide critical guidance to this Court in its adjudication of 1875 Act claims in this case. Inasmuch as this Court's final judgment will be subject to review by the Federal Circuit, it is clearly appropriate to defer the issue of the United States' liability for a taking where the railroad acquired an easement under the 1875 Act, until

---

[4] The Federal Circuit has ordered that the initial brief by the petitioner be filed on June 20, 2008. Thus, under the Court's rules, barring excessive extensions of time, the case should be fully briefed for decision before the end of the summer.

the Federal Circuit decides the interlocutory appeal in *Phillips*.[5] Because the government's liability for a taking through interim trail use of a railroad easement created under the 1875 Act is unsettled, but currently being considered by the Federal Circuit, this Court should stay resolution of 1875 Act claims until the Federal Circuit issues more definitive guidance. The requested stay will save judicial resources and prevent the parties from currently litigating issues that are likely to be directly addressed by the Federal Circuit in *Phillips*.

**CONCLUSION**

For all of the foregoing reasons, the United States requests that the Court stay proceedings in this case related to a determination of liability for properties subject to easements acquired by the Railroad pursuant to the 1875 Act.

Respectfully submitted,

May 15, 2008

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

OF COUNSEL
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024

[5] The United States District Court for the District of Nebraska has faced the same situation. In the case of *Schneider v. United States*, No. 8:99-CV-0315 (March 30, 2008 Order attached hereto as Ex. 3), the district court stayed proceedings related to 1875 Act claims "pending the outcome of the interlocutory appeal in *Ellamae Phillips Co. v. United States*." Ex. 3 at 2.