**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JACK LADD and MARIE LADD, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 07-271 L |
| | ) Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSES TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Defendant responds to Plaintiffs' Proposed Findings of Uncontroverted Fact, Docket No. 35, as follows:

Defendant's General Statements

Plaintiffs' pending motion for summary judgment relates only to the United States' liability as to the eight named Plaintiffs' takings claims.[1/] See Docket Nos. 32-33. Defendant's responses are thus limited to the eight named Plaintiffs and the portion of the railroad corridor that abuts the eight named Plaintiffs' properties. To the extent that any of Plaintiffs' proposed findings of fact relate to any other portion of the right-of-way corridor, they are irrelevant and

[1/] Defendant will refer to the individuals named as Plaintiffs in this lawsuit as "eight named Plaintiffs" because the Plaintiffs can be divided into eight "groups" that allege common interests: (1) the Ladd Family, which includes Jack Ladd, JoBeth Ladd, John Ladd, and Marie Ladd; (2) the Lindsey Family, which includes Gail Lanham, James A. Lindsey, Michael A. Lindsey, and William Lindsey; (3) the Charles Miller Family; (4) Valentin Castro; (5) the Singletree Ranch, LLC; (6) Joseph Lawrence Heinzl; (7) the Miller Family Trust; and (8) Tammy Windsor-Brown.

immaterial to Plaintiffs' pending motion for summary judgment and Defendant disputes the proposed findings on that basis.

Defendant does not dispute that the eight named Plaintiffs owned properties abutting the right-of-way on the date of the alleged taking (July 25, 2006).[2/] However, Defendant disputes that Plaintiffs have any property interest in the railroad corridor itself.

Plaintiffs' Proposed Fact in Heading A: **The railroad right-of-way that crossed the Plaintiffs' land was an easement acquired in 1903 by the El Paso and Southwestern Railroad and this easement only allowed the railroad, as holder of the easement, to use the Plaintiffs' land for the operation of a railroad.**

Defendant's Response to Proposed Fact in Heading A: Defendant disputes this proposed finding. The right-of-way corridor that abuts the named Plaintiffs' property was conveyed to the El Paso and Southwestern Railroad Company and the Arizona and Southeastern Railroad Company through various conveyance documents between 1903 and 1941 as well as through the General Railroad Right of Way Act of 1875 ("1875 Act"). Defendant disputes Plaintiffs' characterization of any of these conveyances as an "easement." The question of the type of property interest conveyed to the railroad as a result of the private conveyance documents or the 1875 Act is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 1: The El Paso and Southwestern Railroad acquired its railroad

---

[2/]Since the date of the alleged taking, at least one named Plaintiff (Joseph Lawrence Heinzl) has sold his property, see Declaration of Cindi A. R. Straup ("Straup Decl.") ¶6 & Ex. 11 (filed today as attachment to Defs.' Summ. J. Memo.), and another named Plaintiff (William Lindsey) has died, see Excerpts of Pls.' Resps. to Defs' Discovery at Ans. to Interrog. 3 (filed today as Ex. C to Defs.' Summ. J. Memo.).

right-of-way by a number of conveyances, both from the United States government as well as from individual landowners. *See* Tabs A-K.

Defendant's Response to Proposed Fact 1: Defendant does not dispute this proposed finding. However, Defendant disputes that the conveyance documents located at Tabs F, H, I, J, and K, are relevant or material because they do not relate to any of the named Plaintiffs' properties or do not document a conveyance to the railroad. See Straup Decl. at ¶ 7. In addition, the conveyance documents located at Plaintiffs' Tabs A, B, C, D, E, and G, relate to portions of the railroad corridor that abut only one of the named Plaintiffs' property – the Ladd family – and, therefore, Defendant disputes that these documents are relevant or material to any of the other named Plaintiffs' claims. Id. at ¶ 5 (chart).

Plaintiffs' Proposed Fact 2: The right-of-way grants from the federal government, over public land owned by the federal government, were made pursuant to the General Railroad Right-of-Way Act of 1875 (42 U.S.C. §§ 934-39 (2007)) and the 1906 Act applying the General Railroad Right-of-Way Act to the Territories of Oklahoma and Arizona (42 U.S.C. § 944). Plaintiffs note that this information is derived from the oversized right-of-way survey maps produced by the Defendant. These maps can be made available to the Court if it so desires.

Defendant's Response to Plaintiffs' Proposed Fact 2: Defendant does not dispute that portions of the right-of-way corridor were conveyed to the El Paso and Southwestern Railroad Company and the Arizona and Southeastern Railroad Company through the 1875 Act, which was made applicable in Arizona by the 1906 Act.

Plaintiffs' Proposed Fact 3: The remaining portions of the right-of-way that runs over the Plaintiffs' property were acquired by the following easement conveyances from individual land

owners and entities (a true and accurate copy of each referenced easement is attached under its respective Tab referenced in paragraphs 4-14):

Defendant's Response to Plaintiffs' Proposed Fact 3: Defendant disputes this proposed finding. Defendant disputes that the referenced conveyance documents are easements. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance documents is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). In addition, Defendant disputes that the conveyance documents referenced in subparagraphs (f), (h), (i), (j), and (k), are relevant or material because they do not relate to any of the named Plaintiffs' properties or do not document a conveyance to the railroad. See Straup Decl. at ¶ 7. In addition, the conveyance documents referenced in subparagraphs (a), (b), (c), (d), (e), and (g), relate to portions of the railroad corridor that abut only one of the named Plaintiffs' property – the Ladd family – and, therefore, Defendant disputes that these conveyance documents are relevant or material to any of the other named Plaintiffs' claims. Id. at ¶ 5 (chart).

