**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-271 L |
| | ) | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY CLAIMS RELATED TO EASEMENTS ACQUIRED PURSUANT TO THE 1875 ACT**

The government has responded to the Plaintiffs' Motion for Partial Summary Judgment and filed a Cross-Motion for Summary Judgment on the issue of liability as it relates to that portion of the abandoned railroad right-of-way created by voluntary conveyances. As to that portion of the right-of-way created by the 1875 Act of Congress, the government is wanting to stay the resolution of these claims based on the interlocutory appeal currently before the Federal Circuit in *Ellamae Phillips Co. v. United States*, No. 2008-5042 (Fed.Cir.). The government alleges that because the Federal Circuit is currently addressing "liability in Trails Act takings cases as they relate to easements granted pursuant to the 1875 Act," this Court should "issue[] an order staying Plaintiffs' 1875 Act claims pending the Federal Circuit's decision in *Phillips*."[1]

The Plaintiffs disagree. The Plaintiffs seek to move this case forward. The Plaintiffs filed their claim for compensation over a year ago on April 30, 2007 and the Plaintiffs filed their Motion for Partial Summary Judgment on December 4, 2007. The

[1] Govt. Motion p. 1-2.



STLDOCS 218052v1

Plaintiffs oppose further efforts to delay resolution of this case and, on the facts and law before the Court in this case, believe the Federal Circuit's consideration of the *Ellamae Phillips* matter is no basis upon which to further delay this case.

Contrary to the government's assertion, the Federal Circuit's interlocutory appeal in *Ellamae Phillips* is not dispositive of the issues relating to the federal grants of right-of-way in this case because (1) the 1906 Act, which is not at issue in *Ellamae Phillips*, modifies the 1875 Act to land grants for rights-of-way in Arizona; (2) the Federal Circuit's decision in *Hash v. United States*[2] is binding on this Court; (3) the government's previous attempts to re-litigate *Hash II* were considered and rejected by this Court in *Blendu v. United States*[3]; and (4) because the scope of easements are determined by state law, the Federal Circuit's analysis of Colorado law in *Ellamae Phillips* will not apply to this Court's analysis of Arizona law.

**1. The 1906 Act, which applies the 1875 Act to Arizona, specifically states that rights-of-way over public land in Arizona conveyed only an easement for railroad purposes.**

The government's Motion is correct in noting that "[t]he parties concur that certain portions of the right-of-way were acquired by the San Pedro Railroad Operating Company, LLC, or its predecessors in interest (collectively the "Railroad") through easements acquired directly from the United States pursuant to the General Railroad Right-of-Way Act of 1875 ("1875 Act"), 43 U.S.C. §§ 934-939." (Motion to Stay, p. 1).

However, throughout their discussion of the 1875 Act, the government leaves out any reference whatsoever to the 1906 Act which specifically applies the 1875 Act to the Territories of Oklahoma and Arizona. The 1906 Act specifically states:

---

[2] 403 F.3d 1308 (Fed.Cir. 2005) ("*Hash II*").
[3] 75 Fed.Cl. 543 (2007, Judge Hewitt).

> Where, under sections 934 to 939 of this title [the General Railroad Right-of-Way Act of 1875]...railroads have been constructed and were on June 26, 1906 in operation in Oklahoma or Arizona which passed through any of the lands theretofore reserved for said Territories, ***such lands shall be disposed of subject to such railroad right or easement***, but only to the extent of the right of way conferred by the said sections for such railroad purposes. 43 U.S.C. § 944. (emphasis supplied)

The United States Supreme Court addressed the 1875 Act and its later application to the States of Oklahoma and Arizona by the 1906 Act in *Great Northern Ry. Co. v. United States*, 315 U.S. 262 (1942). In *Great Northern*, the Supreme Court unequivocally held **"The Act of March 3, 1875...clearly grants only an easement, and not a fee."** *Id.* at 271 (emphasis supplied). The Court reasoned:

