**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-271 L |
| v. | ) | |
| | ) | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO BRIEF OF THE RAILS-TO-TRAILS CONSERVANCY AS AMICUS CURIAE**

COME NOW Plaintiffs and for their Response to the Memorandum of the Rails-to-Trails Conservancy ("RTC") as Amicus Curiae in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of the United States of America's Motion for Summary Judgment, hereby state as follows:

The RTC has sought leave to file an amicus brief in this matter. The RTC is "a non-profit corporation…dedicated to assisting…governments and other organizations in preserving otherwise to be abandoned railroad corridors for continued public use."[1]

This case concerns only whether the federal government pays "just compensation" under the Fifth Amendment to those land owners whose "reversionary" rights to their land have been taken by the STB issuing a NITU under the Trails Act. The decision of the Court in this case will not affect in anyway whether or not this or any other recreational trail is created or an abandoned railroad corridor is preserved for public use

[1] *Blendu v. United States*, 75 Fed.Cl. 543, 544 (2007), citing briefing filed by Amicus Curiae Rails-to-Trails Conservancy.

nor does this case involve any challenge to the validity of the Trails Act, 16 U.S.C. § 1247(d).

As such, it is curious why the RTC has chosen to file an amicus. The sole objective of their amicus brief is directed at preventing land owners from receiving "just compensation" for the taking of their land, not whether a trail is or is not ultimately created.[2]

The memorandum of the RTC adds nothing to the issues pending before this Court. The RTC contends that a NITU is only a "regulatory" taking. As such, they are adopting the same position as the government in this case and, like the government, make the same error of now arguing against a position that is settled law of the Federal Circuit. To the extent that the RTC makes this argument, we refute that position in our response to the government's cross-motion for summary judgment.

When Congress was considering legislation (H.R. 4581) to reverse the *Caldwell* decision and to pay the property owners who were denied compensation by reason of *Caldwell*, the RTC appeared before Congress to testify against the legislation. The RTC's president, Marianne Wesley Fowler testified before the House Committee on Natural Resources that:

> The impetus for H.R. 4581 is the Federal Circuit decision in *Caldwell v. United States* [citation omitted]. In *Caldwell*, the Federal Circuit held that the "takings" claim arising from the federal Railbanking Law "accrued" for purposes of the six-year statute of limitations when the Surface Transportation Board ("STB") issues a Notice or Certificate of Interim Trail Use ("railbanking order") establishing the initial 180-day period for the railroad and a potential trail manager to negotiate a railbanking/trail

[2] This is not the first time that the RTC appears seeking to deny land owner's "just compensation". The RTC unsuccessfully argued against the interest of land owners in *Grantwood Village v. United States*, 95 F.3d 654 (1996), *Glosemeyer v. United States*, 45 Fed. Cl. 771 (2000), and *Moore v. United States*, 63 Fed.Cl. 781 (2005). In all these cases the RTC's position was rejected by the Court.

> use agreement. This ruling rejected the reasoning of the lower court that the statute of limitations began to run when the interim trail use/railbanking agreement is executed. *Caldwell v. United* [sic], 57 Fed. Cl. 193 (2003).[3]

The RTC knows that the law is settled and that a physical taking of land owners property occurs upon the STB's issuance of the NITU. The RTC has embraced this position.

Yet now, like the government, when this position means that land owners would be paid for the taking of their property, the RTC finds its prior position inconvenient and argues the opposite in its effort to deny these eight Arizona families "just compensation."[4]

The Plaintiffs agree that public-access recreational trails for hiking and biking and preservation of abandoned railroad corridors may be good social policy. However, as Judge Bruggink noted,

> The likelihood that the Rails-to-Trails Act was motivated by a commendable interest in public recreation or was an exercise in great foresight is immaterial. Rights in private property are more durable than the current majority's notion of what constitutes a worthy cause. As Justice Holmes said in *Pennsylvania Coal Co. v. Mahon*, "a strong public desire to improve the public condition is not enough to warrant achieving

[3] Testimony of Marianne Wesley Fowler, Senior Vice President of Federal Relations, Rails-to-Trails Conservancy on H.R. 4581 presented to the Subcommittee on National Parks of the Committee on Resources of the U.S. House of Representatives, July 13, 2006, p. 1-2.

[4] To the extent that the RTC seeks to avoid this obvious contradiction in its current and past position, it suggests that the Federal Circuit held in *Caldwell*, *Barclay* and *Renewal* that a taking claim "accrued" before all the elements necessary to bring a taking claim had yet occurred. In other words, the RTC claims that the NITU "triggers" the accrual of a taking claim at a time when the land owners do not yet have a claim because a Trail Use Agreement has not yet imposed a new easement upon their land. (Memo at. 11 – 12.) This argument, perhaps, makes more sense if one follows the Mad Hatter down the Rabbit Hole. But, in a world governed by logic it is utterly absurd. It is also contrary to settled law. See, *Creppel v. United States*, 41 F.3d 627 (Fed. Cir. 1994), *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl 630, 373 F.2d 356, 358 (Ct.Cl.), cert denied, 389 U.S. 971 (1967).

> the desire by a shorter cut than the constitutional way of paying for the change." 260 U.S. 393, 416 (1922). *See also Armstrong v. United States*, 364 U.S. 40, 49 (1960) (the "Fifth Amendment's guarantee…[is] designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").[5]

Justice Plager writing for the Federal Circuit in *Towes v. United States*, later added, "[t]he Government has the legal power and is thus free to impose such new uses upon the fee interests held by the adjacent landowners. But the private property interests taken are not free; the Government must pay the just compensation mandated by the Constitution."[6]

The RTC's amicus brief adds nothing to the issues which have already been addressed in the government's own memorandum. Accordingly, summary judgment should be granted in favor of the Plaintiffs for those reasons noted in the Plaintiffs' principle memorandum and its response to the government's cross-motion for summary judgment.

| | |
|---|---|
| Date: June 9, 2008 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>MEGHAN S. LARGENT<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br>ATTORNEYS FOR PLAINTIFFS |

[5] *Glosemeyer v. United States*, 45 Fed.Cl. 771, 782 (2000).
[6] *Towes v. United States*, 376 F.3d 1371, 1389 (2004); *see also*, Why the Public Plundering of Private Property Rights is Still a Very Bad Idea," David A. Thomas, 41 Real Property, Probate and Trust Journal, Spring 2006.