# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 07-271 L |
| | ) | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND ITS OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Plaintiffs' General Statements**

Plaintiffs note that Defendant's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact are not in compliance with RCFC 56(h)(1). According to this Rule, "[t]he opposing party shall file, together with its opposition, a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees with the finding as stated. If the opposing party does not agree with the proposed finding, it shall note the basis for its objection and may draft a proposed revision of the finding directly below the challenged finding."

In Defendant's Responses, however, the Defendant "disputed" numerous proposed findings because they were "not relevant or material." Defendant failed to note whether it "agreed" or "disagreed" with the finding and the basis for any such disagreement. "Disputing" a proposed finding because it is allegedly "not relevant or material" is not a valid response under RCFC 56(h).

## I. The History of the Subject Railroad Right-of-Way

1. In July 2006, the San Pedro Railroad Operating Company, LLC ("SPROC"), a wholly-owned subsidiary of Arizona Rail Group, held an interest in approximately 76.2 miles of railroad line in Cochise, County, Arizona (the "subject right-of-way"). See STB Decision and Notice of Interim Trail Use or Abandonment at 1-2 (service date July 26, 2006) (Ex. A).[1/]

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because of the vagueness of the term "interest."**

**Plaintiffs' Proposed Revision: In July 2006, the San Pedro Railroad Operating Company, LLC ("SPROC"), a wholly-owned subsidiary of Arizona Rail Group, held an easement to operate a railroad over approximately 76.2 miles of railroad line in Cochise, County, Arizona (the "subject right-of-way"). See STB Decision and Notice of Interim Trail Use or Abandonment at 1-2 (service date July 26, 2006) (Ex. A).**

2. The subject right-of-way consists of (1) the Bisbee Branch between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee and (2) the Douglas Branch between milepost 1040.15 near Curtiss and milepost 1106.5 near Douglas. Id.

**Plaintiffs' Response: Agree.**

3. The El Paso and Southwestern Railroad, the Arizona and Southeastern Railroad Company, and the Arizona and Colorado Railroad Company (the "prior

[1/] All citations to Exhibits and the Straup Declaration refer to the exhibits and declaration filed by the United States along with its brief in support of its cross motion for summary judgment and in opposition to Plaintiffs' motion for partial summary judgment.

railroads") are prior owners of the subject right-of-way. See e.g. Docket No. 33 at 4 (referring to SPROC as the "successor to El Paso and Southwestern Railroad").

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because none of the "prior railroads" were "prior owners" of the subject right-of-way. Plaintiffs note that Defendant has erroneously cited Plaintiffs' Memorandum of Law in Support of its Motion for Partial Summary Judgment for this proposition; nothing in this Memorandum alludes to any of the "prior railroads" as being "prior owners" of the subject right-of-way (Plaintiffs' Memorandum does not even make any reference to the Arizona and Southeastern Railroad Company or the Arizona and Colorado Railroad Company.) Further, Plaintiffs' reference to the San Pedro Railroad Operating Company, LLC ("SPROC") as the "successor to El Paso and Southwestern Railroad" in no way even hints at any ownership interest of El Paso and Southwestern Railroad, the Arizona and Southeastern Railroad Company, or the Arizona and Colorado Railroad Company.**

**Plaintiffs' Proposed Revision: The El Paso and Southwestern Railroad and its successor, the San Pedro Railroad Operating Company, LLC ("SPROC"), a wholly-owned subsidiary of Arizona Rail Group (the "prior railroads"), previously held an easement to operate a railroad over the subject right-of-way.**

4. The subject right-of-way was originally acquired by the prior railroads through the 1875 Act and various private conveyance documents executed in the early 1900s. See generally Declaration of Cindi A. R. Straup ("Straup Decl.").

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because it is incomplete in that it fails to mention any reference to the 1906 Act which specifically applied the 1875 Act to Arizona.**

**Plaintiffs' Proposed Revision: The subject right-of-way was originally acquired by the prior railroads through the 1875 Act (which was applied to Arizona by the 1906 Act) and various private conveyance documents executed in the early 1900s. See generally Declaration of Cindi A. R. Straup ("Straup Decl.").**

5. On July 13, 2006, SPROC filed a letter requesting that the STB authorize SPROC to abandon the approximately 76.2 miles of railroad line. See Ex. A at 1-2.

**Plaintiffs' Response: Agree.**

6. On July 20, 2006, SPROC filed a letter indicating its willingness to enter into trail use negotiations, previously requested by the Trust for Public Land ("the Trust"). Id. at 2.

