# APPENDIX TO

# PLAINTIFFS' RESPONSE TO GOVERNMENT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## Appendix A:

### A List Of Other State Supreme Courts and Lower Courts Construing Similar Instruments Establishing A Railroad Right of Way as Conveying Only an Easement and Not A Conveyance of Fee Title To The Land.

We could provide an exhaustive list of other states construing similar instruments establishing as railroad right of way as granting only an easement and not fee title to the land. See, for example, the following.

The Florida Supreme Court in *Van Ness v. Royal Phosphate Co.* 60 Fla. 284, 53 So. 381 (Fla. 1910) had before it "a deed to the Silver Springs Ocala & Gulf Railroad Company conveying for a right of way over the above mentioned land of said railroad 100 feet wide on which the said road at once constructed, built and operated its railroad, and has done so ever since, and is now in possession of said right of way." *Id.* at 381. The court held that this conveyed only an easement to the railroad. "In the case of *Brown v. Young*, 69 Iowa, 625, 29 N.W. Rep., 941, it is held that 'a right of way' for a railroad is only an easement though it be conveyed by a deed," at 382 – 383. The Court continued and cited its own prior decision, "in the case of *Silver Springs, O & G.R. Co. v. Van Ness,* 45 Fla. 559, 34 South. Rep., 884. That case certainly determines that the deed which is before us only conveyed an easement to the railroad company, and that the technical right to the phosphate underneath the railroad was still in the grantor. That is the true condition now. Should the railroad track be removed or abandoned the right of the defendant to the phosphate would be unrestricted." *Id.* at 384.

Similarly, *Harvest Queen Mill & Elevator v. Sanders*, 189 Kan. 536, 541-42, 370 P.2d 419, 423-24 (Kan. 1962).

> We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. This court has uniformly held that railroads do not own fee title to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive

> condemnation proceedings. Generally, **a railroad company in acquiring land for railroad right-of-way, whether it be by grant or condemnation proceedings, is held to take not the fee, but only a special interest therein usually termed an "easement," which special interest or title is taken for railroad purposes**, that is, public purposes, so that the railroad has no right to take from such right-of-way any underlying minerals and appropriate them to its own use or convey them to others. (emphasis supplied) (numerous citations omitted).

*Brown v. Weare*, 348 Mo. 135, 152 S.W. 2d 649 (1941), ("There can be no dispute, nor is there any, that this deed so far as the right of way is concerned granted the railroad company an easement only. This is established by the terms of the deed granting a 'right of way' and then further clinched by the provision limiting the use of the grant for railroad purposes. The law is settled in this state that where a railroad acquires a right of way whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee.") *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W. 2d 666 (Mo. 1969) (In a case construing a Warranty Deed from a land owner to a railroad, the court held that only an easement was conveyed, notwithstanding the fact that the instrument was in the form of a general warranty deed and the railroad paid valuable consideration. "Railroads may hold, purchase, or convey the fee in land when the acquisition is by general warranty deed without any restriction on the quantum of title conveyed and for a valuable consideration, but where the acquisition is for right of way only, whether by condemnation, voluntary grant or conveyance in fee upon a valuable consideration, the railroad takes only an easement over the land and not the fee. Such easement is extinguished when the railroad ceases to run trains over the land, and, upon that occurrence, the use of the land is again in the original owner or his grantees, free of the burden of the easement." At 669 (citations omitted.),

*Buhl et. al v. U.S. Sprint Communications Co.* 840 S.W. 2d 904 (1992, Tenn), (Right-of-way acquired by condemnation "is a grant of an easement and the title to the easement, and nothing more… the fee, under this construction, remained with the owner, the railway acquiring a mere easement. *** An easement merely gives to a railroad company a right of way in the land – that is, the right to use the land for its purposes." At 909. (internal citations omitted),

