IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | Hon. Robert H. Hodges, Jr. |
| vs. | ) | |
| THE UNITED STATES OF AMERICA, | ) | No. 07-271L |
| Defendant. | ) | |

**AFFIDAVIT OF JOHN LADD**

I, John Ladd, after being duly sworn, upon belief and personal knowledge, state that I am competent to testify to the facts herein:

1. My family and I own a ranch in Cochise County, Arizona. This ranch has been in our family for generations and we make our living as cattle ranchers on this land.

2. The abandoned San Pedro Railroad Operating Company's (successor to El Paso and Southwestern Railroad) right-of-way divides our ranch land for almost six miles.

3. We own the land upon which this portion of the abandoned right-of-way is located.

4. The Notice of Interim Trail Use ("NITU") issued by the federal Surface Transportation Board on July 25, 2006 excluded my family and I from physically occupying that part of our land underlying the abandoned railroad easement.

5. After abandoning the right-of-way, the SPROC Railroad removed its tracks and ties from our land.



EXHIBIT
tabbies
1

6. While the NITU was in force for our property (between July 25, 2006 and January 22, 2007), my family and I were precluded from occupying or making any use of our land upon which the abandoned right-of-way was located.

7. During this time, because of the NITU we did not grade our land upon which the abandoned right-of-way was located.

8. During this time, because of the NITU we did not cultivate our land upon which the abandoned right-of-way was located.

9. During this time, because of the NITU we did not graze cattle on our land upon which the abandoned right-of-way was located.

10. During this time, because of the NITU we did not fence or enclose this section of our land upon which the abandoned right-of-way was located.

11. During this time, because of the NITU we did not physically occupy our land upon which the abandoned right-of-way was located.

12. During this time, because of the NITU we did not prevent others from physically occupying our land upon which the abandoned right-of-way was located.

13. Since the July 25, 2006 NITU the government <u>has</u> physically occupied our land upon which the abandoned right-of-way was located.

14. The United States Border Patrol routinely uses the abandoned right-of-way as an access road.

15. Even though my family and I have asked the Border Patrol to limit its use of our land to emergency circumstances, they continue to use our land on a weekly and sometimes daily basis. (See Exhibit "A," a copy of the letter we sent to the Border Patrol).

16. The government has consistently refused to shut the gates enclosing this section of the abandoned right-of-way, and as a result, our cattle are escaping from our land onto the State Highway.

17. After the NITU expired for our property on January 22, 2007, we fenced the portion of the abandoned right-of-way but the government has cut and removed the locks we have placed on these gates and has placed its own locks on our gates.

18. The July 25, 2006 NITU prevented us from fencing or barricading this portion of the abandoned right-of-way to prevent others, such as the Border Patrol, from using and physically occupying our land while the NITU was in force.

19. The NITU prevented us from taking steps to prevent the abandoned right-of-way from being used by illegal immigrants and suspected drug traffickers as a route of access from the Mexican border to State Highway 92.

20. We want to construct barriers to prevent this illegal trafficking and to control and prevent the litter and pollution that has accompanied use of the right-of-way by illegal immigrants.

21. We want to fill in some of the ditches and divert water paths crossing over our land and cause erosion to our surrounding ranch land.

22. We have bulldozers ready to do this erosion remediation, but are waiting for clear determination that the NITU and STB's jurisdiction is no longer in force for our land before we occupy this property.

23. Once this erosion remediation can be performed, this will help keep our cattle within our ranch land and prevent erosion damage to our adjoining ranch land.

Subscribed and sworn before me this 30 day of May, 2008.

Notary Public

My Commission Expires: April 14, 2010

Notarial Seal:

OFFICIAL SEAL
SONIA URCADEZ
NOTARY PUBLIC - State of Arizona
COCHISE COUNTY
My Comm. Expires April 14, 2010

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | Hon. Robert H. Hodges, Jr. |
| vs. | ) | |
| THE UNITED STATES OF AMERICA, | ) | No. 07-271L |
| Defendant. | ) | |

## AFFIDAVIT OF JOHN GAY

I, John Gay, after being duly sworn, upon belief and personal knowledge, state as follows:

1. I am competent to testify to the matters stated herein.

2. My family and I own a ranch in Cochise County, Arizona.

3. The abandoned San Pedro Railroad Operating Company's (successor to El Paso and Southwestern Railroad) right-of-way divides our ranch for approximately one-half of a mile.

