**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | No. 07-271 L |
| v. | ) | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY CLAIMS RELATED TO EASEMENTS ACQUIRED PURSUANT TO THE 1875 ACT**

On May 15, 2008, the United States filed its Motion to Stay Claims Related to Easements Acquired Pursuant to the 1875 Act, arguing that the Court should stay such proceedings because the Federal Circuit is currently considering the breadth of the 1875 Act in the context of a rails-to-trail case.[1] *Ellamae Phillips Co. v. United States*, No. 2008-5042 (Fed. Cir.). On June 9, 2008 Plaintiffs filed their Response to Defendant's Motion to Stay ("Plts' Opp."). The United States herein replies.

[1] As the Court is aware, Defendant has also filed a Motion for Summary Judgment seeking to have this case dismissed because Plaintiffs are unable to demonstrate that they are entitled to just compensation for what is, at most, a temporary regulatory taking. *See* U.S. Motion for Summary Judgment and Opp. to Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 56). If the Court grants Defendant's Motion for Summary Judgment, the instant Motion to Stay would be moot and it would be appropriate for the Court to enter judgment in favor of Defendant on all claims.

## I. Plaintiffs Misconstrue the Importance of the Federal Circuit's Consideration of the *Phillips* Case

Plaintiffs spend the majority of their opposition to Defendant's motion to stay arguing that grants made pursuant to the General Railroad Rights of Way Act of 1875[2/] are easements rather than grants of a fee interest. In particular, Plaintiffs rely upon the Federal Circuit's decision in *Hash v. United States* to support their claim that any 1875 Act grants in the instant case are nothing more than easements. 403 F.3d 1308 ("*Hash II*"). Plts' Opp. at 5-6. This entire discussion by Plaintiffs is of no moment, because the United States does not dispute this point. While the United States may question the soundness of the decision reached in *Hash II*, it does not dispute that it represents controlling precedent in the instant case and that the *Hash II* court found that grants to railroads under the 1875 Act represent easements.

That, however, is not the end of the inquiry that this Court must address. Having determined that grants under the 1875 Act represent easements, the Court must then determine whether those easements are broad enough to encompass use of the right-of-way for railbanking and recreational trail use.[3/] The trial courts that have attempted to apply the *Hash II* decision have uniformly struggled with the question of whether the *Hash II* decision was intended to address only whether the United States retained an interest in the right-of-way following

---

[2/]Act of Congress of March 3, 1875, ch. 152, §§ 1-6, 18 Stat. 482 (current version at 43 U.S.C. §§ 934-939).

[3/]This question is, of course, dependent on Plaintiffs' ability to demonstrate that the right-of-way has, in fact, been railbanked or converted to a recreational trail pursuant to a Notice of Interim Trail Use. Currently there is no trail on the right-of-way, there are no current negotiations to establish a trail, and the initial time period for negotiating a trail has run. Moreover, as stated above, this Court may avoid this question, in its entirety, depending upon its adjudication of the pending cross-motions for summary judgment.

abandonment by the railroad, or whether it went further and determined the government's liability for a taking. *See e.g. Hash v. United States*, 2007 WL 1309548, *5 (D. Idaho 2007) ("*Hash III*") (court felt compelled to conclude that the Federal Circuit's decision mandated that it hold the United States liable, while acknowledging that "the Federal Circuit did not fully set forth the reasoning behind its finding").

Even in *Blendu v. United States* – the very case relied upon by Plaintiffs to argue that *Hash II* decided not only the existence of an easement but the ultimate liability of the United States as well (Plts' Opp. at 6-7) – the Court conceded that "[i]t is true . . . that 'the issues [in *Hash II*] were not couched in terms of whether the Government was, in fact, liable for a taking.'" 75 Fed. Cl. 543, 547-48 (2007). The court in *Blendu* went on to note that it could, at best, say that the Federal Circuit had "implicitly decided" the question of liability. *Id*.

