**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, Husband and Wife, JOHN LADD and JOBETH LADD, Husband and Wife,<br><br>WILLIAM LINDSEY, JAMES A. LINDSEY, MICHAEL A. LINDSEY and GAIL A. LANHAM,<br><br>CHARLIE MILLER, RAYMOND and PAULINE MILLER, Husband and Wife,<br><br>VALENTIN CASTRO, III & DEBORAH ANN CASTRO REVOCABLE TRUST, VALENTIN and DEBORAH ANN CASTRO, Trustees,<br><br>SINGLETREE RANCH, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,<br><br>JOSEPH LAWRENCE HEINZL,<br><br>MILLER FAMILY TRUST, COL. QUENTIN MILLER, TRUSTEE,<br><br>TAMMY WINDSOR-BROWN,<br><br>For Themselves and As Representatives of a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 07-CV-00271-RHH |

**MOTION OF RAILS-TO-TRAILS CONSERVANCY FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Rails-to-Trails Conservancy ("RTC"), a national nonprofit conservation organization with offices in Washington, D.C., California, Florida, Massachusetts, Ohio, and Pennsylvania has been granted leave to participate in this case as *amicus curiae* in opposition to Plaintiffs'

Motion for Summary Judgment and in support of Defendant's Cross-Motion for Summary Judgment. RTC hereby seeks leave to participate in the oral argument scheduled for July 10, 2008. Due to the short time remaining before the hearing on July 10, 2008, RTC also respectfully requests that this Court expedite consideration of this motion. The United States does not oppose this motion; however, counsel for Plaintiffs has indicated that Plaintiffs intend to oppose this motion based on an incorrect assumption that "it is not customary for the amicus to participate in oral argument."

In fact, as noted below, RTC has participated in many cases asserting that a taking arises from the operation of the Federal Railbanking Law, including most recently in *Troha v. United States*, No. 1:05cv00191, Dkt. 44 (W.D. Pa., filed June 21, 2005), a case raising similar "temporary takings" issues.[1] RTC submits that its expertise and substantial experience will present a valuable perspective in assisting this Court in resolving the important issues of first impression presented by this case.

## I. BACKGROUND

This case was brought by several persons who own land that abuts a 76.2 mile long railroad right-of-way between Curtiss Flats, Arizona, to just north of the U.S.-Mexico border near Bisbee Junction, Douglass, and Paul Spur, Arizona. The corridor is owned by Union Pacific and operated by the San Pedro Railroad Operating Company ("SPROC"). Plaintiffs claim that their alleged reversionary interests in the right of way have been taken as a result of the issuance of an order by the Surface Transportation Board ("STB") permitting the railroad and the potential trail manager to engage in "railbanking" negotiations under the National Trails

[1] In *Troha v United States*, as in the instant case, the corridor is still in the possession of the railroad and no railbanking/interim trail use agreement has been executed. However, unlike this case, the railbanking order remains in effect, and interim trail use negotiations are still in progress. Nonetheless, the Court has held the case in abeyance until such time as either a railbanking/interim trail use agreement is executed or the STB's railbanking order expires, implicitly recognizing that the absence of an interim trail use agreement and a rails-to-trails conversion materially affects both the legal analysis and the outcome of the takings claims asserted.

System Act ("Federal Railbanking Law")[2] and that they are therefore entitled to compensation, despite the fact that (1) no railbanking or interim trail use agreement was ever reached, (2) the STB's railbanking order has expired, and (3) the corridor remains in the possession of the railroad, as it has for the past century.

On February 14, 2008, RTC was granted permission to participate in this case as *amicus curiae*. On May 15, 2008, RTC filed an *amicus* brief in opposition to the motion for summary judgment filed by the Plaintiffs and in support of the motion for summary judgment filed by the United States. In RTC's *Amicus Curiae* Brief in Opposition to Plaintiffs' Motion for Summary Judgment, RTC argues, among other things, that the existing precedent under the Federal Railbanking Law has consistently relied on the imposition of actual trail use in finding a physical occupation resulting in a *per se* taking, whereas here, no trail use agreement was ever reached, and no trail use ever occurred.. As a result, any takings claim that may have accrued upon the issuance of the now expired NITU—an STB order permitting "railbanking" negotiations—is merely a temporary takings claim. As such, the claim must be analyzed and rejected under the three-part test for regulatory takings framework set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

Oral argument on Plaintiffs' Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment is scheduled to take place on July 10, 2008. Ketanji Jackson, an experienced appellate practitioner and of counsel listed below, would present the argument on behalf of RTC. Ms. Jackson is currently in the process of applying for admission to the U.S. Court of Federal Claims.