Plaintiffs' Proposed Fact 3(a): Easement granted by B.L. Robinson to the El Paso and Southwestern Railroad Company on July 26, 1903, recorded in Deed Book 19, Page 491 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(a): Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not

dispute that the document located at Tab A is an accurate copy of the referenced conveyance document. However, the conveyance document is dated July 16, 1903, not July 26, 1903. In addition, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(b): Easement granted by Lydia L. Fike to the El Paso and Southwestern Railroad Company on July 20, 1903, recorded in Deed Book 19, Page 493 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(b): Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab B is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(c): Easement granted by Henry Lee Hardt to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 496 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(c): Defendant disputes that the referenced conveyance document is an easement. The question of the type of

property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab C is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(d): Easement granted by E.M Fike to the El Paso and Southwestern Railroad Company on July 9, 1903, recorded in Deed Book 19, Page 498 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(d): Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab D is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(e): Easement granted by August Bhomfolk to the El Paso and Southwestern Railroad Company on July 13, 1903, recorded in Deed Book 19, Page 500 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(e): Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab E is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(f): Easement granted by R.L. Benton and W.W. McKim to the El Paso and Southwestern Railroad Company on September 30, 1903, recorded in Deed Book 23, Page 16 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(f): Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab F, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 3(g): Easement granted by P.J. Fike to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 488 in

the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(g): Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab G is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 3(h): Easement granted by Phebe A. Hearst to the Arizona and Southeastern Railroad Company (predecessor to the El Paso and Southwestern Railroad Company on April 4, 1893, recorded in Deed Book 14, Pages 38 and 39 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(h): Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab H, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 3(i): The Bouquillas Land & Cattle Company ("Bouquillas") subsequently acquired an interest in the land that was previously owned by Phebe A. Hearst. On October 18, 1909, Bouquillas conveyed another right-of-way over this land to the El Paso & Southwestern Railroad Company, recorded in Deed Book 50, Page 69 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(i): Defendant disputes the first sentence because Plaintiffs did not disclose any documentation to support the proposed finding and because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, it is not relevant or material to any of the named Plaintiffs' claims. In response to the second sentence, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document, located at Tab I, is relevant to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document "conveyed another right-of-way." The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 3(j): "[I]n the year 1911, a relocation and rebuilding of the main line track of said E.P. & S.W.R.R. was undertaken and carried to completion …requiring additional lands for right-of-way…." *See* Deed Book 60 Page 205, in the Cochise County Recorder of Deed's Office. As such, on September 20, 1911, the Bouquillas Land & Cattle Company conveyed a quitclaim deed to the El Paso and

Southwestern Railroad, in Book 53, Page 252 in the Cochise County Recorder of Deed's Office. "[A]t the time of the execution of said quitclaim deed, said parties entered into an agreement that (among other conditions) '5. Any and all portions of the right-of-way of the Railroad Company, within the boundaries of said grant, not included in the right-of-way as relocated, shall be conveyed by the Railroad Company to the Cattle Company by quitclaim deed." *See* Deed Book 60, Pages 205-06 in the Cochise County Recorder of Deed's Office.

Defendants' Response to Plaintiffs' Proposed Fact 3(j): Defendant disputes this proposed finding because Plaintiffs did not disclose any documentation to support it and because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab J, is not relevant or material to any of the named Plaintiffs' claims. In addition, the question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 3(k): Accordingly, the El Paso and Southwestern Railroad conveyed fee title, which was originally conveyed by Phebe A Hearst, et al. and the Bouquillas Land & Cattle Company, to the Bouquillas Land & Cattle Company on October 28, 1914, in Book 60 Pages 205-09 in the Cochise County Recorder of Deed's Office, reserving only an easement across the property for operation of a railroad.

Defendants' Response to Plaintiffs' Proposed Fact 3(k): Defendant disputes this proposed finding because, as described above in Defendants' Response to Plaintiffs'

Proposed Fact 3, the referenced conveyance document, located at Tab K, is not relevant or material to any of the named Plaintiffs' claims. Defendant also disputes that the referenced conveyance document "conveyed fee title" to Phebe A. Hearst, et al. and reserved "only an easement across the property for operation of a railroad." The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material "fact" under RCFC 56(h).

<u>Plaintiffs' Proposed Fact 4:</u> Tab A represents a true and accurate copy of the easement conveyance granted by B.L. Robinson to the El Paso and Southwestern Railroad Company on July 26, 1903, recorded in Deed Book 19, Page 491 in the Cochise County Recorder of Deed's Office.

<u>Defendant's Response to Plaintiffs' Proposed Fact 4:</u> Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab A is an accurate copy of the referenced conveyance document. However, the conveyance document is dated July 16, 1903, not July 26, 1903. In addition, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

<u>Plaintiffs' Proposed Fact 5:</u> Tab B represents a true and accurate copy of the easement conveyance granted by Lydia L. Fike to the El Paso and Southwestern Railroad Company on

July 20, 1903, recorded in Deed Book 19, Page 493 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 5: Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab B is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 6: Tab C represents a true and accurate copy of the easement conveyance granted by Henry Lee Hardt to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 496 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 6: Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab C is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced

conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 7: Tab D represents a true and accurate copy of the easement conveyance granted by E.M. Fike to the El Paso and Southwestern Railroad Company on July 9, 1903, recorded in Deed Book 19, Page 498 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 7: Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab D is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 8: Tab E represents a true and accurate copy of the easement conveyance granted by August Bhomfolk to the El Paso and Southwestern Railroad Company on July 13, 1903, recorded in Deed Book 19, Page 500 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 8: Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted

fact under RCFC 56(h). Defendant does not dispute that the document located at Tab E is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

<u>Plaintiffs' Proposed Fact 9:</u> Tab F represents a true and accurate copy of the easement conveyance granted by R.L. Benton and W.W. McKim to the El Paso and Southwestern Railroad Company on September 30, 1903, recorded in Deed Book 23, Page 16 in the Cochise County Recorder of Deed's Office.

<u>Defendant's Response to Plaintiffs' Proposed Fact 9:</u> Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab F, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

<u>Plaintiffs' Proposed Fact 10:</u> Tab G represents a true and accurate copy of the easement conveyance granted by P.J. Fike to the El Paso and Southwestern Railroad Company on July 7, 1903, recorded in Deed Book 19, Page 488 in the Cochise County Recorder of Deed's Office.

<u>Defendant's Response to Plaintiffs' Proposed Fact 10:</u> Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law

rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the document located at Tab G is an accurate copy of the referenced conveyance document. However, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant disputes that the referenced conveyance document is relevant or material to any of the named Plaintiffs' claims other than the Ladd family.