> Section 1 indicates that the right is one of passage since it grants 'the,' not a, 'right of way through the public lands of the United States'. Section 2 adds to the conclusion that the right granted is one of use and occupancy only, rather than the land itself, for it declares that any railroad whose right of way passes through a canyon, pass, or defile, for the purposes of its road, in common with the road first located.'
>
> Section 4 is especially persuasive. It requires the location of each right of way to be noted on the plats in the local land office, and 'thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way'. This reserved right to dispose of the lands subject to the right of way is wholly inconsistent with the grant of a fee...'Apter words to indicate the intent to convey an easement would be difficult to find' [citation omitted]. That this was the precise intent of Section 4 is clear from its legislative history.[4]

---

[4] The Supreme Court recounted the legislative history behind the 1875 Act, "[t]his clause first appeared in a special right of way statute, Portland, Dallas, and Salt Lake Act of April 12, 1872, 17 Stat. 52. Congressman Slater reported that bill for the Public Lands Committee, and, in discussing the reason for the clause, said:

> Mr. Slater: The point (of this clause) is simply this: the land over which this right of way passes is to be sold subject to the right of way. It simply provides that this right of way shall be an encumbrance upon the land for one hundred feet upon each side of the line of the road; that those who may afterward make locations for settlement shall not interfere with this right of way.
>
> Mr. Speer of Pennsylvania: It grants no land to any railroad company?

After the 1875 Act, Congress passed later legislation confirming the Act of 1875's intent to convey only an easement and not fee title to the railroad. *See* 43 U.S.C. § 940 and § 944. The Supreme Court stated that the 1906 Act (§ 944) "was passed confirming the rights of way which certain railroads had acquired under the 1875 Act in the Territories of Oklahoma and Arizona." *Great Northern*, 315 U.S. at 276-77. The House committee report on this particular bill stated: "'The right as originally conferred and as proposed to be protected by this bill simply grants an ***easement or use for railroad purposes.*** Under the present law whenever the railroad passes through a tract of public land the entire tract is patented to the settler or entryman, subject only to this easement'". *Id.* at 277.[5]

The U.S. Supreme Court was clear in its interpretation of the 1906 Act applying the 1875 Act to Oklahoma and Arizona – the legislature intended to convey the rights of way over public land as an easement for railroad purposes.

In this case, the government's Motion to Stay conveniently leaves out any reference to the 1906 Act or its importance to the present set of facts. However, as detailed in Plaintiffs' principle Memorandum, the 1906 modifies the 1875 Act to the State of Arizona. The 1906 Act goes further than the 1875 Act in stating that the rights-of-way created pursuant to the 1875 Act in Arizona and Oklahoma were specifically intended to only create easements for the operation of a railroad.

---

Mr. Slater: No, sir.

*Id.* at 271, fn 3 (citing Cong. Globe, 42d Cong., 2d Sess., 2137 (1872)).
[5] (citing H.Rept. No. 4777, 59th Cong., 1st Sess., p. 2 (Ser. No. 4908); cf. S.Rept. No. 1417, 59th Congr., 1st Sess., p. 2 (Ser. No. 4904). (emphasis supplied).

To the extent that *Ellamae Phillips* presents any issue to the Federal Circuit, it concerns the 1875 Act under Colorado law and does not involve either the 1906 Act or Arizona law.

**2. The Federal Circuit in *Hash II* Confirmed Congress' Intent Over a Hundred Years Earlier in Passing the 1875 Act – Railroads Acquired Their Rights-of-Way as Easements for Railroad Purposes.**

*Hash II* is a rails-to-trails case involving successors to homesteaders who were granted land patents pursuant to the Homestead Act of 1862. The *Hash* plaintiffs acquired their property by a variety of ways, "[s]ome of the original owners were granted their land after the Railroad had acquired its right-of-way pursuant to the 1875 Act" and "some of the original owners were granted their land before the Railroad obtained the right-of-way traversing that land." *Id.* at 1312. For all plaintiffs, the primary issue before the Federal Circuit was "whether the claimant landowner owns the estate underlying the Railroad right-of-way, or whether the underlying estate never left its ownership by the United States, or whether the estate was deeded in fee to the Railroad." *Id.*

In addressing this issue, the Federal Circuit noted that "[t]he issue of the nature and scope of grants of rights-of-way under the 1875 Act has been extensively litigated." *Id.* at 1313. The Federal Circuit discussed the U.S. Supreme Court's decision in *Great Northern Ry. Co.*, discussed supra, where "the Court extensively reviewed the rights of railway, government, and land patentee, and explained: 'That petitioner [railway] has only an easement in its right of way acquired under the Act of 1875 is therefore clear from the language of the Act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments.'" *Id.*

The Federal Circuit unequivocally held that the landowners owned their land in fee subject to the railway easement and

> [o]n the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases. On remand the district court shall determine just compensation on the conditions that apply to these landowners." *Id.* at 1318.