**Plaintiffs' Response: Agree.**

7. In a July 26, 2006 Decision and Notice of Interim Trail Use or Abandonment ("NITU"), the STB authorized a 180-day period for the parties to negotiate an interim trail use/rail banking agreement. Id. at 2.

**Plaintiffs' Response: Agree.**

8. No trail use agreement was reached during that time. See Ex. C at Ans. to Interrog. 17.

**Plaintiffs' Response: Agree.**

9. By letter dated January 19, 2007, the Trust requested a 30-day extension of the NITU negotiation period for approximately 38.4 miles of the rail line. See Letter of the Trust to STB dated Jan. 19, 2007 (Ex. D).

**Plaintiffs' Response: Agree.**

10. The STB issued a Decision extending the NITU negotiating period until February 21, 2007 for the portions of the Douglas Branch located between milepost 1040.15 near Curtiss and approximately milepost 1074.3 at the intersection of the rail line with State Highway 92. See STB Decision (service date February 14, 2007) (Ex. E).

**Plaintiffs' Response: Agree.**

11. The NITU negotiation period was not extended and, therefore, expired on January 22, 2007 for the Bisbee Branch between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee and for the portion of the Douglas Branch between milepost 1074.3 at the intersection of the rail line with State Highway 92 and milepost 1106.5 near Douglas. See Ex. E at 2.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this Proposed Finding in that it inaccurately cites the STB's February 14, 2007 decision.**

**Plaintiffs' Proposed Revision: The STB's February 14, 2007 decision states,**

> **According to the Trust, the subject right-of-way will not include portions of the railroad line designated under the original abandonment and NITU filing described as: (1) the Bisbee Branch, between milepost 1085.0 at Bisbee Junction and milepost 1090.6 at Bisbee, and (2) portions of the Douglas Branch, specifically (a) between milepost 1097.3 near Paul Spur and milepost 1106.5 near Douglas, and (b) between approximately milepost 1074.3 at the intersection with State Highway 92 and milepost 1097.3 near Paul Spur. According to the Trust, SPROC has indicated that it desires to remove these portions of the right-of-way from continued trail use negotiations. See Ex. E at 2.**

12. No trail use agreement was reached during the NITU negotiation period for any portion of the subject right-of-way. See Ex. C at Ans. to Interrog. 17.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this Proposed Finding because it inaccurately cites Ex. C at Ans. to Interrog. 17 and Plaintiffs' understanding of the facts. Further, the Plaintiffs note that so long as the STB retains jurisdiction over the railroad corridor, a Trail Use Agreement may be authorized even if a negotiation period expired without a Trail Use Agreement.**

**Plaintiffs' Proposed Revision: As of March 10, 2008, it was the parties' mutual understanding that the SPROC and the Trust for Public Land had not yet reached a trail use agreement for any portion of the subject right-of-way. See Ex. C at Ans. to Interrog. 17.**

13. No interim trail use was established over the subject right-of-way. Id.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this Proposed Finding because it inaccurately cites Ex. C at Ans. to Interrog. 17 and Plaintiffs' understanding of the facts.**

**Plaintiffs' Proposed Revision: As of March 10, 2008, it was the parties' mutual understanding that the SPROC and the Trust for Public Land had not yet reached a trail use agreement for any portion of the subject right-of-way. See Ex. C at Ans. to Interrog. 17.**

14. In addition to authorizing a negotiation period pursuant to the Trails Act, the STB's July 26, 2006 decision specifically contained authorization for the railroad to abandon the subject right-of-way if no trail use agreement was reached within the negotiating period. See Ex. A at 3.

**Plaintiffs' Response: Agree.**

15. On January 29, 2007, the railroad filed a letter with the STB stating that it had consummated abandonment of approximately 28.1 miles of the subject right-of-way, between: "(1) milepost 1084.0 and milepost 1097.3 at Paul Spur, (2) milepost 1097.3 at Paul Spur and milepost 1106.5 near Douglas, and (3) milepost 1085.0 at Bisbee Jct., and milepost 1090.6 at Bisbee." See Letter of SPROC to STB dated Jan. 29, 2007 (Ex. F).

**Plaintiffs' Response: Agree.**

16. On May 11, 2007, SPROC filed a request to postpone by one year, until July 26, 2008, the deadline to consummate abandonment of the remaining portion of the subject right-of-way. STB Decision (service date June 8, 2007) (Ex. G).