*Highland Realty Co. v. City of San Rafael,* 46 Cal 2d 669, 298 P2d 15 (1956) ("the grant of land as a right of way recognizes nothing but an easement. *** [T]he grant by [fee owner] to the railroad of a right of way 'upon, over, and along a strip of land' conveyed only an easement, and not the underlying land. Further, the general rule is that 'in construing contracts and deeds for railroad rights of way such deeds are usually construed as giving a mere right of way, although the terms of the deed would be otherwise apt to convey a fee." at 298 P2d 20. (citing, *Cooper v. Selig*, 48 Cal. App. 228, 191 P. 983, *San Rafael Ranch Co. v. Ralph Rogers Co.* 154 Cal. 76, 96 P. 1092 (1908), *Coon v. Sonoma Magnesite Co.* 183 Cal. 597 189 P. 271 (1920), *People, By and Through Department of Public Works v. Thompson,* 43 Cal 2d 13, 271 P 2d 507 (1954), *Ocean Shore Railroad v. Doelger*, 127 Cal. App. 2d 392, 274 P.2d 23 (1954), *Moakley v. Los Angeles Pacific Ry. Co.* 139 Cal App 421, 34 P2d 218 (1934), *Tamalpais Land & Water Co. v. Northwestern Pac. R. Co.* 73 Cal. App 2d 917, 167 P2d 825 (1946), *Thompson on Real Property*, Perm Ed., Vol. 2, pp. 11-12, s 461 and p. 14, s 462 and 132 A.L.R. 142-187.)

*Brown v. Penn Central Corp.* 510 N.E. 2d 641 (Ind. 1987), ("A deed that conveys a right generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement." At 644)(citing, *Richard S. Brunt Trust v. Plantz,* Ind. App. 458 N.E.2d 251 (1983), *L&G Realty & Construction Co. v. Indianapolis*, 127 Ind. App. 35, 139 N.E.2d 580 (1957).

*Neider v. Shaw* 138 Idaho 503, 65 P.3d 525 (Idaho, 2003) ("a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, which this Court has identified as language that creates an easement. The conveyance instrument from the Bows to the Railroad granted an easement to the Railroad rather than a fee simple." at 530.)

*Sherman v. Petroleum Exploration,* 280 Ky. 105, 132 S.W.2d 768 (1930) ("In the problem of construction of any deed, the test is that of intention, which is to be gathered from the context of the instrument, read in those lights which are properly employed in construing writings. We think it may be well said that an indefinite or ambiguous conveyance of land

specifically for a railroad right of way is in its interpretation subject to the influence of a general knowledge that much railroad right of way is expressly or by operation of law limited to an easement, which has been usually found sufficient for the purpose desired." At 770.)

*Michigan Dept. of Natural Resources v. Carmody-Lahti Real Estate, Inc.*, 699 N.W.2d 272 (Mich. 2005). ("We think the court below was correct in holding that the deed conveyed an easement only, and not a fee. It does not purport to convey a strip of land 40 feet wide, etc., but the right of way over a strip 40 feet wide. ***

Although our sole concern is the intent of the parties as manifested in the plain language of the deed at issue here, it is worth noting that this analysis of the deed is consistent with our prior jurisprudence in this area. In general, this Court has construed deeds that purport to convey a right-of-way as transferring an easement. In fact, we have been unable to discover a *single* case in which this Court construed a deed conveying a "right of way" as transferring a fee estate, and plaintiff has directed us to none.

In *Jones v. Van Bochove,* 103 Mich. 98, 61 N.W. 342 (1894) for example, we considered a deed with a granting clause that conveyed

> [a]ll that certain piece or parcel of land situate * * * and described as follows, to wit: The right of way for a railroad, running from the marl bed of said cement company to their works, on the west side of the Kalamazoo river, and described as follows: 'A strip of land 40 feet wide * * * and 952 feet in length.[']

*Id.* at 100, 61 N.W. 342. See also *Westman v. Kiell,* 183 Mich.App. 489, 494, 455 N.W.2d 45 (1990), holding that a deed conveying a " 'right of way *upon* and *across* lands of Henry Salee ... for the uses and purposes of said Railroad Company' " transferred an easement rather than a fee. (Emphasis in original.)

We held that this granting clause conveyed an easement rather than a fee, noting that the deed "does not purport to convey a strip of land 40 feet wide, etc., but *the right of way over a strip 40 feet wide.*" *Jones, supra* at 100, 61 N.W. 342 (emphasis added). Likewise, in *Mahar, supra,* we determined that the following language conveyed an easement rather than a fee estate:

> That the said parties of the first part, for and in consideration of the future construction, continued maintenance and operation of a first-class, standard-gauge steam railroad (over which shall be transported passengers and freight) within the

time, limits and conditions hereinafter to be defined, ... have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell, convey and quitclaim unto the party of the second part, his successors or assigns, *for a right of way for a railroad forever* .... *Mahar, supra* at 139-140, 140 N.W. 535 (emphasis added).

**Appendix B:**

United States Court of Appeals, Federal Circuit.