4. We own the land upon which this portion of the abandoned right-of-way is located.

5. The Notice of Interim Trail Use ("NITU") issued by the federal Surface Transportation Board on July 25, 2006 excluded my family and I from physically occupying that part of our land underlying the abandoned railroad easement.

6. After abandoning the right-of-way, the SPROC Railroad removed its tracks and ties from our land.

7. Since the NITU was issued on July 25, 2006, my family and I have been precluded from occupying or making any use of our land upon which the abandoned right-of-way is located.



EXHIBIT
tabbies
2

8. Because of the NITU, we do not grade our land upon which the abandoned right-of-way is located.

9. Because of the NITU, we do not cultivate our land upon which the abandoned right-of-way is located.

10. Because of the NITU, we do not graze cattle on our land upon which the abandoned right-of-way is located.

11. Because of the NITU, we do not physically occupy our land upon which the abandoned right-of-way is located.

12. Because of the NITU, we do not prevent others from physically occupying our land upon which the abandoned right-of-way is located.

13. Because of the NITU, we can not remove bridges or other improvements to our land upon which the abandoned right-of-way is located.

14. The July 25, 2006 NITU has prevented us from fencing or barricading this portion of the abandoned right-of-way to prevent others from using and physically occupying our land.

15. We want to remove a bridge on the portion of our land upon which the abandoned right-of-way is located so that we can perform erosion remediation in preparation of the heavy summer rains.

16. We want to remove the fencing on either side of the right-of-way in order to allow our cattle to graze the land in and alongside the abandoned roadbeds.

17. We are waiting for a clear determination that the NITU and STB's jurisdiction is no longer in force for our land before we occupy this property.

______________________________

Subscribed and sworn before me this 02 day of June, 2008.

______________________________
Notary Public

My Commission Expires: 6/16/09

Notarial Seal:

OFFICIAL SEAL
DOLORES A. BRAVO
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Comm. Expires June 16, 2009

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | Hon. Robert H. Hodges, Jr. |
| vs. | ) | |
| THE UNITED STATES OF AMERICA, | ) | No. 07-271L |
| Defendant. | ) | |

## AFFIDAVIT OF CHARLIE MILLER

I, Charlie Miller, after being duly sworn, upon belief and personal knowledge, state that I am competent to testify to the matters stated herein:

1. My family and I own a ranch in Cochise County, Arizona. This ranch has been in our family for generations and we make our living as cattle ranchers on this land.

2. The abandoned San Pedro Railroad Operating Company's (successor to El Paso and Southwestern Railroad) right-of-way divides our ranch land for approximately three miles.

3. We own the land upon which this portion of the abandoned right-of-way is located.

4. The Notice of Interim Trail Use ("NITU") issued by the federal Surface Transportation Board on July 25, 2006 excluded my family and I from physically occupying that part of our land underlying the abandoned railroad easement.

5. After abandoning the right-of-way, the SPROC Railroad removed its tracks and ties from our land.



EXHIBIT

tabbies

3

6. While the NITU was in force for our property (between July 25, 2006 and January 22, 2007), my family and I were precluded from occupying or making any use of our land upon which the abandoned right-of-way was located.

7. During this time, because of the NITU we did not grade our land upon which the abandoned right-of-way was located.

8. During this time, because of the NITU we did not cultivate our land upon which the abandoned right-of-way was located.

9. During this time, because of the NITU we did not graze cattle on our land upon which the abandoned right-of-way was located.

10. During this time, because of the NITU we did not fence or enclose this section of our land upon which the abandoned right-of-way was located.

11. During this time, because of the NITU we did not physically occupy our land upon which the abandoned right-of-way was located.

12. During this time, because of the NITU we did not prevent others from physically occupying our land upon which the abandoned right-of-way was located.

13. Since the July 25, 2006 NITU, the government has physically occupied our land upon which the abandoned right-of-way was located.

14. The United States Border Patrol routinely uses the abandoned right-of-way as an access road.

15. The July 25, 2006 NITU prevented us from fencing or barricading this portion of the abandoned right-of-way to prevent others, such as the Border Patrol, from using and physically occupying our land while the NITU was in force.

16. The NITU prevented us from taking steps to prevent the abandoned right-of-way from being used by illegal immigrants and suspected drug traffickers as a route of access from the Mexican border to State Highway 92.

17. We want to construct barriers to prevent this illegal trafficking and to control and prevent the littler and pollution that has accompanied use of the right-of-way by illegal immigrants.

18. We want to remove the fencing on either side of the right-of-way in order to allow our cattle to graze the land in and alongside the abandoned roadbeds.