Indeed, the question of the scope of the *Hash II* decision is so uncertain that the trial judge in *Phillips v. United States* certified the case for interlocutory appeal. *Ellamae Phillips Co. v. United States*, No. 04-1544 (Fed. Cl. Dec. 21, 2007) (attached to Defendant's moving papers as Ex. 2). The difficulty expressed by the trial court judges in applying the *Hash II* decision is, presumably, the very reason why the Federal Circuit has accepted the interlocutory appeal.[4] *Ellamae Phillips Co. v. United States*, No. 2008-5042 (Fed. Cir.). Moreover, given that the United States has already filed its opening brief in the Federal Circuit, the parties in the instant case will not be required to wait an unreasonable amount of time for the Federal Circuit

---

[4]Contrary to Plaintiffs' unfounded claim, Defendant is not attempting to "re-litigate the *Hash II* decision regarding easements conveyed pursuant to the 1875 Act." Plts' Opp. at 6. Instead, like the trial courts that have struggled with the breadth of the easements granted under the 1875 Act, Defendant is hoping to obtain clarity from the Federal Circuit.

to clarify the issue. The resources of this Court and the parties would, therefore, be well-served by waiting for the Federal Circuit to opine on these matters before forging ahead.

## II. The 1906 Act Cited By Plaintiffs Has No Application in this Case

Plaintiffs have separately offered a true red herring as a basis for arguing that this case is somehow different from the *Phillips* case pending before the Federal Circuit. Plts' Opp. at 2-5. Plaintiffs admonish Defendant for "leav[ing] out any reference whatsoever to the 1906 Act." Act of Congress of June 26, 1906, ch. 3548, 34 Stat. 481 (current version at 43 U.S.C. § 944) (referred to herein as the "1906 Act"). Defendant did not mention the 1906 Act because it simply does not apply in this case.

Plaintiffs have asserted, with no legal or factual support, that "the 1906 Act . . . specifically applies the 1875 Act to the Territories of Oklahoma and Arizona." Plts' Opp. at 2. This is incorrect. The 1875 Act generally applied to lands in all western territories, including Arizona and Oklahoma. Therefore, a later provision re-applying the 1875 Act, in general terms, to these two specific territories would have been repetitive and superfluous. Instead, in 1906, Congress was attempting to apply the 1875 Act to a very small portion of "schools land" in Arizona and Oklahoma, which had been exempted from the 1875 Act. *See* H.R. Rep. No. 59-4777 (1906); S. Rep. No. 59-1417 (1906) (copies of these Congressional reports are attached hereto as Exhibits 1 and 2 respectively).[5]

---

[5] The House Report makes clear that by passing the 1906 Act, there was no intention to modify the grant conferred to the railroads under the 1875 Act: "[t]he present bill does not in any way enlarge the nature of the right conferred." H.R. Rep. No. 59-4777, at 2 (1906) (Ex. 1). Thus, even if the 1906 Act applied to the lands at issue in this case, which it does not, it is merely coterminous with the 1875 Act and will, therefore, be equally clarified by the Federal Circuit's decision in *Phillips*.

The 1875 Act contains a provision that it "shall not apply to any lands . . . especially reserved from sale, unless such right of way shall be provided for by treaty stipulation or by Act of Congress passed prior to March 3, 1875." Act of Congress of March 3, 1875, ch. 152, § 5, 18 Stat. 483 (current version at 43 U.S.C. § 938). Then, by acts in 1894 and 1896, Congress "especially reserved from sale" two sections in each township in Oklahoma and Arizona to be used for schools land. Acts of Congress of May 4, 1894, 28 Stat. 71 and April 7, 1896, 29 Stat. 90.

Unfortunately, between the passage of the 1875 Act and the later passage of the acts setting aside land for schools in Oklahoma and Arizona, railroads had already been constructed across the especially reserved schools land. Learning this, Congress became concerned that if and when Oklahoma and Arizona became states and the schools land reverted to the states' ownership, railroads would be required to buy easements from the states for the portions of the railroads that crossed the schools land. Wanting to avoid this eventuality, in 1906, before Oklahoma and Arizona became states and the schools land reverted to the them, Congress passed the 1906 Act.