[2] The Federal Railbanking Law established a mechanism, often referred to as "railbanking," whereby railroads wishing to cease operations on particular lines would be encouraged, but not required, to convey those lines to States, local governments, or qualified private organizations that would manage and operate the rights of way as interim trails pending future reactivation of rail use. *See* 16 U.S.C. 1241 *et seq*.

## II. INTEREST IN PARTICIPATING IN ORAL ARGUMENT

### A. RTC Has a Significant Interest in the Federal Railbanking Law and Takings Cases Arising Thereunder

RTC is a nonprofit corporation formed in 1985, with more than 77,000 members nationwide, including approximately 767 active members in the State of Arizona. The mission of RTC is to create a nationwide network of trails from former rail lines and connecting corridors to build healthier places for healthier people. Specifically, RTC identifies rail corridors that are not currently needed for rail transportation and facilitates their preservation and continued public use through conversion to public trails, non-motorized transportation corridors, and other public uses.

Through its trail conservancy program, RTC has participated in numerous interim trail use/railbanking negotiations under the Federal Railbanking Law. RTC has also participated in numerous cases brought by private landowners following the Federal Circuit's plurality decision in *Presault v. U.S.A.*, 100 F.3d 1525 (Fed. Cir. 1996), which opened the door to claims by landowners that a rails-to-trails conversion facilitated by the Federal Railbanking Law constitutes a "taking" of the property interests underlying the railroad corridor.[3] In many of these cases, RTC has also participated in oral argument.[4] This extensive involvement in the

[3] *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996); *Chevy Chase Land Co. v. United States*, 37 Fed. Cl. 545 (1997), *aff'd*, 230 F.3d 1375 (Fed. Cir. 1999), *reh'g & reh'g in banc denied*, 2000 U.S.App. LEXIS 8520 (Fed. Cir. April 6, 2000), *cert. denied*, 531 U.S. 957 (2000); *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004); *Moore v. United States*, No. 1:93cv134 (Fed. Cl., filed March 5, 1993); *Glosemeyer v. United States*, No. 1:93cv126 (Fed. Cl., filed March 4, 1993); *Grantwood Village v. United States*, No. 1:98cv176 (Fed. Cl., filed March 13, 1998); *Gray v. United States*, No. 4:99cv3154 (D. Neb., filed May 17, 1999); *Bywaters v. United States*, No. 6:99cv451 (E.D. Tex., transferred Aug. 3, 1999); *Hash v. United States*, No. 1:99cv324 (D. Idaho, transferred Aug. 5, 1999); *Schneider v. United States*, No. 8:99cv315 (D. Neb., filed Aug. 2, 1999); *Taylor v. United States*, No. 2:00cv2385 (W.D. Pa, filed Dec. 7, 2000); *Schmitt v. United States*, No. EV 99-118-C--Y/H, 2003 WL 21057368 (S.D. Ind., March 5, 2003); *Beres v. United States*, No. 1:03cv785 (Fed. Cl., filed April 15, 2003); *Ellamae Phillips Co. v. United States*, No. 1:04cv1544 (Fed. Cl., filed Oct. 13, 2004).

[4] *Moore v. United States*, No. 1:93cv134 (Fed. Cl., filed March 5, 1993); *Schneider v. United States*, No. 8:99cv315 (D. Neb., filed Aug. 2, 1999); *Hash v. United States*, No. 1:99cv324 (D. Idaho, transferred Aug. 5, 1999); *Chevy Chase Land Co. v. United States*, 37 Fed. Cl. 545 (1997), *aff'd*, 230 F.3d 1375 (Fed. Cir. 1999), *reh'g & reh'g in banc denied*, 2000 U.S.App. LEXIS 8520 (Fed. Cir. April 6, 2000), *cert. denied*, 531 U.S. 957 (2000); *Schmitt v. United States*, No. EV 99-118-C--Y/H, 2003 WL 21057368 (S.D. Ind., March 5, 2003); *Beres v.*

(Footnote continues on next page.)