Plaintiffs' Proposed Fact 11: Tab H represents a true and accurate copy of the easement conveyance granted by Phebe A. Hearst to the Arizona and South Eastern Railroad Company (predecessor to the El Paso and Southwestern Railroad Company) on April 4, 1893, recorded in Book 14, Pages 38 and 39 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 11: Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab H, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 12: Tab I represents a true and accurate copy of the easement conveyance granted by the Bouquillas Land & Cattle Company to the El Paso & Southwestern Railroad, on October 18, 1909, recorded in Deed Book 50, Page 69 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 12: Defendant disputes the proposed

finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab I, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 13: Tab J represents a true and accurate copy of the easement conveyance granted by the Bouquillas Land & Cattle Company to the El Paso and Southwestern Railroad on September 20, 1911, in Deed Book 53, Page 252 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 13: Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab J, is not relevant or material to any of the named Plaintiffs' claims. In addition, Defendant disputes that the referenced conveyance document is an easement. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 14: Tab K represents a true and accurate copy of the fee title conveyance of the land originally conveyed by Phebe A. Hearst, et al. and the Bouquillas Land & Cattle Company to the El Paso and Southwestern Railroad, back to the Bouquillas Land & Cattle Company on October 28, 1914, in Deed Book 60, Pages 205-09 in the Cochise County Recorder of Deed's Office.

Defendant's Response to Plaintiffs' Proposed Fact 14: Defendant disputes the proposed finding because, as described above in Defendants' Response to Plaintiffs' Proposed Fact 3, the referenced conveyance document, located at Tab K, is not relevant or material to any of the named Plaintiffs' claims. In addition, the question of the type of property interest conveyed as a result of the referenced conveyance document is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Plaintiffs' Proposed Fact 15: These conveyances explicitly state that the easement was granted solely "for a right-of-way of the El Paso & Southwestern Railroad, through, along and over the same" land and that the railroad was "to have and to hold the said tract, pieces and parcels of land and premises, as and for a right-of-way for said railroad." *See* Tabs A - K.

Defendant's Response to Plaintiffs' Proposed Fact 15: Defendant disputes this proposed finding. Defendant disputes that the referenced conveyance documents are easements. The question of the type of property interest conveyed to the railroad as a result of the referenced conveyance documents is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant also disputes that Plaintiffs have accurately characterized the language contained in the referenced conveyance documents. As described above in Defendants' Response to Plaintiffs' Proposed Fact 3, Defendant further disputes that the conveyance documents located at Tabs F, H, I, J, and K, are relevant or material because they do not relate to any of the named Plaintiffs' properties. In addition, because the conveyance documents located at Tabs A, B, C, D, E, and G relate to portions of the railroad corridor that abut only one of the named Plaintiffs' property – the Ladd family, Defendant disputes that these conveyance documents are relevant or material to any of

the other named Plaintiffs' claims.

Plaintiffs' Proposed Fact in Heading B: **The Plaintiffs are the successors in title to the original property owners that granted the rights-of-way to the El Paso and Southwestern Railroad. Each Plaintiff held fee title to their property abutting and underlying the former El Paso and Southwestern Railroad right-of-way on July 25, 2006, the date the STB issued a NITU.**

Defendant's Response to Plaintiffs' Proposed Fact in Heading B: This proposed finding is disputed. Defendant disputes the first sentence because Plaintiffs have not disclosed documentation to show that the named Plaintiffs are "successors in title" to any of the original property owners that conveyed portions of the railroad corridor to the El Paso and Southwestern Railroad. In addition, the question of whether the named Plaintiffs are "successors in title" is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant disputes the second sentence because Defendant disputes that the named Plaintiffs hold fee title to the railroad corridor. In addition, the question of whether Plaintiffs have any property interest in the railroad corridor is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that on July 25, 2006, the named Plaintiffs owned property that abuts the railroad corridor; however, Defendant disputes that the named Plaintiffs hold any reversionary interest in the railroad corridor itself.

(1) The Ladd Family

Plaintiffs' Proposed Fact 16: The Ladd Family originally acquired its property through land patents issued to Marie Ladd's family by the United States government in 1903. One of

these land patents was that issued to Marie Ladd's great aunt, Ella M. Fike, signed by President Theodore Roosevelt and attached as Tab L. This property has remained in the Ladd family since the original land patents.

Defendant's Response to Plaintiffs' Proposed Fact 16: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that on July 25, 2006, the Ladd family Plaintiffs owned the property described in the conveyance documents identified as Plaintiffs' Exhibits M, N, O, and P. Defendant notes, however, that not all of the property identified in the conveyance documents located at Tabs M and P abuts the railroad corridor. See Straup Decl. at n.1. Defendant also does not dispute that the Homestead Certificate set forth in Plaintiffs' Exhibit L relates to the Ladd Plaintiffs' property.

Plaintiffs' Proposed Fact 17: Marie Ladd's family (the Fike's) originally operated a dairy on the property and title was acquired from the United States by Marie Ladd's great aunts and uncles, Ella M. Fike, Lydia L. Fike, P.J. Fike, and E.M. Fike. See Tabs B, D, G, and L. Some of the Fike family employees, B.L. Robinson, and August Bhomfolk, also acquired property by land grant. See Tabs A and E.

Defendant's Response to Plaintiffs' Proposed Fact 17: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that on July 25, 2006, the Ladd family Plaintiffs owned the property identified in the conveyance documents identified as Plaintiffs' Exhibits located at Tabs M, N, O, and P. Defendant notes, however, that not all of the property identified in the conveyance documents located at Tabs M and P abuts the railroad

corridor. See Straup Decl. at n.1. Defendant also does not dispute that the original source conveyance documents relevant to the portion of the railroad corridor that abuts the Ladd Plaintiffs' property are identified in Plaintiffs' Exhibits located at Tabs A, B, C, D, E, and G. See Straup Decl. at ¶ 5 (chart).