The Federal Circuit's decision in *Hash II* is directly applicable to the present set of facts – the grants of right-of-way pursuant to the 1875 Act created only an easement for the SPROC to operate a railroad over the Plaintiffs' land.

However, in this case involving land in Arizona, the 1906 Act is also applicable and makes separate and additional clarification that only an easement for the operation of a railroad was granted under the 1875 Act for land in Arizona.

**3. This Court has recently rejected the government's attempts to re-litigate the *Hash II* decision regarding easements conveyed pursuant to the 1875 Act.**

The government's argument in this case – that *Hash II* did not decide the scope of an easement granted pursuant to the 1875 Act – was recently considered and rejected by this Court in *Blendu v. United States*. In *Blendu*, the government argued that the issue that needed to be re-litigated after *Hash II* was "the nature and scope of the easement and, correspondingly, the nature and scope of the plaintiff's property interest." *Id.* at 547. This Court, however, explicitly rejected that argument by stating, "that is exactly what the Federal Circuit decided in *Hash II*, a case that, as both parties agreed, presented the same legal questions as the ones posed here." *Id.* at 547. The Court explained:

> It is true, as plaintiffs concede, that 'the issues [in *Hash II*] were not couched in terms of whether the Government was, in fact, liable for taking.' [citation omitted]. However, the issues did concern the scope and nature of the railroad interests granted to the railroads under the 1875 Act

> and those granted to landowners pursuant their patents. Whether there was a taking turns on the nature of these interests, as defendant concedes [citation omitted], and in deciding these interests the court implicitly decided whether there was a taking. Indeed, its remand order explicitly directed that the District Court determine "just compensation" to be awarded to plaintiffs, not whether compensation needed to be made.[6]

This Court concluded that the Federal Circuit in *Hash II* conclusively held that the government was liable for a taking of the landowner's property when the Trails Act precluded their "reversionary" right to property underlying a railroad easement created by the 1875 Act.

**4. Because the scope of an easement is determined by state law, the Federal Circuit's decision in *Ellamae Phillips* will have no bearing on the application of Arizona law to this case.**

It is a long-settled point of law that "state law creates and defines the scope of the reversionary or other real property interests affected by the ICC's actions pursuant to the Trails Act." In *Preseault I*, the U.S. Supreme Court stated,

> In determining whether a taking has occurred, "we are mindful of the basic axiom that '[p]roperty interests...are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984), *quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980 (internal quotation omitted). *** Determining what interest petitioners would have enjoyed under Vermont law, in the absence of the ICC's recent actions, will establish whether petitioners possess the predicate property interest that must underlie any takings claim. *See Ruckelshaus v. Monsanto Co.*, supra, at 1001-1004.[7]

The interpretation of the grants of right-of-way in *Ellamae Phillips* will turn on Colorado law – not Arizona law. Thus, the Federal Circuit's interpretation of Colorado

---

[6] *Id.*

[7] *Preseault I*, 494 U.S. at 20-21 (concurrence by Justice O'Connor joined by Justices Scalia and Kennedy); *see also*, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (holding that "[p]roperty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law).

law is not at all applicable to this Court's interpretation of Arizona law. As referenced in detail under Section 1, the United States Supreme Court and Arizona Supreme Court have clearly delineated Arizona law as to the scope of grants of right-of-way.

**Conclusion**

The government's Motion to Stay is yet another attempt by the government to re-litigate clear precedent of the Federal Circuit and to further delay resolution of this case. Plaintiffs wish to expedite resolution of this case and accordingly ask this Court to deny the government's Motion to Stay.

WHEREFORE, Plaintiffs respectfully request this Court to deny the government's Motion to Stay Claims Related to Easements Acquired Pursuant to the 1875 Act.

| | |
|---|---|
| Date: June 9, 2008 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>MEGHAN S. LARGENT<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br><br>ATTORNEYS FOR PLAINTIFFS |