**Plaintiffs' Response: Agree.**

17. In a June 8, 2007 Decision, the STB determined that for good cause shown, the extension would be granted. Id.

**Plaintiffs' Response: Agree.**

18. SPROC currently has until July 26, 2008 to exercise the authority to abandon and file a notice of consummation for the approximately 48.1 miles of the subject right-of-way between milepost 1040.15 and milepost 1084.0. Id.

**Plaintiffs' Response: Agree.**

**II. The Named Plaintiffs' Property**

19. The Lindsey Family, Castro, Heinzl, Singletree Ranch, Miller Ranch Trust, and Windsor-Brown Plaintiffs' properties abut portions of the subject right-of-way between milepost 1040.15 near Curtiss and milepost 1074.3 at the intersection of the rail line with State Highway 92 (the "Northern Stretch"). See Straup Decl. at ¶ 8.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the various properties and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The Lindsey Family, Castro, Heinzl, Singletree Ranch, Miller Ranch Trust, and Windsor-Brown Plaintiffs' properties abut and underlie portions of the subject right-of-way between milepost 1040.15 near Curtiss and milepost 1074.3 at the intersection of the rail line with State Highway 92 (the "Northern Stretch"). See Straup Decl. at ¶ 8.**

20. The Northern Stretch of the subject right-of-way was subject to both the original 180-day NITU negotiation period as well as the 30-day extension of the NITU negotiation period. See Exs. A, B.

**Plaintiffs' Response: Agree.**

21. The portion of the subject right-of-way abutting the Lindsey Family property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-247 (October 30, 1911). Id. Ex. 7.

**Plaintiffs' Response: Disagree.[1] Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the Lindsey Family property and the subject right-of-way.**

[1] Plaintiffs accept the Defendant's Declaration of Cindi A.R. Straup as the means for establishing the chain of title for the eight named Plaintiffs for purposes of the pending summary judgment motions, however, Plaintiffs reserve the right to contest this chain of title based upon inconstency with those title documents identified in the Plaintiffs Proposed Findings of Uncontroverted Facts.

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over the Lindsey Family property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-247 (October 30, 1911). Id. Ex. 7.**

22. The portion of the subject right-of-way abutting the Castro property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed and through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-232 (November 6, 1911). Id. Ex. 8.

**Plaintiffs' Response: Disagree.[2] Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the Castro Family property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over the Castro property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed and through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-232 (November 6, 1911). Id. Ex. 8.**

23. The portion of the subject right-of-way abutting Joseph Lawrence Heinzl's property was acquired by the El Paso and Southwestern Railroad, one of the

[2] Plaintiffs clarify that the "1875 Act grants" were the right-of-way grants from the federal government, over public land owned by the federal government, made pursuant to the General Railroad Right-of-Way Act of 1875 (42 U.S.C. §§ 934-39). A 1906 Act (42 U.S.C. § 944) later applied the 1875 General Railroad Right-of-Way Act to the Territories of Oklahoma and Arizona.

prior railroads, through a single deed and through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-232 (November 6, 1911). Id. Ex. 8.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between Mr. Heinzl's property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over Joseph Lawrence Heinzl's property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed and through an easement granted pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 53-232 (November 6, 1911). Id. Ex. 8.**

24. The portion of the subject right-of-way abutting the Singletree Ranch property was acquired by the Arizona & Southeastern Railroad Company, one of the prior railroads, through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the Singletree Ranch property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over the Singletree Ranch property was acquired by the Arizona & Southeastern**

**Railroad Company, one of the prior railroads, through an easement granted pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5.**

25. The portion of the subject right-of-way abutting the Miller Ranch Trust property was acquired by the Arizona & Southeastern Railroad Company, one of the prior railroads, through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the Miller Ranch Trust property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over the Miller Ranch Trust property was acquired by the Arizona & Southeastern Railroad Company, one of the prior railroads, through an easement granted pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5.**

26. The portion of the subject right-of-way abutting Tammy Windsor-Brown's property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between Ms. Windsor-Brown's property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over Tammy Windsor-Brown's property was acquired by the El Paso and Southwestern**

**Railroad, one of the prior railroads, through an easement granted pursuant to an 1875 Act grant. <u>See</u> Straup Decl. at ¶ 5.**

27. The Ladd Family property and most of the Miller Family property abut portions of the railroad corridor located between milepost 1074.3 at the intersection of the rail line with State Highway 92 and milepost 1084.0 (the "Middle Stretch"). <u>See</u> Straup Decl. at ¶ 9.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between the Ladd Family property and the Miller Family property to the railroad corridor.**

**<u>Plaintiffs' Proposed Revision</u>: The Ladd Family property and most of the Miller Family property abut and underlie portions of the railroad corridor located between milepost 1074.3 at the intersection of the rail line with State Highway 92 and milepost 1084.0 (the "Middle Stretch"). <u>See</u> Straup Decl. at ¶ 9.**

28. The Middle Stretch of the subject right-of-way was subject to the original 180-day NITU negotiation period but not the 30-day extension of the NITU negotiation period. <u>See</u> Exs. A, B.