John BARCLAY, Constance Barclay, Royer Barclay, Althea Barclay, John Amos, Marcia J. Bacon, Ronald J. Bartel, Melvin Bergen, John E. Boyle, Jonathan Ehrlich, Florence Ehrlich, Donald Graumann, Ruben Kliewer, Alvin Kroupa, Barbara Kroupa, Burdett Ledell, Lee Dale Miller, Vernon Minns, Frank A. Mitchell, Mid Kansas Cooperative Association, John F. Opat, Robert Presnell, Janet Regier, Sonja Regier, Don Reinhardt, Janice Reinhardt, Mary J. Rodgers, Darrell Thompson, Robert Turner, Geneva Turnquist, Donald Turnquist, Clark E. and Marlene J. Weber, Plaintiffs - Appellants,

v.

UNITED STATES, Defendant - Appellee.

No. 05-1255.

July 22, 2005.

Appeal from the United States District Court for the District of Kansas, Case No. 04-1119-WEB, Senior Judge Wesley E. Brown

Corrected Brief of Appellee

Kelly A. Johnson, Acting Assistant Attorney General, Kathryn E. Kovacs, Lane M. Mcfadden, U.S. Department of Justice, Environment & Natural Resources, Division, Appellate SectionP.O. Box 23795 l'Enfant Plaza Sta., Washington, D.C. 20026, (202) 353-9022

***i TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ... 1

JUR1SDICTIONAL STATEMENT ... 2

STATEMENT OF THE ISSUES ... 2

STATEMENT OF THE CASE ... 3

STATEMENT OF THE FACTS ... 4

Statutory Background ... 4

A. Abandonment of the right-of-way ... 6

B. Conversion of the right-of-way for railbanking and interim trail use ... 7

C. Public Use Conditions ... 11

Factual Background ... 12

A. The trails ... 12

1. Meadowlark Trail ... 12

2. Sunflower Trail ... 13

3. Flint Hills Nature Trail ... 14

B. District Court Litigation ... 15

SUMMARY OF THE ARGUMENT ... 17

ARGUMENT ... 18

***iii** A. The case law relied on by the landowners assumes facts not applicable here ... 42

CONCLUSION ... 45

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ... 46

CERTIFICATE OF SERVICE ...

Note: Table of Contents page numbers missing in original document

***iv TABLE OF AUTHORITIES**

**CASES:**

*Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478 (Fed. Cir. 1994) ... 22, 30, 31

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ... 42, 43

*Barclay v. United States*, 351 F. Supp. 2d 1169 (D. Kan. 2004) ... 2, 4

*Basch v. Ground Round*, Inc., 139 F.3d 6 (1st Cir. 1998) ... 44

*Becker v. STB*, 132 F.3d 60 (D.C. Cir 1997) ... 36

*Birt v. STB*, 90 F.3d 580 (D.C. Cir. 1996) ... 7

Boise Cascade Corp. v. United States, 296 F.3d 1339 (Fed. Cir. 2002) ... 29

Brubaker Amusement Co. v. United States, 304 F.3d 1349 (Fed. Cir. 2002) ... 19

Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004) ... passim

Chicago and N.W. Transp. Co. v. Kalo Brick and Tile Co., 450 U.S. 311 (1981) ... 5

Citizens Against Rails-To-Trails v. Surface Transp. Bd., 267 F.3d 1144 (D.C. Cir. 2001) ... 9

Cooley v. United States, 324 F.3d 1297 (Fed. Cir. 2003) ... 29

Corn v. City of Lauderdale Lakes, 904 F.2d 585 (11th Cir. 1990) ... 40

Creppel v. United States, 41 F.3d 627 (Fed. Cir. 1994) ... 22

Crown. Cork & Seal Co. v. Parker, 462 U.S. 345 (1983) ... 43, 44

Frazer v. United States, 288 F.3d 1347 (Fed. Cir. 2002) ... 18

Goos v. I.C.C., 911 F.2d 1283 (8th Cir. 1990) ... 9

Griffin v. Singletary, 17 F.3d 356 (11th Cir. 1994) ... 44

Hendler v. United States, 952 F.2d 1364 (Fed. Cir. 1991) ... 30

Jost v. STB, 194 F.3d 79 (D.C. Cir. 1999) ... 10, 14, 38

Korwek v. Hunt, 827 F.2d 874 (2d Cir. 1987) ... 44

National Ass'n of Reversionary Property Owners v. STB, 158 F.3d 135 (D.C. Cir. 1998) ... 10