19. We want to perform erosion control on the section of our land upon which the abandoned right-of-way was located.

20. We would also like to repair or remediate several of the decrepit and deteriorated bridges on that section of our land upon which the abandoned right-of-way was located.

21. We are waiting for a clear determination that the NITU and STB's jurisdiction is no longer in force for our land before we occupy this property.

Charles Miller

Subscribed and sworn before me this 6 day of June, 2008.

Sonia Urcadez

Notary Public

OFFICIAL SEAL
SONIA URCADEZ
NOTARY PUBLIC - State of Arizona
COCHISE COUNTY
My Comm. Expires April 14, 2010

**John W. and JoBeth Ladd**
**John H. and Marie Ladd**
**San Jose Ranch**
**2861 W Hwy 92**
**Bisbee, AZ 85603**

May 13, 2008

Joe Cruz
United States Border Patrol
2136 South Naco Highway
Bisbee, AZ 85603

Re: U.S. Border Patrol's usage of the Ladd property

Dear Mr. Cruz,

I am writing about the Border Patrol's use of the abandoned railroad right-of-way on the property that my family and I own in Cochise County, AZ. We appreciate the formidable task that the Border Patrol faces securing the border with Mexico. However, the Border Patrol's routine use of our land in this process has raised a number of concerns.

It is my understanding that the federal Surface Transportation Board issued an order on July 25, 2006 that authorized negotiations for a rail-to-trail conversion of this abandoned rail line and this order prevented us from regaining our land until this negotiation period expired without a Trail Use Agreement. This negotiation period ended for that portion of the abandoned roadbed on my property (the east-west corridor) on January 22, 2007. We understand that the north-south section remains subject to this order authorizing a possible rail-to-trail conversion.

Rachel Dougan of the U.S. Department of Justice, counsel for the government, stated that "on January 29, 2007, the San Pedro Railroad Operating Company, LLC ("SPROC") consummated abandonment of approximately 28.1 miles of the railroad right-of-way...by filing a notice of consummation..., thereby removing that property from the national rail transportation system....With respect to this 28.1 mile section of right-of-way, no interim trail use has ever been established, no interim trail use agreement has ever been reached, and no negotiations for trail use under the Trails Act may now be conducted."

Thus, according to Ms. Dougan of the U.S. Department of Justice, the federal government's jurisdiction over our land ceased on January 29, 2007. After this time, my family and I own the land underlying the abandoned railroad right-of-way bisecting our property free of the STB's order authorizing a possible rail-trail conversion.

EXHIBIT
tabbies
4

Over the last few months (during the time after the federal government's jurisdiction over our land was terminated), we have been having quite a few issues with the Border Patrol's use of this section of our property. The Border Patrol agents in this area routinely drive over my property four to five times a day. Even though the abandoned right-of-way is just a gravel roadbed, the agents use it as a highway to cross through our property.

The problem is that my family and I herd cattle on our property. After the railroad removed its ties, the fences to the roadbed were torn down. To contain the cattle, we erected gates enclosing the cattle within our property and closing off both ends of the abandoned rail corridor. Highway 92 runs adjacent to a section of our property and if the cattle venture out onto the Highway, this causes a great concern for not only my family and our own livelihood, but also for nearby motorists.

The Border Patrol continues to use our land and continues to leave the gates open. Their agents have been routinely and consistently crossing this right-of-way several times a day. They have even argued with me, contending that this is a "road" and that they were free to use it whenever they chose to do so. Further, they are not closing the gates behind them when they enter and exit the property. Because of this, this caused our cattle on several occasions to escape our property and venture out onto Highway 92 and the local golf course. This required me to make numerous trips in the middle of the night to find the cattle and herd them back onto our property. This is not an obligation or liability that my family should have to bear.

To prevent this from continuing to occur, I locked the gates at both ends of the right-of-way about ten days ago. Just yesterday, however, I learned that the Border Patrol was cutting down the locks to our property and putting up their own locks. This is simply unacceptable. Not only are they now trespassing on my property and destroying the locks I have installed, but they are taking over and intruding upon my property by installing their own locks.

We have reached a point of impasse with the Border Patrol over their usage of the right-of-way on my family's property. They are routinely using our property as if it was owned by the government and they seem to have no concern for my family or for our cattle on our land.

This letter, therefore, is intended to put the Border Patrol on notice that it is to cease all usage of the abandoned railroad right-of-way. We want to be cooperative and develop a positive working relationship with the Border Patrol but this needs to be reciprocated by the Border Patrol.

Sincerely,

COPY

John W. Ladd