The 1906 Act merely confirmed that land granted to railroads in the territories of Oklahoma and Arizona that crossed the "[school] lands theretofore reserved for said Territories," would be conveyed to the states subject to the rights previously granted to the railroads. Reports in both the House of Representatives and the Senate, as well as the 1906 Act itself, clearly confirm that the act applies only to these very limited "lands theretofore reserved for said Territories . . . ." March 3, 1875, ch. 152, § 5, 18 Stat. 483 (current version at 43 U.S.C. § 938); H.R. Rep. No. 59-4777 (1906); S. Rep. No. 59-1417 (1906).

Given that Plaintiffs have never asserted, let alone proven, that the land at issue here was part of schools land, the 1906 Act is irrelevant and should play no role in the Court's consideration of the instant motion to stay.

**III. Grant of Federal Land Pursuant to Federal Statutes Are Governed by Federal Law**

Finally, Plaintiffs suggest that the decision to be rendered by the Federal Circuit in *Phillips*, will have no applicability to the instant case because any 1875 Act easements interpreted in that case will be interpreted based upon Colorado law (the location of the right-of-way in *Phillips*), while any 1875 Act easements in this case will be analyzed based upon Arizona law. Simply put, Plaintiffs' assertion is not supported by existing case law. Indeed, it is well settled that in applying an easement granted by Federal statute, and the 1875 Act in particular, a court must analyze the easement pursuant to Federal law.

The easements at issue in this case and in *Phillips* were granted to the relevant railroad under the 1875 Act. It is well established that federal law governs the scope of any easement created under the 1875 Act. "In the case before this court, the railroad company's right-of-way was granted under the 1875 Act, not by a private land transfer. Therefore, defining the intentions of Congress as to the property interests impacted by the federal statue is an issue of federal law." *Beres v. United States*, 64 Fed. Cl. 403, 410 (2005) (citing *Leo Sheep Co. V. United States*, 440 U.S. 668, 682 (1979)). Federal and state courts have uniformly recognized this bedrock principle. *See State of Idaho v. Or. Short Line R.R. Co.*, 617 F. Supp. 207, 212 (D. Idaho 1985); *Crandal v. Goss* 167 P. 1025, 1027 (Idaho 1917) (the nature and effect of a federal grant to a railroad "involves the interpretation of an act of Congress, and presents a federal question of which the Supreme Court of the United States has ultimate jurisdiction" ); *Barney v.*

*Burlington N.R.R.*, 490 N.W.2d 726, 729 (S.D. 1992) (holding that the nature of the property interest held by various parties as a result of the grant of an 1875 Act easement "is defined and controlled by federal legislation and is, therefore, a federal question") (citation omitted), *cert. denied sub non Kaubisch v. South Dakota*, 507 U.S. 914 (1993); *Whipps Land & Cattle Co. v. Level 3 Commc'ns., LLC*, 658 N.W.2d 258, 264 (Neb. 2003) ("The scope of [a] right-of-way [under the 1875 Act] is a matter of federal law."); *Marlow v. Malone*, 734 N.E.2d 195, 205 (Ill. App. Ct. 2000) ("rights created under federal statute are not governed by state law") (citation omitted).

Accordingly, the nature and scope of the 1875 Act easements in both this case and *Phillips* will be decided as a question of federal law. Thus, the Federal Circuit's decision in *Phillips* regarding the scope of 1875 Act easements will be immeasurably instructive to the Court in the instant case.

**CONCLUSION**

For all of the foregoing reasons as well as the arguments presented in Defendant's moving papers, the United States respectfully requests that the Court stay proceedings in this

case related to a determination of liability for properties subject to easements acquired by the Railroad pursuant to the 1875 Act.

June 27, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Rachel A. Dougan*
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

OF COUNSEL
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024