Federal Railbanking program and in litigation over the ownership issues raised by rails-to-trails conversions renders RTC uniquely suited to provide its views as *amicus curiae* to this Court.

RTC's interest in these cases stems from its goal to preserve our nation's built railroad infrastructure for continued public use and potential future use for railroad service. Today, it would be virtually impossible to recreate this system once the right-of-way is abandoned and sold, and bridges, tunnels and other costly structures destroyed. Like Humpty Dumpty, a rail corridor, once dismantled and fragmented, cannot be put back together again due to the present high cost of land and the difficulties of assembling a right-of-way in our increasingly populous nation. Congress has recognized the importance of preserving our built rail system in declaring, through the Federal Railbanking program, our "national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use." 16 U.S.C. § 1247(d). This national policy favoring corridor preservation, proclaimed in the heyday of cheap oil, reflects Congress' foresight in seeking to protect its significant public investment in the creation of these corridors, which were largely assembled through the use of eminent domain, public lands grants, loan guarantees and/or cash awards. This policy anticipates the possible return of these corridors to active rail service in times, such as the present era of high gas prices, when railroad transportation has become more desirable.

### B. RTC's Interest is Distinct From That of the United States

In their Response to Brief of the Rails-to-Trails Conservancy as Amicus Curiae (Dkt. 61), Plaintiffs suggest that RTC's interests are one and the same as the United States. This is certainly not true. The United States undoubtedly has a significant interest in this case, as it is the party that is liable for any damages arising from a taking under the Federal Railbanking Law.

---

(Footnote continued from previous page.)

*United States*, No. 1:03cv785 (Fed. Cl., filed April 15, 2003); *Troha v. U.S.A.*, No. 1:05cv00191 (W.D. Pa., filed June 21, 2005).

However, the United States represents the STB, an agency that has no involvement, authority, or interest in the actual rails-to-trails conversions that may be facilitated by the Federal Railbanking Law.

By contrast, as noted above, the RTC has a significant interest in these actual rails-to-trails conversions. Contrary to Plaintiffs glib suggestion that RTC has no interest in the case because it would not be liable to pay just compensation, these compensation claims can and have had consequences outside of the takings context. Often, takings decisions decided by the federal courts are cited as precedent in state court "quiet title" challenges to non-railbanked corridors. These actions directly threaten the ability to preserve these corridors for continued public use.[5] Similarly, as Plaintiffs themselves acknowledge in their Response, the compensation litigation over the Federal Railbanking program has been the impetus for several attempts by members of Congress seeking to amend the Federal Railbanking Law in various respects. Several of these attempts would have precluded the use of the Federal Railbanking program to preserve railroad corridors where adjacent landowners have asserted compensation claims, without regard to whether trail use would, under the applicable law, have resulted in a taking. Thus, while it is the government not RTC that is liable for paying just compensation, the railbanking takings litigation directly threatens RTC's efforts to preserve railroad corridors for public use and railbanking by promoting and facilitating rails-to-trails conversions. RTC would thus offer a unique and important voice on these issues at oral argument.

Indeed, RTC's interest is so distinct from the United States that RTC has been granted leave to intervene as a party defendant in *Schneider v. United States*, CA. No. 8:99cv0315 (D.

[5] For example, the Supreme Court of Idaho applied the reasoning of the Federal Circuit's decision in *Hash v. United Sates*, 403 F.3d 1308 (Fed. Cir. 2005), a compensation claim involving a railbanked corridor in Idaho, to a "quiet title" challenge to a governmental entity's acquisition of a non-railbanked railroad corridor in South Dakota, thus threatening efforts to preserve rail corridors in South Dakota for continued public use. *Brown v. Northern Hills Regional RR. Authority*, 732 N.W.2d 732 (S.D. 2007).

Neb., transferred July 26, 1999), a state-wide class action takings case involving railbanked corridors in Nebraska.