Plaintiffs' Proposed Fact 18: Jack and Marie Ladd (the "Ladds"), husband and wife, live on the Ladd Family Ranch, on which they operate a cattle ranch. The Ladds have conveyed their interests in the Ladd Family Ranch to their trust, the John H. Ladd and Marie W. Ladd Trust, on which they serve as the trustees and the beneficiaries. These conveyances into the Ladd Trust are as follows: the Special Warranty Deeds recorded on June 1, 1998 as Fee #980616283 and Fee #980616286 in the Cochise County Recorder of Deed's Office, and the Special Warranty Deed recorded on October 12, 2002 as Fee #021034971 in the Cochise County Recorder of Deed's Office. (A copy of these Special Warranty Deeds are attached respectively as Tab M, N, and O.)

Defendant's Response to Plaintiffs' Proposed Fact 18: Defendant does not dispute that on July 25, 2006, the Ladd family Plaintiffs owned the property identified in the conveyance documents identified as Plaintiffs' Exhibits located at Tabs M, N, and O. Defendant notes, however, that not all of the property identified in the conveyance document located at Tab M abuts the railroad corridor. See Straup Decl. at n.1.

Plaintiffs' Proposed Fact 19: Jack and Marie Ladd's son, John Ladd and his wife, Jobeth, also own fee title to a portion of this land. The Warranty Deed by which John and JoBeth Ladd acquired title to this land, recorded on February 2, 1984, as Docket No. 1736, Page 241-243, is attached as Tab P.

Defendant's Response to Plaintiffs' Proposed Fact 19: Defendant does not dispute that on July 25, 2006, the Ladd Plaintiffs owned the property identified in the conveyance documents identified as Plaintiffs' Exhibit P. Defendant notes, however, that not all of the property identified in this conveyance document abuts the railroad corridor. See Straup Decl. at n.1.

Plaintiffs' Proposed Fact 20: The entire Ladd Family Ranch, as owned by Jack and Marie Ladd and by John and Jobeth Ladd on July 25, 2006 (the date of the NITU) is shown on the Cochise County Assessors' map which is attached as Tab Q.

Defendant's Response to Plaintiffs' Proposed Fact 20: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that on July 25, 2006, the Ladd family Plaintiffs owned the property identified in the conveyance documents identified as Plaintiffs' Exhibits located at Tabs M, N, O, and P. Defendant notes, however, that not all of the property identified in the conveyance documents located at Tabs M and P abuts the railroad corridor. See Straup Decl. at n.1.

Plaintiffs' Proposed Fact 21: That portion of the abandoned railroad right-of-way subject to the NITU which burdens the Ladd Property is approximately six (6) miles long and is also shown on the Cochise County Assessors' Map attached as Tab Q. This abandoned right-of-way passes about 300 feet from the Ladd's home.

Defendant's Response to Plaintiffs' Proposed Fact 21: Defendant disputes the first sentence of this proposed finding because the NITU does not "burden" the Plaintiffs' property. The effect of the STB's issuance of the NITU is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h).

Defendant also disputes Plaintiffs' description of the railroad corridor as an "abandoned right-of-way" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Ladd Plaintiffs' property. Defendant does not dispute that the railroad corridor abuts approximately 5.6 miles of the Ladd family's property. Defendant disputes the second sentence of the proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 22: The Ladd property abuts and underlies the abandoned San Pedro Railroad Operating Company ("SPROC") right-of-way that was subject to the July 25, 2006 NITU, but is not subject to the STB's February 2007 Order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate a Trail Use Agreement. (See Tabs M-Q).

Defendant's Response to Plaintiffs' Proposed Fact 22: Defendant does not dispute that the Ladd Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Ladd Plaintiffs' property abuts a portion of the railroad corridor that was not subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Ladd Plaintiffs' property.

(2) The Lindsey Family

Plaintiffs' Proposed Fact 23: In 1962, William Lindsey and his brother, Howard

Lindsey, and Howard Lindsey's wife, Helen, acquired fee title to more than 60 acres of property in Cochise County, Arizona (the "Lindsey Property"). (A copy of the Warranty Deed by which the Lindseys's acquired title to this property is attached as Tab R.)

Defendant's Response to Plaintiffs' Proposed Fact 23: Defendant does not dispute that on July 25, 2006 the Lindsey Plaintiffs owned the property described in the conveyance documents identified as Plaintiffs' Exhibits R and T. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 24: The location of the Lindsey Property is just south of Charleston, Arizona and is shown on the attached copy of the Assessor's maps attached as Tab S. Defendant's Response to Plaintiffs' Proposed Fact 24: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 25: William Lindsey still holds title to his interest in the Lindsey Property individually (See Tab R, Lindseys's Warranty Deed).

Defendant's Response to Plaintiffs' Proposed Fact 25: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant further disputes this proposed finding because, according to Plaintiffs' discovery responses, Mr. William Lindsey has died. See Excerpts of Pls.' Resps. to Defs' Discovery at Ans. to Interrog. 3.

Plaintiffs' Proposed Fact 26: Howard and Helen Lindsey transferred their interest in the Lindsey Property to the Harold A. Lindsey Revocable Trust ("Lindsey Trust"). On October 30,

2002, the Lindsey Trust conveyed this property to Harold Lindsey's three children, Michael A. Lindsey, Gail A. Lanham, and James A. Lindsey, by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on November 13, 2002 as Fee #021136305. (See Tab T, a copy of the Quitclaim Deed conveyed by the Harold A. Lindsey Revocable Trust to Harold Lindsey's three children individually).

Defendant's Response to Plaintiffs' Proposed Fact 26: Defendant does not dispute that on July 25, 2006 the Lindsey Plaintiffs owned the property described in the conveyance documents identified as Plaintiffs' Exhibits R and T. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 27: Currently, Harold Lindsey's three children, Michael A. Lindsey, Gail A. Lanham, and James A. Lindsey, each hold an undivided one-third fee interest in the Lindsey property that was originally acquired by their parents in 1962 (See Tabs R and T).

Defendant's Response to Plaintiffs' Proposed Fact 27: Defendant does not dispute that on July 25, 2006 the Lindsey Plaintiffs owned the property described in the conveyance documents identified as Plaintiffs' Exhibits R and T. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 28: The Lindsey family's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and the STB's February 2007 Order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate a Trail Use Agreement. (See Tabs R and T).

Defendant's Response to Plaintiffs' Proposed Fact 28: Defendant does not dispute that the Lindsey Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Lindsey Plaintiffs' property abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Lindsey Plaintiffs' property.