**<u>Plaintiffs' Response</u>: Agree.**

29. The portion of the subject right-of-way abutting the Ladd Family property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through six deeds and through an easement acquired pursuant to an 1875 Act grant. <u>See</u> Straup Decl. at ¶ 5. The deeds are recorded at the following deed book and page numbers in the Cochise County Courthouse: D.R. 19-498 (July 9, 1903); D.R. 19-493 (July 20,

1903); D.R. 19-491 (July 16, 1903); D.R. 19-488 (July 7, 1903); D.R. 19-500 (July 13, 1903); and D.R. 19-496 (July 7, 1903). Id. Exs. 1-6.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because it mischaracterizes the relationship between the Ladd Family property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The portion of the subject right-of-way crossing over the Ladd Family property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through six deeds and through an easement granted pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deeds are recorded at the following deed book and page numbers in the Cochise County Courthouse: D.R. 19-498 (July 9, 1903); D.R. 19-493 (July 20, 1903); D.R. 19-491 (July 16, 1903); D.R. 19-488 (July 7, 1903); D.R. 19-500 (July 13, 1903); and D.R. 19-496 (July 7, 1903). Id. Exs. 1-6.**

30. A portion of the subject right-of-way abutting the Miller Family property was acquired by the El Paso and Southwestern Railroad, one of the prior railroads, through a single deed and through an easement acquired pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 50-416 (January 14, 1910). Id. Ex. 9.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because it mischaracterizes the relationship between the Miller Family property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: A portion of the subject right-of-way crossing over the Miller Family property was acquired by the El Paso and Southwestern Railroad,**

**one of the prior railroads, through a single deed and through an easement granted pursuant to an 1875 Act grant. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 50-416 (January 14, 1910). Id. Ex. 9.**

31. The remaining portion of the subject right-of-way abutting the Miller Family property was acquired by the Arizona and Colorado Railroad Company, one of the prior railroads, through a single deed. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 27-495 (March 20, 1903). Id. Ex. 10.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding because it mischaracterizes the relationship between the Miller Family property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The remaining portion of the subject right-of-way crossing over the Miller Family property was acquired by the Arizona and Colorado Railroad Company, one of the prior railroads, through a single deed. See Straup Decl. at ¶ 5. The deed is recorded at the following deed book and page number in the Cochise County Courthouse: D.R. 27-495 (March 20, 1903). Id. Ex. 10.**

32. A small piece of the Miller Family property abuts a portion of the railroad corridor located between milepost 1084.0 and milepost 1097.3 at Paul Spur (the "Southern Stretch"). See Straup Decl. at ¶ 9.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with the proposed finding because it mischaracterizes the relationship between the Miller Family property and the railroad corridor.**

**<u>Plaintiffs' Proposed Revision</u>: A small piece of the Miller Family property abuts and underlies a portion of the railroad corridor located between milepost 1084.0 and milepost 1097.3 at Paul Spur (the "Southern Stretch"). <u>See</u> Straup Decl. at ¶ 9.**

33. The Southern Stretch of the subject right-of-way was subject to the original 180-day NITU negotiation period but not the 30-day extension of the NITU negotiation period. <u>See</u> Exs. A, B.

**<u>Plaintiffs' Response</u>: Agree.**

34. The railroad has fully consummated abandonment of the Southern Stretch of the subject right-of-way. <u>See</u> Ex. F.

**<u>Plaintiffs' Response</u>: Agree. The Plaintiffs would further note that as of January 22, 2007, the STB's jurisdiction over this portion of the abandoned right-of-way ceased.**

| | |
|---|---|
| Date: June 9, 2008 | LATHROP & GAGE L.C.<br><br>By <u>/s/ Mark F. (Thor) Hearne, II</u><br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>MEGHAN S. LARGENT<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br><br>ATTORNEYS FOR PLAINTIFFS |