Nat'l Wildlife Center v. I.C.C., 850 F.2d 694 (D.C. Cir. 1988) ... 6, 9, 11

New Port Largo v. Monroe County. 985 F.2d 1488 (11th Cir. 1993) ... 40

Preseault v. ICC, 494 U.S. 1 (1990) ("“Preseault I‘') ... 6, 10, 18, 23, 24

Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996) (en banc) ("“Preseault II‘') ... 20, 23, 24, 31

RLTD Ry. Corp. v. STB, 166 F.3d 808 (6th Cir. 1999) ... 5, 7, 8

Robbin v. Fluor Corp., 835 F.2d 213 (9th Cir. 1987) ... 44

*v *Seiber v. United States*, 364 F.3d 1356 (Fed. Cir. 2004) ... 29

*Swisher v. United States*, No. 98-1352 (D. Kan.) ... 42

*Swisher v. United States*, 189 F.R.D. 638 (D. Kan. 1999) ... 16, 22, 42, 44

*United States v. Dow*, 357 U.S. 17 (1958 ... 29, 41

*VasCath. Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ... 19

***vi STATUTES RULES AND REGULATIONS**:

Little Tucker Act, 28 U.S.C. 1346(a)(2) ... 2

National Trails System Act, Section 8(b), 16 U.S.C. 1247(b) ... 33

Section 8(d), 16 U.S.C. 1247(d) ... 1, 2, 3, 7, 8

16 U.S.C. 1241 ... 5

16 U.S.C. 1247(d) ... 25

28 U.S;C. 1295(a)(2) ... 2

28 U.S.C. 2401 (a) ... 2, 3, 16, 19

28 U.S.C. 2522 ... 2

49 U.S.C. 702 ... 5

49 U.S.C. 10101 ... 7

49 U.S.C. 10102 ... 7

49 U.S.C. 10502 ... 6, 7, 25

49 U.S.C. 10502(a) ... 7

49 U.S.C. 10505 ... 6

49 U.S.C. 10903(a)(1) ... 25

49 U.S.C. 10903 ... 6, 7, 9

49 U.S.C. 10903(a)(1) ... 5

49 U.S.C. 10905 ... 11, 32

49 U.S.C. 10906 ... 6, 11, 13

49 C.F.R. 1152.29 ... 8, 25

49 C.F.R. 1152.29(a) ... 8

49 C.F.R. 1152.29(b)(1)(ii) ... 9

49 C.F.R. 1152.29(d) ... 25

49 C.F.R. 1152.29(d)(1) ... 9, 10

49 C.F.R. 1152.29(d)(2) ... 10, 11

49 C.F.R. 1152.29(e)(1) ... 9

49 C.F.R. 1152.29(e)(2) ... 7, 10, 25

49 C.F.R. 1152.29(f) ... 36, 37

***vii** 49 C.F.R. 1152.29(f)(1) ... 10

49 C.F.R. 1152.29(f)(2) ... 10

49 C.F.R. 11152.59(e)(1) ... 37

Fed. R. App. P. 4(a)(1)(B) ... 2

Fed. R. App. P. 32(a)(7)(C) ... 46

Fed. Cir. R. 28(b) ... 4

Fed. Cir. R. 3 ... 10, 19

Fed. Cir. R. 47.5 ... 1

National Trails System Act Amendments of 1983, Pub. L. No. 98-11, Title II, 97 Stat. 42 ... 6

Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No. 94-210, 90 Stat. 131 ... 5

Rail Abandonments - Use of Rights-of-way as Trails, 2I.C.C. 2d 591, 597-99, 1986 WL 68617 (April 16, 1986) ... 12, 30

Surface Transportation Board Decision, STB Docket No. AB-406 (Sub-No 6X), 1999 WL 1117131, *6 (December 8, 1999) ... 14

Surface Transportation Board Decision, STB Docket No. AB-406 (Sub-No 6X), 2001 WL 489991 (May 8, 2001) ... 14, 38

## *1 STATEMENT OF RELATED CASES

Counsel for the United States is unaware of any case that is related to this appeal within the meaning of Federal Circuit rule 47. 5. There are, however, approximately 22 cases pending before the federal district courts and the United States Court of Federal Claims that involve takings claims similar to the claims in this case *(i. e.*, arising out of regulatory actions under Section 8(d) of the National. Trails System Act, 16 U.S.C. § 1247(d)).