### C. RTC Has a Particular Interest In the Present Litigation As It Raises Issues of First Impression

While RTC has an interest generally in takings cases arising under the Federal Railbanking Law, its interest is particularly strong here because of the unique facts of this case. Here, unlike other takings cases that have been filed to date, there is no extant STB railbanking order, no ongoing railbanking/interim trail use negotiations, and no rails-to-trails conversion; indeed, the STB no longer even has the authority to issue a railbanking order facilitating a rails-to-trails conversion over a portion of the corridor that Plaintiffs' claim has been taken as a result of the STB's actions. Thus, this case raises an issue of first impression: whether the issuance of a NITU without a subsequent rails-to-trails conversion constitutes a compensable taking. Given its significant interest in the Federal Railbanking Law, RTC has a strong interest in fully participating in the resolution of this question of first impression, including presenting its views at oral argument.

The potential significance of this case is underscored by Plaintiffs extreme and far-reaching arguments, which they continue to assert in their Reply Brief. First, as described in RTC's brief, Plaintiffs arguments would potentially render the United States liable for compensation for any action by the STB that prevents railroad abandonment, even when the STB prevents abandonment for continued *railroad* use of a rail corridor. Second, Plaintiffs falsely suggest that the Federal Circuit has already held that the issuance of a NITU alone, even without a rails-to-trails conversion, constitutes a compensable taking. To the contrary, the Federal Circuit has only decided cases involving actual rails-to-trails conversions and has clearly and expressly declined to "address[] whether the issuance of the NITU in fact involves a compensable temporary taking when no [trail use] agreement is reached." *Caldwell v. United States*, 391 F.3d 1226, 1235 n.7 (Fed. Cir. 2004). Finally, Plaintiffs suggest that the issuance of the NITU and other STB regulatory actions somehow constitute a physical taking, despite the

fact that there is no trail use and no other physical invasion of Plaintiffs land (other than the already authorized invasion by the railroad). To the contrary, as explained in RTC's brief, any takings claim is at most a temporary regulatory taking that must be evaluated under the *Penn Central* analysis.

RTC respectfully suggests that its experience and acquired expertise in this area would be beneficial to the Court in evaluating Plaintiffs' broad (and erroneous) assertions on this issue of first impression and determining the impact these arguments would have on both the jurisprudence in this area and the Federal Railbanking program. RTC has first-hand knowledge of many of the cases and issues raised by both the Plaintiffs and the United States, as it participated in many of the cases cited by the parties. As the Court is well-aware, this is a complex and confusing area of law and the precedent is not entirely clear, particularly with regard to the issue of first impression raised here. RTC respectfully suggests that it will bring a perspective to oral argument, based on its unique interests and significant experience, that will be helpful to the Court and the parties. At the same time, RTC will be able to present its views on this issue of first impression that could have far-reaching impact on RTC's 77,000 members, as well as tens of thousands of more trail users, nationwide. RTC is not seeking to delay the scheduled hearing, but simply seeks to have an opportunity to present its views.

## III. CONCLUSION

For these reasons, Rails-to-Trails Conservancy respectfully requests that this Court enter the attached order granting it leave to participate in oral argument as *amicus curiae* in opposition to Plaintiffs' Motion for Summary Judgment and in support of the United States' cross-motion for summary judgment.

Dated: June 28, 2008

Respectfully submitted,

RAILS-TO-TRAILS CONSERVANCY

By: ______________/s/__________________

Andrea C. Ferster
aferster@railstotrails.org
Rails-To-Trails Conservancy
2121 Ward Ct., NW, 5th Floor
Washington, DC 20037
Telephone: 202.331.9696
Facsimile: 202.223.9257

OF COUNSEL:
MORRISON & FOERSTER LLP
Mark C. Zebrowski
Greg Reilly
greilly@mofo.com
Ramin Tohidi
Sarah E. Simmons
12531 High Bluff Drive, Suite 100
San Diego, CA 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Ketanji B. Jackson
ketanjijackson@mofo.com
2000 Pennsylvania Ave. NW
Suite 5500
Washington, DC 20006
Telephone: 858.887.1500
Facsimile: 858.887.0763

Attorneys for Amicus Curiae RAILS-TO-TRAILS CONSERVANCY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 29, 2008, a true and correct copy of the foregoing was filed with this Court's electronic filing system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing unable as indicated on the Notice of Electronic Filing

__________/s/____________________
Andrea C. Ferster