(3) The Charles Miller Family

Plaintiffs' Proposed Fact 29: Charles Raymond Miller and Pauline Miller, husband and wife, individually and through their revocable trusts (the "Charles Miller Family") acquired fee title to a number of parcels of separately described property in Cochise County, Arizona, by the following deeds: that Warranty Deed recorded in the Cochise County Recorder of Deed's Office on October 13, 1999 as Fee #991031019; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000411149; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000411150; that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000513793; and by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on August 1, 1986 as Fee #868816356 (A copy of these deeds by which the Charles Miller Family acquired their property are attached respectively as Tabs U, V, W, and X).

Defendant's Response to Plaintiffs' Proposed Fact 29: Defendant does not dispute that

on July 25, 2006 the Miller family Plaintiffs owned the property described in the conveyance documents identified as Plaintiffs' Exhibits located at Tabs U, V, W, and X. Defendant notes, however, that none of the property identified in the conveyance document located at Tab V and not all of the property identified in the conveyance document located at Tab W abut the railroad corridor. See Straup Decl. at n.1. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h). Defendant notes that Plaintiffs did not produce a copy of the "Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on April 20, 2000 as Fee #000513793." Defendant further notes that any interest that Plaintiffs may have in the property described in the conveyance document identified as Plaintiffs' Exhibit V is not relevant or material as that document describes lands that do not abut the railroad corridor. See Straup Decl. at n.1.

Plaintiffs' Proposed Fact 30: The Charles Miller Family's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU, but which is not subject to the February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tabs U, V, W, and X, Charles Miller Family's deeds).

Defendant's Response to Plaintiffs' Proposed Fact 30: Defendant does not dispute that the Miller family Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Miller fmily Plaintiffs' property abuts a portion of the railroad corridor that was not subject to the 30-day extension of the NITU negotiation period described in the STB's February 14,

2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon most of the railroad corridor that abuts the Miller family Plaintiffs' property. See Straup Decl. at ¶ 9.

(4) Valentin and Deborah Ann Castro

Plaintiffs' Proposed Fact 31: The Valentin Castro III and Deborah Ann Castro Revocable Trust, Valentin and Deborah Castro Trustees ("Castros"), acquired fee title to property in Cochise County, Arizona, by that Quit Claim Deed recorded in the Cochise County Recorder of Deed's Office on January 3, 2006 as Fee #080100088. (A copy of the Quit Claim Deed by which the Castros acquired their property is attached as Tab Y).

Defendant's Response to Plaintiffs' Proposed Fact 31: Defendant does not dispute that on July 25, 2006 the Castro Plaintiffs owned the property described in the conveyance document identified as Plaintiffs' Exhibit located at Tab Y. Defendant notes, however, that not all of the property identified in the conveyance document located at Tab Y abuts the railroad corridor. See Straup Decl. at n.1. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 32: The Castros property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tab Y, Castros' Quit Claim Deed).

Defendant's Response to Plaintiffs' Proposed Fact 32: Defendant does not dispute that the Castro Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Castro Plaintiffs' property abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Castro Plaintiffs' property.

(5) Singletree Ranch

Plaintiffs' Proposed Fact 33: John S. and Mary E. Gay ("Gays"), husband and wife, owned fee title to property in Cochise County, Arizona. The Gays transferred title to the property to Singletree Ranch, LLC, the beneficial ownership of which is held by John and Mary Gay and other members of the Gay family, by Gift Deed recorded with the Cochise County Recorder of Deed's Office on January 1, 2005 as Fee #010100416. (A copy of the Gift Deed by which the Gays conveyed their property to Singletree Ranch, LLC, is attached as Tab Z).

Defendant's Response to Plaintiffs' Proposed Fact 33: Defendant does not dispute that on July 25, 2006 the Singletree Ranch Plaintiffs owned the property described in the conveyance document identified as Plaintiffs' Exhibit located at Tab Z. Defendant notes, however, that not all of the property identified in the conveyance document located at Tab Z abuts the railroad corridor. See Straup Decl. at n.1. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus

inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 34: The Singletree Ranch property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tab BB, the Singletree Ranch's Gift Deed).

Defendant's Response to Plaintiffs' Proposed Fact 34: Defendant does not dispute that the Singletree Ranch Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Singletree Ranch Plaintiffs' property abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Singletree Ranch Plaintiffs' property.

(6) Joseph Lawrence Heinzl

Plaintiffs' Proposed Fact 35: Joseph Lawrence Heinzl owns fee title to property in Cochise County, Arizona by that Warranty Deed recorded with the Cochise County Recorder of Deed's Office on July 23, 1999 as Fee # 990722817. (A copy of the Warranty Deed by which Mr. Heinzl acquired his property is attached as Tab AA).

Defendant's Response to Plaintiffs' Proposed Fact 35: Defendant does not dispute that on July 25, 2006 Joseph Lawrence Heinzl owned the property described in the conveyance document identified as Plaintiffs' Exhibit located at Tab AA. Defendant disputes that Joseph

Lawrence Heinzl currently has any interest in the property described in the conveyance document located at Tab AA because Joseph Lawrence Heinzl sold the property in June 2007. See Straup Decl. ¶6 & Ex. 11. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 36: Joseph Lawrence Heinzl's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tab AA, Joseph Lawrence Heinzl's Warranty Deed).

Defendant's Response to Plaintiffs' Proposed Fact 36: Defendant does not dispute that Joseph Lawrence Heinzl previously owned property that abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that Joseph Lawrence Heinzl previously owned property that abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts Plaintiff Joseph Lawrence Heinzl's property.

(7) The Col. Quentin Miller Family Trust

Plaintiffs' Proposed Fact 37: The Miller Family Trust, Col. Quentin Miller, Trustee, acquired fee title to property in Cochise County, Arizona, by that Warranty Deed recorded in the

Cochise County Recorder of Deed's Office on October 22, 1993 as Fee #931028778. (A copy of the deed by which the Col. Quentin Miller Family Trust acquired this property is attached as Tab BB).