## *2 JURISPICTIONAL STATEMENT

The Complaint alleged jurisdiction in the United States District Court for the District of Kansas under the "“Little Tucker Act,‘' 28 U.S.C. § 1346(a)(2). JA36. On December 30, 2004, the district court dismissed the case as barred by the statute of limitations set by 28 U.S.C. § 2401(a). JA1. The court's judgment was accompanied by a published Memorandum and Order, Barclay v. United States, 351 F. Supp. 2d 1169 (D. Kan. 2004), JA2. Jurisdiction in this Court is based on 28 U.S.C. § 1295(a)(2). The Appellants filed a timely notice of appeal on March 11, 2005. See 28 U.S.C. § 2522; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

The Appellants, John and Constance Barclay, *et at.* (collectively, "“the LANDOWNERS‘'), allege that the railbanking of the railroad rights-of-way on their property under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) (the "“Trails Act‘'), constituted a taking of their property under the Fifth Amendment. Following Caldwell v. United States. 391 F. 3d 1226 (Fed. Cir. 2004), the district court held that the landowners' complaint was barred by the statute of limitations, because the Surface Transportation Board had issued a Notice of Interim Trail Use more than six years earlier. The issues on appeal are:

1. Whether the district court held correctly that the landowners' ***3** takings claims were time barred under the statute of limitations in 28 U.S.C. § 2401 (a), because the complaint was

filed more than six years after the Surface Transportation Board issued a Notice of Interim Trail Use permitting railbanking and interim trail use under the Trails Act, 16 U.S.C. § 1247(d).

2. Whether the district court erred in tolling the statute of limitations during the pendency of a motion to certify a potential class-action in another suit, where the landowners still had ample time to file their claims after the motion was denied.

## STATEMENT OF THE CASE

Appellants in this case are thirty-three landowners whose properties are allegedly burdened by three former railroad rights-of-way in Kansas. The rights-of-way were transferred to trail managers for interim trail use and railbanking under the authority of the Trails Act. The landowners filed a complaint on April 7, 2004, in the United States District Court for the District of Kansas, alleging a taking of their property in violation of the Fifth Amendment of the United States Constitution and requesting just compensation. JA35.

The United States moved to dismiss the case as barred by the statute of limitations. Briefing was concluded on July 21, 2004, but the district court *4 delayed its decision until this Court issued its decision in Caldwell v. United States. 391 F. 3d 1226 (Fed. Cir. 2004). JA10. In Caldwell. this Court considered when a takings claim accrues for the conversion of a railroad right-of-way to railbanking and interim trail use under the Trails Act. This Court concluded "“that this occurs when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues a NITU that operates to preclude abandonment under section 8(d).‘' Id. at 1233.

Following Caldwell. the district court in this action held that the property owners had filed their complaint out of time and were barred by the statute of limitations. JA19. Although the district court tolled the statute of limitations for a period of over eleven months, that additional time did not render the landowners' complaint timely. The district court therefore granted the government's motion to dismiss, Barclay v. United States. 351 F. Supp. 2d 1169 (D. Kan. 2004). This appeal followed.

## STATEMENT OF THE FACTS

### **Statutory Background**[FN1]

FN1. We include a statement of the case and of the facts as those in the landowners' brief are incomplete and inaccurate. Fed. Cir. R. 28(b).

Under federal law, the Surface Transportation Board ("“STB‘' or "“Board‘') ***5** has exclusive and plenary authority over the construction, operation and abandonment of virtually all of the nation's rail lines.[FN2] Chicago and N. W. Transp. Co. v. Kalo Brick and Tile Co. 450 U.S. 311, 319 (1981); CaldweU v. United States. 391 F. 3d 1226, 1228 (Fed. Cir. 2004). Consequently, a rail carrier providing transportation service subject to the jurisdiction of the STB may not abandon or discontinue service on any part of its railroad lines without the express consent of the Board. Kalo Brick. 450 U.S. at 320; 49 U.S.C. § 10903(a)(1). In federalizirig this authority, " “Congress sought to balance the railroad companies' need to dispose of trackage that was no longer profitable with the public's need for a working interstate track system.‘' RLTD Ry. Corp. v. STB. 166 F. 3d 808, 810 (6th Cir. 1999).As originally enacted in 1968, the National Trail Systems Act, 16 U.S.C. §§ 1241, *et seq.*, ("“Trails Act‘'), made no specific provision for the conversion of abandoned railroads rights-of-way to trails. In 1976, concerned about the loss of railroad trackage nationwide, Congress passed the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No, 94-210, 90 Stat. 131, which included ***6** a provision to promote the conversion to public use, including recreational use, of rail lines that would otherwise be abandoned. See Preseault v. ICC. 494 U.S. 1, 5 (1990) ("“Preseault I‘'). The 1976 Act authorized the ICC to delay disposition of rail lines subject to abandonment for up to 180 days to allow for the sale of the line for public purposes, unless the property had first been offered for public use, including recreational use. 49 U.S.C. § 10906; Preseault I. 494 U.S. at 6. Congress subsequently found, however, that the 1976 Act had not been successful in preserving railroad rights-of-way. Id. Accordingly, in 1983, Congress enacted the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, Title II, 97 Stat. 42 ("“Trails Act‘') which sought "“to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use,‘' as well as to