Defendant's Response to Plaintiffs' Proposed Fact 37: Defendant does not dispute that on July 25, 2006 the Miller Family Trust Plaintiffs owned the property described in the conveyance document identified as Plaintiffs' Exhibit located at Tab BB. Defendant notes, however, that not all of the property identified in the conveyance document located at Tab BB abuts the railroad corridor. See Straup Decl. at n.1. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 38: The Col. Quentin Miller Family Trust's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tab BB, the Col. Quentin Miller Family Trust's Warranty Deed).

Defendant's Response to Plaintiffs' Proposed Fact 38: Defendant does not dispute that the Miller Family Trust Plaintiffs' property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that the Miller Family Trust Plaintiffs' property abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007 Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the

railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts the Miller Family Trust Plaintiffs' property.

(8) Tammy Windsor-Brown

Plaintiffs' Proposed Fact 39: Tammy Windsor-Brown acquired fee title to property in Cochise County, Arizona by that Quitclaim Deed recorded in the Cochise County Recorder of Deed's Office on December 5, 2002 as Fee #021239035 (a copy of the Quitclaim Deed by which Ms. Windsor-Brown acquired her property is attached as Tab CC).

Defendant's Response to Plaintiffs' Proposed Fact 39: Defendant does not dispute that on July 25, 2006 Tammy Windsor-Brown owned the property described in the conveyance document identified as Plaintiffs' Exhibit located at Tab CC. Defendant disputes the remaining facts proposed in this finding because they are not relevant or material to the named Plaintiffs' claims and are thus inappropriate under RCFC 56(h).

Plaintiffs' Proposed Fact 40: Tammy Windsor-Brown's property abuts and underlies the abandoned SPROC right-of-way that is now subject to the July 25, 2006 NITU and February 2007 order extending the negotiating period for the Trust for Public Land and the SPROC to negotiate Trail Use Agreement. (See Tab CC, Tammy Windsor-Brown's Quitclaim Deed).

Defendant's Response to Plaintiffs' Proposed Fact 40: Defendant does not dispute that Tammy Windsor-Brown's property abuts a portion of the railroad corridor that was subject to the negotiation period described in the July 26, 2006 NITU. Defendant also does not dispute that Tammy Windsor-Brown's property abuts a portion of the railroad corridor that was subject to the 30-day extension of the NITU negotiation period described in the STB's February 14, 2007

Order. Defendant disputes that the named Plaintiffs have any property interest in the railroad corridor itself. Defendant also disputes Plaintiffs' description of the railroad corridor as "abandoned" because to Defendant's knowledge, the railroad has not exercised its authority to abandon the railroad corridor that abuts Plaintiff Tammy Windsor-Brown's property.

Plaintiffs' Proposed Fact in Heading C: **The successor to El Paso and Southwestern Railroad, the San Pedro Railroad Operating Company, LLC ("SPROC"), abandoned the railroad easement in 2005.**

Defendant's Response to Plaintiffs' Proposed Fact in Heading C: Defendant disputes this proposed finding because SPROC did not abandon the railroad corridor in 2005 and because the railroad corridor is not an "easement." The question of the type of property interest held by the railroad is a question of law rather than a material fact and is therefore inappropriate as a proposed finding of uncontroverted fact under RCFC 56(h). Defendant does not dispute that the San Pedro Railroad Operating Company, LLC, ("SPROC") is a successor to the El Paso and Southwestern Railroad.

Plaintiffs' Proposed Fact 41: In November 2003, The San Pedro Railroad Operating Company, LLC ("SPROC") acquired the right-of-way from SWKR Operating Company, the successor to the Southern Pacific. (See STB Docket No. AB-1081X, November 9, 2005 decision; a copy of which is attached as Tab DD).

Defendant's Response to Plaintiffs' Proposed Fact 41: Defendant does not dispute this proposed finding.

Plaintiffs' Proposed Fact 42: The SPROC acquired the right-of-way with the intent of operating a rail line providing NAFTA-related freight service to Mexico. (See STB Docket No.

AB-1081X, February 3, 2006 decision; a copy of which is attached as Tab EE).

Defendant's Response to Plaintiffs' Proposed Fact 42: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC has previously stated that its prime motivation in acquiring the subject rail line was to provide trans-border rail service to and from Mexico in conjunction with Ferromex, the Mexican railroad on the other side of the United States/Mexican border at Naco, Arizona.

Plaintiffs' Proposed Fact 43: This plan required that the railroad line obtain a border crossing at Naco, Arizona from Ferromex, the Mexican railroad on the other side of the US/Mexican border at Naco. (See Tab DD, November 9, 2005 decision.)

Defendant's Response to Plaintiffs' Proposed Fact 43: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC has previously stated that its prime motivation in acquiring the subject rail line was to provide trans-border rail service to and from Mexico in conjunction with Ferromex, the Mexican railroad on the other side of the United States/Mexican border at Naco, Arizona.

Plaintiffs' Proposed Fact 44: SPROC failed to persuade Ferromex to restore that gateway. (See E-mail correspondence from Ferromex to SPROC's David Parkinson, dated January 25, 2005; a copy of which is attached as Tab FF.)

Defendant's Response to Plaintiffs' Proposed Fact 44: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC has previously stated

that it failed to persuade Ferromex to restore that gateway.

Plaintiffs' Proposed Fact 45: On January 25, 2005, Ferromex emailed SPROC's David Parkinson stating that it was not willing to consider re-establishing the international connection at Naco, stating, "[a]t this time, we are not considering the opening of a new gateway at Naco because the potential volume does not justify investment and operating expenses." (See Tab FF, e-mail from Ferromex).

Defendant's Response to Plaintiffs' Proposed Fact 45: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC has previously stated that it failed to persuade Ferromex to restore that gateway and that the proposed finding accurately quotes the referenced e-mail.

Plaintiffs' Proposed Fact 46: The SPROC's plan "never materialized." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 46: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously stated that its plan was to provide trans-border rail service to and from Mexico in conjunction with Ferromex has not materialized.

Plaintiffs' Proposed Fact 47: The SPROC carried coal and coke for Chemical Lime, the only on-line shipper, for approximately eight months. (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 47: Defendant disputes this proposed

finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously indicated that it carried coal and coke for Chemical Lime, the only on-line shipper, for a period of time.