promote the development of recreational trails. Preseault I. 494 U.S. at 17-18; NatM Wildlife Center v. I.C.C. 850 F. 2d 694, 697 (D.C. Cir. 1988).

FN2. The STB succeeded the Interstate Commerce Commission on January 1, 1996, as the federal agency with authority over the federal railway system. 49 U.S.C. § 702. Consistent with the practice of the landowners in their brief, Br. at 6 n. 3, we refer to the agencies throughout as the " "STB.''

A. Abandonment of the right-of-wav

To abandon a railroad right-of-way, a rail carrier may file either an abandonment application under 49 U.S.C. § 10903 or seek an exemption from that requirement under 49 U.S.C. § 10502 (previously 49 U.S.C. § 10505). Section 10903(d) allows the STB to authorize abandonment or discontinuance if the Board *7 finds that ""present or future public convenience and necessity require or permit the abandonment or discontinuance.'' Section 10502 allows the STB to exempt a rail carrier from the requirements of section 10903 (and other statutory provisions) upon a showing that 1) the statutory requirement in question is ""not necessary to carry out [general] transportation policy'' under 49 U.S.C. § 10101 and 2) the service being exempted is ""of limited scope'' or the statutory requirement is ""not needed to protect shippers from the abuse of market power.'' 49 U.S.C. § 10502(a).

After the STB authorizes a rail carrier to abandon a rail line, a rail carrier generally must file a notice of consummation of abandonment after ceasing operations and removing equipment. 49 C.F.R. § 1152.29(e)(2); Birt v. STB, 90 F.3d 580, 585 (D.C. Cir. 1996). Once the rail carrier consummates its abandonment, the STB relinquishes jurisdiction and. the property interests in the corridor in some circumstances revert to the owner of the underlying fee. See RLTD, 166F.3dat 811.

B Conversion of the right-of-wav for railbanking and interim trail use

Section 8(d) of the Trails Act, 16 U.S.C. § 1247(d), provides an alternative to abandonment known as ""railbanking'' whereby the STB retains jurisdiction so that the corridor

may be returned to railroad use in the future, but the rail carrier transfers financial and managerial responsibility of the property to a state or local ***8** government or qualified private organization, allowing its use in the interim as a trail. RLTD. 166F.3d at 810-11. Section 8(d) provides that ""if such interim [trail] use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.'' 16 U.S.C. § 1247(d). Section 8(d) further provides that ""[i]f a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way * * * then the Board * * * shall not permit abandonment or discontinuance inconsistent or disruptive of such use.'' Id.; see also 49 C.F.R. § 1152.29 (implementing section 8(d)).

When a rail carrier has filed an abandonment application or request for an exemption, a party interested in acquiring or using the right-of-way for interim trail use may file a request or petition that includes: (1) a map of the right-of-way, or portion thereof, that is proposed to be acquired or used; (2) a statement of willingness to assume full responsibility for the right-of-way, including management, legal liability, and payment of taxes; and (3) an acknowledgment that interim trail use is subject to the ""possible future reconstruction and reactivation of the right-of-way for rail service.'' 49 C.F.R. § 1152.29(a).

In exemption proceedings, if the STB receives a complete railbanking ***9** request or petition and if the railroad agrees to negotiate, then the STB is required to issue a Notice of Interim Trail Use or Abandonment (""NITU''), providing time for the parties to negotiate an interim trail use/railbanking agreement. 49 C.F.R. § 1152.29(d)(1):[FN3] see also Citizens Against Rails-To-Trails v. Surface Transp. Bd., 267F.3d 1144, 1151-53 (*B.C.* Cir. 2001); Goos v. I.C.C. 911 F.2d 1283; 1295 (8th Cir. 1990). At the same time, because the railbanking provisions of the Trails Act are voluntary, the STB cannot require the railroad or any other party to engage in railbanking negotiations. Nat'l Wildlife Center. 850 F.2d at 699-700. A NITU is only issued in the event that a rail carrier has voluntarily agreed to negotiate a trail use agreement with a potential trail operator. Caldwell, 391 F.3d at 1233.