Plaintiffs' Proposed Fact 48: SPROC subsequently determined that "Chemical Lime's projected level of traffic - between 380 and 500 carloads per year - is inadequate to sustain the railroad." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 48: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously indicated that "Chemical Lime's projected level of traffic–between 380 and 500 carloads per year–is inadequate to sustain the railroad."

Plaintiffs' Proposed Fact 49: As such, the SPROC "decided to abandon the line in March 2005 due to limited freight business and the lack of prospects for prospects for future traffic increases." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 49: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously stated "it decided to abandon the line in March 2005 due to limited freight business and the lack of prospects for future traffic increases." Defendant disputes that SPROC abandoned the line in March 2005.

Plaintiffs' Proposed Fact 50: On June 11, 2005, the SPROC received notification from the Federal Railroad Administration "recommending that SPROC cease railroad operations over

the line due to the poor condition of a bridge at milepost 1044.4 at the northern end of the Douglas Branch."  (See Tab EE, STB's February 3, 2006 decision).

<u>Defendant's Response to Plaintiffs' Proposed Fact 50:</u> Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h).  Defendant does not dispute that according to SPROC, on June 10, 2005, it received a letter from the Federal Railroad Administration "recommending that SPROC cease operations over the line due to the poor condition of a bridge at milepost 1044.4 at the northern end of the Douglas Branch."

<u>Plaintiffs' Proposed Fact 51:</u>. Accordingly, the SPROC "filed an embargo notice with the Association of American Railroads on June 16, 2005, and renewed the embargo of September 22, 2005."  (See Tab EE, STB's February 3, 2006 decision).

<u>Defendant's Response to Plaintiffs' Proposed Fact 51:</u> Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h).  Defendant does not dispute that SPROC stated that it "filed an embargo notice with the Association of American Railroads on June 16, 2005, and renewed the embargo of September 22, 2005."

<u>Plaintiffs' Proposed Fact 52:</u> "SPROC also states that, in August 2005, heavy rains damaged substantial segments of the line."  (See Tab EE, STB's February 3, 2006 decision).

<u>Defendant's Response to Plaintiffs' Proposed Fact 52:</u> Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h).  Defendant does not dispute that SPROC made the statement set forth in the proposed finding, except to clarify that SPROC's statement related only to the

segment of the line between milepost 1061.9 and milepost 1077.9.

Plaintiffs' Proposed Fact 53: SPROC subsequently advised Chemical Lime of the need to make "other transportation options." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 53: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC asserted that it advised Chemical Lime of other transportation options.

Plaintiffs' Proposed Fact 54: During its eight months of operation, the SPROC calculates that it incurred a loss of $251,410 and would incur an additional loss of $277,736 the following year if it continued to operate. (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 54: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously calculated "it incurred a loss of $251,410 in the base year and that it will incur a loss of $277,736 in the forecast year to operate the line" and that these calculations were "based on operations which SPROC conducted in the final 3 months of 2004 and in the first 5½ months of 2005."

Plaintiffs' Proposed Fact 55: Further, "it would need to invest approximately $710,030 in rehabilitation work to bring the line up to FRA class 1 track standards…it would cost $731,500 to repair all bridges on the line, including $136,496 to repair the bridge at milepost 1044.4…[and the SPROC] estimates the subsidy, including capital cost to restore the line to operations, at $1,798,221 and an annual opportunity cost of $19,974." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 55: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that SPROC previously made the statement set forth in the proposed finding.

Plaintiffs' Proposed Fact 56: For these reasons, SPROC filed a petition on October 17, 2005 with the STB seeking an exemption under 49 U.S.C. 10502 to abandon the obligation to provide railroad service over the seventy six mile long railroad line. (See STB Docket No. AB-1081X, November 4, 2005 decision; a copy of which is attached as Tab GG).

Defendant's Response to Plaintiffs' Proposed Fact 56: Defendant does not dispute that on October 17, 2005, SPROC filed with the STB a petition under 49 U.S.C. § 10502 for exemption from the provisions of 49 U.S.C. § 10903 to abandon approximately 76.2 miles of railroad in Cochise County, Arizona.

Plaintiffs' Proposed Fact 57: "On October 17, 2005, San Pedro Railroad Operating Company, LLC (SPROC), a wholly owned subsidiary of Arizona Rail Group, filed with the Surface Transportation Board a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon approximately 76.2 miles of railroad in Cochise County, AZ, as follows: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, a distance of 5.6 miles; and (2) the Douglas Branch (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, a distance of 9.2 miles, (b) between milepost 1055.8 near Charleston and milepost 1097.3 near Paul Spur, a distance of 41.5 miles, and (c) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, a distance of 19.9 miles." (See Tab GG, STB's November 4, 2005 decision).

Defendant's Response to Plaintiffs' Proposed Fact 57: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 58: On November 9, 2005, the STB found that:

[t]he subject line currently carries no commodities because the condition of a railroad bridge located at MP 1044.4 has deteriorated so substantially that the Federal Railroad Administration instructed SPROC to suspend operations over the bridge, effectively ending all rail service . . . An embargo was posted on June 16, 2005, renewed on September 22, 2005. Flooding on the line in August, 2005 seriously damaged track and structures over a 16 mile segment of the line….

(See Tab DD, STB's November 9, 2005 decision).

Defendant's Response to Plaintiffs' Proposed Fact 58: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that the Environmental Assessment dated November 9, 2005, includes the statements quoted in the proposed finding.

Plaintiffs' Proposed Fact in Heading D: **On July 25, 2006, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") which inter alia precluded the Plaintiffs' reversionary rights to their property.**

Defendant's Response to Plaintiffs' Proposed Fact in Heading D: Defendant disputes the proposed finding because Defendant disputes that Plaintiffs hold any property rights in the instant railroad corridor and because Defendant disputes that the Notice of Interim Trail Use or Abandonment ("NITU") "precluded the Plaintiffs' reversionary rights to their property." Defendant does not dispute that the Surface Transportation Board issued a NITU on July 25, 2006, which became effective on July 26, 2006.

Plaintiffs' Proposed Fact 59: "On January 27, 2006, the Trust for Public Land (the Trust), a non-profit California public benefit corporation, filed a request for a public use condition and for issuance of a notice of interim trail use (NITU)." (See Tab EE, STB's February 3, 2006 decision).