FN3. In abandonment application proceedings filed under 49 U.S.C. § 10903, the

STB issues a Certificate of Interim Trail Use or CITU. 49 C.F.R. § 1152.29(b)(1)(ii). This case involves exemption proceedings and NITUs.

The NITU permits the rail carrier to discontinue service and salvage the track, but prevents the abandonment of the line for 180 days to allow the rail carrier and the trail group time to negotiate a railbanking and interim trail use agreement.[FN4] 49 C.F.R. § 1152.29(d)(1). If the parties do not reach an agreement within the time allowed, then the railroad may abandon the line and terminate STB jurisdiction, ***10** generally by filing a notice of consummation with the STB "“to signify that it has exercised the authority granted and fully abandoned the line.‘' 49 C. F. R. §§ 1152. 29(d)(1), (e)(2); National Ass'n of Reversionary Property Owners v. STB. 158 F. 3d 135, 139 & n. 7 (D.C. Cir. 1998). The rail carrier generally must file this notice of consummation within one year after the NITU expires to abandon the line. 49 C. F. R. § 1152. 29(e)(2).

FN4. A NITU may be extended if a trail use agreement is not negotiated during the initial period and the parties request an extension. 49 C.F.R. § 1152.29(e)(1).

However, if the parties do reach an agreement, the NITU automatically authorizes the interim trail user to take over management of the right-of-way, subject only to the right of a rail carrier to reassert control over the property to restore active rail service. 49 C. F. R. § 1152. 29(d)(2); Preseault. 494 U.S. at 7 n. 5 ("“If agreement is reached, interim trail use is thereby authorized.‘'); Jost v. STB. 194 F. 3d 79, 82 (D.C. Cir. 1999). When a rail corridor is converted to railbanking and interim trail use, it is not abandoned for federal regulatory purposes, but remains subject to the STB's jurisdiction, thereby preventing any possible reversion of the property interests in the corridor to the owner of the underlying fee under state law for the duration of the interim trail use. See Preseault 494 U.S. at 8. If a trail user intends to terminate trail use, a new trail user may assume financial responsibility for the right-of-way, and the Board will vacate the previous NITU and issue a new NITU to the new trail user. 49 C. F. R. § 1152. 29(f)(1)-(2). When ***11** interim trail use terminates, the regulations require the trail user to file a request with the STY to reopen the exemption proceeding, vacate the NITU, and reinstate the exemption, thereby permitting full abandonment. 49 C. F. R. § 1152. 29(d)(2).

C. Public Use Conditions

When the STB receives an abandonment application for a railroad right-of-way, ""the Board shall find whether the rail properties that are involved in the proposed abandonment or discontinuance are appropriate for use for public purposes, including highways, other forms of mass transportation, conservation, energy production or transmission, or recreation.'' 49 U.S.C. § 10905 (formerly 49 U.S.C. § 1090. 6). The STB may then impose a ""public use condition'' on the right-of-way, forbidding transfer of the right-of-way for up to 180 days unless the right-of-way has first been offered for public sale. IcL A public use condition may not be extended past the initial 180 days. Id

While a public use condition requires the rail carrier to offer the right-of-way for sale for a variety of public uses, including recreation, for up to 180 days, it does not prevent abandonment of the right-of-way. Nat'l Wildlife Center. 850 F. 2d at 697. A rail carrier may still consummate abandonment during the imposition of a public use condition, and if the only asset then remaining is a bare easement, the rail carrier no longer possesses any property interests to transfer. Id Thus, once ***12** the rail carrier consummates abandonment, the property is no longer part of the national rail system, and the property interest would revert to the owner of the property in fee simple. Rail Abandonments - Use of Rights-of-way as Trails, 2 I. C. C. 2d 591, 597-99, 1986 WL 68617 (April 16, 1986).

Factual Background

The Kansas landowners in this appeal allege that their properties are burdened by easements granted to rail carriers for railroad purposes. The rail carriers filed notices of exemption with the STB to begin the process of abandoning the rights-of-way, and each right-of-way was subsequently subject to railbanking and interim trail use under the Trails Act. The landowners allege a Fifth Amendment taking of their reversionary property interests in the rights-of-way. Three rights-of-way are at issue in this case: the Meadowlark Trail, the Sunflower Trail, and the Flint Hill Nature Trail. Although the takings claims are similar for each trail, each has its own factual history which we describe separately. A.