Defendant's Response to Plaintiffs' Proposed Fact 59: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 60: The Trust's request was made "in order to negotiate with SPROC for acquisition of the right-of-way for interim trail use. The Trust at that time also submitted a statement of willingness to assume financial responsibility for the right-of-way and acknowledged that use of the right-of-way is subject to future reconstruction and reactivation for rail service." (See STB Docket No. AB-1081X, July 25, 2006 NITU; a copy of which is attached as Tab HH).

Defendant's Response to Plaintiffs' Proposed Fact 60: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 61: On July 25, 2006, the STB ordered that "[b]ecause SPROC has since notified the Board of its willingness to enter into trail use negotiations with the Trust, a 180-day period will now be authorized for the parties to negotiate an interim trail use/rail banking agreement." (See Tab HH, July 25, 2006 NITU).

Defendant's Response to Plaintiffs' Proposed Fact 61: Defendant does not dispute that the STB's NITU issued July 25, 2006, stated that "[b]ecause SPROC has since notified the Board of its willingness to enter into trail use negotiations with the Trust, a 180-day period will now be authorized for the parties to negotiate an interim trail use/rail banking agreement."

Plaintiffs' Proposed Fact 62: The STB issued a NITU for the abandoned SPROC railroad right-of-way on July 25, 2006. (See Tab HH, July 25, 2006 NITU).

Defendant's Response to Plaintiffs' Proposed Fact 62: Defendant disputes the proposed finding because it incorrectly suggests that the SPROC rail line was abandoned on July 25, 2006. Defendant does not dispute that the STB issued a NITU on July 25, 2006, which became effective on July 26, 2006, for the instant railroad corridor.

Plaintiffs' Proposed Fact 63: The Trust for Public Land is a tax-exempt charity. See the website for The Trust for Public Land: http://www.tpl.org/tier2_sa.cfm?folder_id=170; a print-out is attached as Tab II).

Defendant's Response to Plaintiffs' Proposed Fact 63: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant also disputes that the website print-out cited by Plaintiffs supports Plaintiffs' proposed finding that The Trust for Public Land is a tax-exempt charity.

Plaintiffs' Proposed Fact 64: The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (See Tab II, a print-out of the website for The Trust for Public Land.)

Defendant's Response to Plaintiffs' Proposed Fact 64: Defendant disputes this proposed finding because it is not relevant or material to the named Plaintiffs' claims and is thus inappropriate under RCFC 56(h). Defendant does not dispute that The Trust for Public Land is not currently authorized by the STB to operate a railroad.

Plaintiffs' Proposed Fact 65: "On January 22, 2007, the Trust filed a request for a 30-day

extension of the NITU negotiating period. The Trust state[d] that it and SPROC [were] in the process of completing negotiations on an option for the Trust's purchase of the portions of the subject right-of-way owned by SPROC in the Douglas Branch as follows: (a) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, and (b) between milepost 1055.8 near Charleston and approximately milepost 1074.3 at the intersection of the rail line with State Highway 92 (subject right-of-way)." (See STB Docket No. AB-1081X, February 14, 2007 Decision; a copy of which is attached as Tab JJ.)

Defendant's Response to Plaintiffs' Proposed Fact 65: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 66: "According to the Trust, the subject right-of-way [would] not include portions of the railroad line designated under the original abandonment and NITU filing described as: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, and (2) portions of the Douglas Branch, specifically (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, and (b) between approximately milepost 1074.3 at the intersection with State Highway 92 and milepost 1097.3 near Paul Spur. According to the Trust, SPROC has indicated that it desires to remove these portions of the right-of-way from continued trail use negotiations." (See Tab JJ, STB's February 14, 2007 decision).

Defendant's Response to Plaintiffs' Proposed Fact 66: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 67: "In a letter filed January 25, 2007, SPROC acknowledged receipt of the Trust's extension request and consented to the extension for those portions of the

property in the subject right-of-way identified by the Trust." (See Tab JJ, STB's February 14, 2007 decision).

Defendant's Response to Plaintiffs' Proposed Fact 67: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 68: "On January 29, 2007, SPROC filed a letter stating that it had consummated the abandonment of the line between: (1) milepost 1084.0 and milepost 1097.3 at Paul Spur, (2) milepost 1097.3 at Paul Spur and milepost 1106.5 near Douglas, and (3) milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee." (See Tab JJ, STB's February 14, 2007 decision).

Defendant's Response to Plaintiffs' Proposed Fact 68: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 69: On February 14, 2007, the Court stated that "[w]here, as here, the carrier has not consummated the abandonment at the end of the previously imposed negotiating period and has indicated its willingness to continue negotiations by requesting an extension…the NITU negotiating period may be extended. " (See Tab JJ, STB's February 14, 2007 decision).

Defendant's Response to Plaintiffs' Proposed Fact 69: Defendant does not dispute the proposed finding, except to clarify that the statement was made by the STB, not the Court.

Plaintiffs' Proposed Fact 70: As such, the STB ordered that "[t]he NITU negotiating period is extended until February 21, 2007, for the portion of the line: (a) between milepost 1040.15 near Curtiss and milepost 1055.8 near Charleston, and (b) between milepost 1055.8 near Charleston and approximately milepost 1074.3 at the intersection of the rail line with State

Highway 92." (See Tab JJ, STB's February 14, 2007 decision).

Defendant's Response to Plaintiffs' Proposed Fact 70: Defendant does not dispute the proposed finding.

Plaintiffs' Proposed Fact 71: "On May 11, 2007, SPROC filed a request to postpone for one year, until July 26, 2008, the deadline to consummate abandonment of the remaining portion of the line (from milepost 1040.15 near Curtiss to milepost 1084.0);" the SPROC's request was granted by the STB on June 6, 2007. (See STB Docket No. AB-1081X, June 8, 2007 Decision; a copy of which is attached as Tab KK.)

Defendant's Response to Plaintiffs' Proposed Fact 71: Defendant does not dispute the proposed finding, except to clarify that the STB's Decision was issued June 6, 2007, but was not effective until its service date of June 8, 2007.

May 15, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney

Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024