A.

1. Meadowlark Trail

The right-of-way identified in If 6 of the complaint, located in McPherson County, Kansas, and referred to as the Meadowlark Trail, was last held by the Union Pacific Railroad Company ("“UP‘'). UP filed a notice of exemption for the ***13** Meadowlark Trail with the STB on June 22, 1995 (not June 5, 1995, as indicated by the landowners' brief, Br. at 12). JA56. The STB issued a N1TU for this trail on. September 28, 1995. Id. Simultaneously, the STB imposed a 180-day public use condition pursuant to <u>49 U.S.C. § 10906</u>. Id

The original trail operator requested an extension of the NITU for 180 days to September 22, 1996. Id. Three new potential trail operators joined in a second request for extension on September 22, 1996. JA58. The landowners objected to this extension request, but the STB denied the objection on January 31, 1997, and granted the extension of the NITU to March 31, 1997. JA58-61. Before March 31, Central Kansas Conservancy ("“CKC‘'), a new potential trail user, filed a request for trail use and for a 30-day extension of the NITU. The Board granted the extension to April 20, 1997, and replaced the previous trail operator with CKC on the NITU. JA64. On April 16, 1997, UP quit-claimed the right-of-way to CKC. JA39.

2. Sunflower Trail

The right-of-way identified in „ 5 of the complaint, located in Marion and McPherson Counties, Kansas, and referred to as the Sunflower Trail, was last held by Central Kansas Railway ("“CKR‘'). JA6. On February 22, 1996, CKR filed a notice of exemption to abandon the line. After a potential trait operator indicated interest and CKR indicated it was willing to negotiate, the STB issued a NITU on ***14** April 12, 1996, which was the date that the exemption would otherwise have become effective. JA6. After two additional extensions of the NITU, CKC (also the trail operator for the Meadowlark Trail) filed a statement of willingness to assume responsibility for the trail on June 6, 1997, the day that the NITU was to expire. JA68. The STB issued anew NITU, and, before it expired, CKRquitclaimed its interests in the right-of-way to CKC on September 19, 1997. JA70.

Some of the landowners filed a petition with. the STB to reopen proceedings on September 25, 1997. Id. The STB denied the petition, and the landowners sought review in the United States District Court for the District of Columbia. Jost v. STB. 194 F. 3d 79, 81 (D.C. Cir. 1999). The court remanded the landowners' objections to the Board, and the Board finally resolved the matter by affirming its original decision to deny the petition on December 8, 1999. Surface Transportation Board Decision, STB Docket No. AB-406 (Sub-No 6X), 1999 WL 1117131, *6 (December 8, 1999). Subsequently, the STB received additional petitions, and denied them on May 8, 2001. Surface Transportation Board Decision, STB Docket No. AB-406 (Sub-No 6X), 2001 WL 489991 (May 8, 2001).

3. Flint Hills Nature Trail

The rights-of-way identified in paragraphs 22 and 23 of the complaint are collectively referred to as the Flint Hills Nature Trail. The Missouri Pacific ***15** Railroad Company (""MP'') last held the right-of-way on these properties, which were eventually consolidated into one proceeding.

MP filed a notice of exemption with the STB for the Lyon County segment of the Flint Hills Nature Trail, covering the 27. 83 miles of rail line identified in Paragraph 22 of the complaint, on December 7, 1993. JA7, 18. The STB issued a NITU on October 31, 1994. JA7. For the Morris County Segment, identified as the 26. 57 miles of rail line in Paragraph 23 of the complaint, MP filed a notice of exemption on March 2, 1995. The STB issued a NITU on March 31, 1995. id

On December 18, 1995, MP notified the STB that on December 15, 1995, it had conveyed both rights-of-way (as part of a larger transfer) to the Rails-to-Trails Conservancy (""RTC'') in accordance with the Trails Act. JA8. RTC then conveyed these rights-of-way to the Seranta Farms School of Equestrian Arts on March 1, 1996. STB vacated the earlier NITU and issued a new NITU substituting Seranta as the new trail user on May 24, 1996. JA75. The NITU was again vacated and a third trail user, the Kansas Horsemen Foundation, was substituted for Seranta on a new NITU, which became effective on July 25, 1997. JA77.