**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

JACK LADD and MARIE LADD, et al.,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 07-271 L

Honorable Robert H. Hodges, Jr.

**DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Div.

RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Div.
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024

## TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. No Physical Taking of the Right-of-Way Has Occurred . . . . . . . . . . . . . . . . . . . . 3

A. Plaintiffs Incorrectly Rely Upon Cases Addressing Claim Accrual to Attempt to Define the Nature of the Taking . . . . . . . . . . . . . . . . . . . . . . . 3

B. The Nature of the Government Action, Not the Impact on the Property Owner, Defines the Type of Taking that May Have Occurred . . . . . . . . . 6

C. No Physical Invasion of the Right-of-Way Has Occurred as the Result Of the STB's Issuance of the NITU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1. Plaintiffs Have Not Plead a Physical Invasion by the Border Patrol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. Plaintiffs Have No Property Right to Exclude the Border Patrol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

a. Background Principles Establish That the Right to Exclude the Border Patrol from Property Is Not Among The Sticks in Plaintiffs' Bundle . . . . . . . . . . . . . 11

b. Any Entry by the Border Patrol onto Plaintiffs' Property Does Not Rise to the Level of a Taking . . . . . . 13

II. Plaintiffs Do Not Possess A Compensable Property Interest In The Railroad Corridor Because The Private Conveyance Documents Granted Fee Title To The Railroad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Acadia Technology, Inc. v. United States,
458 F.3d 1327 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Air Pegasus of D.C., Inc. v. United States,
424 F.3d 1206 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Alde v. United States,
28 Fed. Cl. 26 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

American Pelagic Fishing Co. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

AmeriSource Corp. v. United States,
75 Fed. Cl. 743 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Atlantic & P.R. Co. v. Lesueur,
19 P. 157 (Ariz. Terr. 1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Barclay/Renewal Body Works v. United States,
443 F.3d 1368 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Boise Cascade Corp. v. United States,
296 F.3d 1339 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Boyd v. Atchison, T. & S.F. Ry. Co.,
4 P.2d 670 (Ariz. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Caldwell v. United States,
391 F.3d 1226 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Chancellor Manor v. United States,
331 F.3d 891 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Chevy Chase Land v. United States,
733 A.2d 1055 (Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Colvin Cattle Co. v. United States,
468 F.3d 803 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hash v. United States,
454 F. Supp. 2d 1066 (D. Idaho 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Jarboe-Lackey Feedlots, Inc. v. United States,
7 Cl. Ct. 329 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kaiser Aetna v. United States,
444 U.S. 164 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Killgore v. Cabell County Ct.,
92 S.E. 562 (W. Va. 1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lacer v. Navajo County,
687 P.2d 404 (Ariz. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Loretto v. Teleprompter Manhattan CATV Corp.,
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

M & J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Miller v. Schoene,
276 U.S. 272 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Miller v. United States,
67 Fed. Cl. 542 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Molina v. Ramirez,
138 P. 17 (Ariz. 1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mugler v. Kansas,
123 U.S. 623 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Murphy v. Missouri Dep't of Corrections,
372 F.3d 979 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Paradissiotis v. United States,
304 F.3d 1271 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Penn Cent. Corp. v. Commonwealth Edison Co.,
512 N.E.2d 118 (Ill. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Penn Cent. Transp. Co. v. New York City,
438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pennsylvania Coal Co. v. Mahon,
260 U.S. 393 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Preseault v. United States,
100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rowell v. Gulf, M. & O.R. Co.,
28 So.2d 209 (Ala. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Seay v. United States,
61 Fed. Cl. 35 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Skip Kirchdorfer, Inc. v. United States,
6 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Spurlock v. Santa Fe Pacific R. Co.,
143 Ariz. 469 (Ariz. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tuthill Ranch, Inc. v. United States,
381 F.3d 1132 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. $7,990.00 in U.S. Currency,
170 F.3d 843 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. One (1) 1979 Cadillac Coupe De Ville,
833 F.2d 994 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**RULE**

RCFC 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

8 U.S.C. § 1357(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

43 U.S.C. §§ 934-939 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ariz. Rev. Stat. Ann. § 12-1861 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**OTHER AUTHORITIES**

23 Am. Jur. 2d Deeds § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

23 Am. Jur. 2d Deeds § 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

65 Am. Jur. 2d Rail § 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

74 C.J.S. Rail § 185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## INTRODUCTION

As Defendant demonstrated in its opening memorandum, all of the named Plaintiffs have presented, at most, claims of temporary regulatory takings because the Notice of Interim Trail Use ("NITU") negotiation period ended with no trail use agreement having been reached. See Docket No. 56, Def.'s SJ Mem. The United States is entitled to summary judgment on these claims because the challenged government action – a regulatory order authorizing a temporary negotiation period – did not result in any "extraordinary delay" and therefore does not constitute a taking.[1/] Moreover, Plaintiffs have failed to prove that they have any reversionary property interest in the railroad corridor.

Plaintiffs argue that the Surface Transportation Board's ("STB's") issuance of a July 26, 2006, NITU resulted in a physical taking even though it is undisputed that no trail use agreement was reached during the NITU negotiation period for any portion of the railroad corridor.[2/] Plaintiffs allege that the NITU prevented the named Plaintiffs from occupying and using the railroad corridor that abuts their properties. However, neither the government nor any third party occupied or used the relevant property as a result of the NITU. As Defendant has shown, the NITU is a regulatory order that merely preserves the status quo while the railroad operator negotiates with a third party over the possibility of converting the railroad corridor into an interim trail. The NITU does not authorize any physical invasion or occupation of the railroad

---

[1/] If this Court determines that Plaintiffs have stated regulatory takings claims notwithstanding the absence of extraordinary delay, this case should proceed to an analysis under Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978). In this event, Defendant should be afforded an opportunity to conduct additional discovery and to submit briefing on the Penn Central factors.

[2/] In their opposition, Plaintiffs no longer argue that any of the named Plaintiffs have a permanent taking claim.

corridor absent a railbanking and interim trail use agreement. To the extent that the railroad operator may use and occupy the railroad corridor during the NITU negotiating period, this use and occupation is not pursuant to the NITU, but instead a result of the railroad's underlying interest in the railroad corridor, as defined by the original conveyance documents. No potential trail operator has the right to use the property unless and until a trails use agreement is reached. Indeed, the rights of the railroad, the trail operator, and the named Plaintiffs, if any, with respect to the occupation and use of the railroad corridor are exactly the same both before and after the issuance of the NITU.

Plaintiffs also argue in their opposition that the government has taken their property because Border Patrol agents have allegedly made use of a portion of the railroad corridor that abuts several of the named Plaintiffs' properties. Not only is this new claim not properly before the Court, it is entirely without merit.[3/] Plaintiffs' new arguments should be rejected because Plaintiffs have not properly plead such a claim. Should Plaintiffs seek to allege that the actions of the Border Patrol have taken their property, they must seek leave of Court to file a Second Amended Complaint. Moreover, even assuming the allegations made by Plaintiffs are true, the alleged actions of the Border Patrol do not rise to the level of a taking.

Plaintiffs have also failed to prove that they have a reversionary interest in the railroad corridor. As described below, the private conveyance documents must be analyzed under Arizona state law. Under Arizona law a conveyance of an interest in land is not converted to something less than a fee interest simply because a description of the intended use of the

---

[3/]Plaintiffs do not provide any evidence, nor can they, that any of the Border Patrol's alleged actions are taken pursuant to the Trails Act or the July 26, 2006 NITU.

property is included in the conveyance document. Unlike the cases cited by Plaintiffs, the granting clauses in the deeds at issue in this case grant an interest in land. The deeds in the cases relied upon by Plaintiffs contain granting clauses that granted a right to use. Moreover, a finding that the grants of land at issue here conveyed fee title would be consistent with the case law from other jurisdictions.

Accordingly, Defendant respectfully requests that this Court grant summary judgment in favor of the United States on all claims.

## ARGUMENT

### I. NO PHYSICAL TAKING OF THE RIGHT-OF-WAY HAS OCCURRED.

#### A. Plaintiffs Incorrectly Rely Upon Cases Addressing Claim Accrual to Attempt to Define the Nature of the Taking.

Contrary to Plaintiffs' repeated assertions that their claims are based on "well settled and established law," e.g. Pls.' SJ Opp'n at 4, Plaintiffs do not cite any case where a court held that a NITU resulted in a physical taking claim when no trail use agreement was subsequently reached. Indeed, Plaintiffs are the first to bring such a novel claim. As Defendant demonstrated in its opening memorandum, Plaintiffs' claims are properly analyzed not as claims of permanent physical takings, but as claims of temporary regulatory takings. Defendant is entitled to summary judgment on these claims because the temporary regulatory delay authorized during the NITU negotiation period was not extraordinary. See Defs.' SJ Mem. at 15-25; supra at Part I.B.

Despite the fact that Defendant has not disputed Plaintiffs' argument that their claims in this case accrued on the date of the NITU, the main argument presented in Plaintiffs' opposition is that the Federal Circuit has held that a Trails Act taking claim accrues on the date of the NITU

regardless of whether a trail use agreement has been reached. Throughout their opposition, Plaintiffs selectively cite statements from various cases and prior court filings by the United States, which considered the issue of when a Trails Act taking claim accrues. It appears that Plaintiffs have emphasized these statements regarding the date of claim accrual because they improperly seek to conflate the question of when their takings claims accrue, which is not in dispute, with the question that is actually before the Court – whether their claims have any merit. Plaintiffs' arguments lack merit and should be rejected by this Court.

As explained in Defendant's opening memorandum, the Federal Circuit's decisions in Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004), and Barclay/Renewal Body Works v. United States, 443 F.3d 1368 (Fed. Cir. 2006), are not instructive to the instant case because the legal issue analyzed in those cases – when the plaintiffs' claims accrued for purposes of the statute of limitations – is not presented here.[4/] See, e.g., Caldwell, 291 F.3d at 1228 ("This case requires us, for the first time to determine when the Fifth Amendment takings claim accrues for purposes of the six-year statute of limitations under the Tucker Act . . ."). Moreover, the fact that the Federal Circuit held that the permanent takings claims presented in Caldwell and Barclay/Renewal were physical takings does not mean that Plaintiffs have presented physical taking claims here. The railroad operators in Caldwell and Barclay/Renewal had not only reached a trail use agreement, but interim trails had been established on the relevant railroad

[4/]Contrary to Plaintiffs' assertions, the government is not seeking to "rewrite" these decisions or have this Court reach a holding that is inconsistent with these prior cases. Pls.' SJ Opp'n at 10. The simple fact is that in Caldwell and Barclay/Renewal the Federal Circuit did not address the legal issue presented to this Court and, moreover, was presented with significantly different facts.

corridors.[5] See Def.'s SJ Mem. at 25-26. In contrast, in this case, it is undisputed that the negotiation period authorized by the July 26, 2006 NITU has ended for the entire railroad corridor, there is no trail use agreement, and there is no interim trail. The lack of a trail use agreement makes the facts of this case significantly different from all of the rails-to-trails takings cases that have preceded it.

In Caldwell the Federal Circuit stated that a Fifth Amendment takings claim under the Trails Act may accrue for purposes of the statute of limitations on the date of the NITU. 391 F.3d at 1234. In this case, the issue before this Court is not when Plaintiffs' claims accrued, but whether there has been any action that can give rise to a taking. Whether the issuance of a NITU can result in a compensable taking when no trails use agreement is reached has not been decided by prior case law. Indeed, in Caldwell, the Federal Circuit expressly pointed out that it was not deciding this issue, stating that "[t]his case does not involve, and we do not herein address, whether the issuance of the NITU in fact involves a compensable temporary taking when no agreement is reached."[6] Id. at 1234 n.7.

---

[5]Similarly, in Preseault v. United States, 100 F.3d 1525, 1529 (Fed. Cir. 1996) (en banc), a trail use agreement had been reached and the railroad corridor had been converted into a hiking and biking trail.

[6]As the Federal Circuit has explained in Caldwell, "the NITU operates as a single trigger to several possible outcomes. It may, as in [Caldwell], trigger a process that results in a permanent taking in the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked. Alternatively, negotiations may fail, and the NITU would then convert into a notice of abandonment. In these circumstances, a temporary taking may have occurred." 391 F.3d at 1234 (internal citations omitted) (emphasis added). The Federal Circuit further noted that "[i]t is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues." Id.; see also id. at 1234 n.8 (citing permitting cases). Plaintiffs' claims in this lawsuit present the first time that a court has been asked to decide how temporary claims should be analyzed in the Trails Act context. As noted above, the Federal Circuit made clear that Caldwell did not decide that issue. Id. at 1234 n.7.

Plaintiffs emphasize that, in two recent Trails Act cases, the "date of taking" for purposes of defining class membership and/or just compensation was determined to be the date of the NITU. Pls.' SJ Opp'n at 25-27. By "agreeing [in those cases] to pay 'just compensation' to those land owners that held title on the date of the NITU," Plaintiffs argue, the NITU must be considered – in both those cases and in the instant case – to have resulted in a compensable physical taking. Plaintiffs, however, overlook a very important distinction between the facts of the cited cases and the instant case. Notably, in the cases cited by Plaintiffs, it was undisputed that trail use agreements had been reached. See Carl Junction R-1 School District v. United States, Case No. 05-3L, Docket No. 1 Compl. at ¶ 20; Docket No. 4 Ans. at ¶ 20 (stating that trail use agreement was reached); Miller v. United States, 67 Fed. Cl. 542, 544 & 544 n.3 (2005) (stating that trail use agreement was reached and railroad was converted to public-use trail). Thus, the claim accrual cases cited by Plaintiffs do not resolve or provide guidance on how this Court should analyze Plaintiffs' novel claims in this case.

### B. The Nature of the Government Action, Not the Impact on the Property Owner, Defines the Type of Taking that May Have Occurred.

Plaintiffs assert[7/] that "the federal government, by operation of the federal Trails Act,

---

[7/]Plaintiffs rely upon their own affidavits in an attempt to prove these assertions. See, e.g., Pls.' SJ Opp'n at 14 (citing Docket. No. 64 Exs. 1-3). Plaintiffs' affidavits are of no moment, however, given that their assertions are legal conclusions, rather than factual allegations. See RCFC 56(e) (requiring that affidavits "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); cf. Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 982 (8th Cir. 2004) ("We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact.").

excluded these property owners from occupation and use of their land and prevented them from excluding others from using their land." Pls.' SJ Opp'n at 4, 11-16. Plaintiffs then claim that these legally unsupported assertions somehow prove that a physical taking has occurred. This argument, however, suffers from a fundamental flaw: Plaintiffs are attempting to base their claim of a hypothetical taking on the alleged impact on a property owner. Even assuming Plaintiffs in fact owned the right-of-way adjoining their properties, however, the sole relevant issue for establishing the nature of the taking – physical versus regulatory – is the nature of the governmental action, not the impact on the alleged property owner. Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1136-37 (Fed. Cir. 2004) (recognizing that the nature of the government action, physical invasion versus regulatory restriction, not the impact on the plaintiffs' ability to use their property, defined the nature of the taking). In fact, as explained in Defendant's moving papers, the effect on two property owners can be identical and yet in one instance the property owner may have suffered a physical taking, while in the other instance, the property owner will have suffered a regulatory taking. See Def.'s SJ Mem. at 19 n.12. The distinction between regulatory and physical takings claims, then, will be determined based upon the nature of the governmental action. Here the governmental action that allegedly impacted the right-of-way was the regulatory issuance of a NITU, not a physical invasion.

Plaintiffs expend substantial energy in arguing that the ability to enter one's property and the right to exclude others from one's property are incidents of ownership of real property. Pls.' SJ Opp'n at 15-16. Defendant does not dispute that these are, in fact, often incidents of real property ownership. The nature of any alleged taking, however, is not defined by the existence

of such rights, even if they are theoretically abridged by the government.[8] Instead, as explained above, the critical determinant is the nature of the governmental action. And, as instructed by the Supreme Court in Loretto – a case oddly cited by Plaintiffs in support of their argument despite its support for Defendant's position – the government action must lead to "a permanent physical occupation of [the] property" before a physical taking occurs. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 441 (1982). The instant case fails to meet either of the critical elements of the Loretto test: (1) no new physical occupation of the right-of-way has resulted from the issuance of the NITU; and (2) any impact on the use of the property as a result of the NITU lasted only temporarily (i.e. during the negotiating period, which has now expired). Instead, in the instant case there is a regulatory action by the STB – the issuance of the NITU – which resulted in nothing more than a temporary moratorium on the railroad's authorization to abandon its line. As set forth in Defendant's opening brief, the overwhelming weight of the authority is that temporary moratoria caused by governmental regulatory proscriptions are not physical takings. Def.'s SJ Mem. at 22-24.

---

[8] The case primarily relied upon by Plaintiffs to support the existence of the right of a property owner to exclude others from property, in fact, supports the conclusion urged on the Court by Defendant in this case. In Kaiser Aetna v. United States, the Court held that the government had physically taken the plaintiffs' property interests by interfering with the plaintiffs' rights to exclude others from their property. 444 U.S. 164, 180 (1979). In Kaiser, however, the Court based the physical taking on the fact that the government's actions went beyond regulation of a pond that had been converted into a navigable waterway, and instead, had allowed the plaintiffs' property to be "physically invade[d]," which prevented the plaintiffs from excluding others from their property. Id. ("the imposition of the navigational servitude in this context will result in an actual physical invasion of the privately owned marina"). No such physical invasion by the government or the public has occurred here as the result of the issuance of the NITU.

**C. No Physical Invasion of the Right-of-Way Has Occurred as the Result of the STB's Issuance of the NITU.**

In the face of the realization that the NITU has not led to any physical invasion of their property, Plaintiffs now argue that the right-of-way has been physically invaded by the government in the form of border patrol agents conducting their police duties. Plaintiffs offer this post hoc claim despite the fact that it was not plead in their Complaint and was not raised at any point in this litigation, until the filing of Plaintiffs' brief in opposition to Defendant's motion for summary judgment. For this reason, this Court should reject Plaintiffs' contention out of hand. If Plaintiffs wish to advance such an argument in this Court, they should seek leave to file a Second Amended Complaint setting forth such allegations.

Moreover, even if Plaintiffs could prove that they own the portions of the railroad right-of-way adjacent to their property, they do not possess a property interest that allows them to exclude police officers in the function of their duties.

**1. Plaintiffs Have Not Plead a Physical Invasion by the Border Patrol.**

Plaintiffs argue that the "federal Border Patrol agents have made daily use of the Plaintiffs' land as an access road." Pls.' SJ Opp'n at 4. To the extent that Plaintiffs seek to allege that the actions of the Border Patrol have taken their property, they failed to plead such a claim in their First Amended Complaint.[9] See Docket No. 6. At this stage of the litigation,

---

[9] Of course, any actions allegedly taken by the Border Patrol are completely unrelated to the operation of the Trails Act and the July 25, 2006, NITU, which Plaintiffs allege constitutes the governmental action that took their property. Assuming Plaintiffs' allegations are correct, the NITU did not direct the Border Patrol to enter the right-of-way, nor did it grant to the Border Patrol the right to enter the right-of-way. Thus, the governmental action at issue here, the issuance of the NITU, simply did not result in any physical invasion of the right-of-way.

given that Defendant has answered the First Amended Complaint, Plaintiffs must seek leave of this Court before they can amend their Complaint a second time. RCFC 15(a). Moreover, Plaintiffs cannot use their response to Defendant's Motion for Summary Judgment as a means to circumvent the requirements of RCFC 15(a). In addition, even if Plaintiffs had properly sought and received leave of the Court to file a Second Amended Complaint, Defendant would be entitled to appropriately challenge the claim on threshold issues such as statute of limitations or ripeness, before being required to challenge the claim through motions for summary judgment. Moreover, if threshold challenges were unsuccessful, it would be patently unfair and prejudicial to Defendant to be forced to respond to these facts without time to pursue its own investigation and without the aid of discovery. Thus, the United States respectfully suggests that the Court may not address these issues unless and until Plaintiffs follow the proper procedure to add a new claim to their case.

**2. Plaintiffs Have No Property Right to Exclude the Border Patrol**.

In addition, even assuming Plaintiffs held fee title to the relevant property, they do not possess a compensable property right to exclude Border Patrol agents from their property because the entry by the Border Patrol under such circumstances is an exercise of the United States' police power which has traditionally not been viewed as giving rise to a claim for compensation. Moreover, Plaintiffs' allegations related to the Border Patrol are vague and, even if accepted as true, do not include facts sufficient to show the type of permanent and exclusive use that would be necessary to demonstrate a Fifth Amendment taking.

**a. Background Principles Establish That the Right to Exclude the Border Patrol from Property Is Not Among the Sticks in Plaintiffs' Bundle.**

In determining whether the government's actions here constituted an unconstitutional taking, this Court must address the threshold issue of whether Plaintiffs have a protected property right, the deprivation of which entitles them to compensation under the Fifth Amendment. Colvin Cattle Co. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212 (Fed. Cir. 2005); Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). That is, do Plaintiffs possess in their bundle of property rights a stick that allows them to exclude government agents in the exercise of longstanding police powers. M & J Coal Co. v. United States, 47 F.3d 1148, 1153 (Fed. Cir. 1995) (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029 (1992)). The need for Plaintiffs to demonstrate a compensable property interest is applicable to both physical takings claims, Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003), and regulatory takings claims, Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993). It is equally well established that Plaintiffs bear the burden of proving the existence of a legally-cognizable property interest. Id.

Accordingly, the government may assert that a pre-existing limitation on a Plaintiffs' property title prevents them from establishing that the property interest at issue is one which the law recognizes as compensable. Lucas, 505 U.S. at 1028-29. These restrictions, imposed upon a property interest by "background principles" (id. at 1029), may serve to limit a property owner's ability to establish his property interest is compensable:

It seems to us that the property owner necessarily expects the uses of his property

> to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; "[a]s long recognized, some values are enjoyed under an implied limitation and must yield to the police power."

Id. at 1027 (footnote omitted) (quoting Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922)).

Background principles can have as their source state, federal or common law. Lucas, 505 U.S. at 1030. Thus, federal law can serve to limit the compensability of a plaintiff's property interest. American Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1378 (Fed. Cir. 2004).

The Immigration and Nationality Act of 1952 specifically granted the Border Patrol the right, without a warrant, to have access to private lands within 25 miles of the border to prevent illegal entry of aliens into the United States. 8 U.S.C.§ 1357(a)(3). As indicated, this section was first enacted in 1952, over 55 years ago. As such, the statute confirms that there is a longstanding understanding that property owned within 25 miles of an international border is subject to entry by the Border Patrol for law enforcement purposes.

The governmental action at issue here is of the type that has not traditionally been considered to be an appropriation of property for a public use. Instead, the alleged activities of the Border Patrol on Plaintiffs' property fall into the category of government intrusions which are traditionally considered to be a proper exercise of the government's police power, and thus noncompensable. Acadia Technology, Inc. v. United States, 458 F.3d 1327, 1332 (Fed. Cir. 2006); AmeriSource Corp. v. United States, 75 Fed. Cl. 743, 747 (2007). Few functions are more intrinsic to the purpose and function of a government than the enforcement of its criminal laws – the exercise of the "police power" in its strictest sense.

Generally, actions of the United States in carrying out its law enforcement duties have

been found not to constitute compensable takings under the Fifth Amendment.[10] "Government action aimed at protecting . . . its citizens 'traditionally has constituted a non-compensable exercise of the Government's police power." Alde v. United States, 28 Fed. Cl. 26, 34 (1993) (citing Jarboe-Lackey Feedlots, Inc. v. United States, 7 Cl. Ct. 329, 338-39 (1985)).

Thus, any actions of the Border Patrol on the right-of-way – even if the property is owned by Plaintiffs – would not give rise to a right to compensation under the Fifth Amendment because this type of government law enforcement activity has not traditionally been considered to constitute an appropriation of property for public use, but is instead a non-appropriative exercise of the sovereign's police power. Acadia Technology, 458 F.3d at 1332.

**b. Any Entry by the Border Patrol onto Plaintiffs' Property Does Not Rise to the Level of a Taking.**

Even if the Border Patrol has entered upon the right-of-way and the right-of-way is actually owned by Plaintiffs, the action of the Border Patrol alleged by Plaintiffs would not give

[10] The most common factual context for these types of non-compensable police power exercises have been scenarios involving the retention or forfeiture of property related to criminal or civil legal proceedings. See, e.g., Seay v. United States, 61 Fed Cl. at 35 (2004) (property damaged during retention for criminal investigation even though the criminal investigation did not result in a prosecution); One (1) 1979 Cadillac Coupe De Ville, 833 F.2d 994, 1000 (Fed. Cir. 1987) (retention of property for forfeiture even though jury ultimately found vehicle had not been used in criminal transaction); United States v. $7,990 in U.S. Currency, 170 F.3d 843, 845 (8th Cir. 1999) (forfeiture of contraband is an exercise of government's police power, not its eminent domain power). But the realm of non-compensable police power exercises is not limited to forfeiture or retention cases. See, e.g., Miller v. Schoene, 276 U.S. 272, 279-80 (1928) (government-ordered destruction of red cedar trees to prevent the infection of commercial apple orchards); Mugler v. Kansas, 123 U.S. 623 (1887) (prohibition on manufacturer and sale of alcoholic beverages did not constitute a taking); Paradissiotis v. United States, 304 F.3d 1271, 1274 (Fed. Cir. 2002) (measures taken to serve national security interests may negatively effect the value of individual contract rights, but those effects have not been recognized as a taking which is compensable under the Fifth Amendment).

rise to the level of a physical taking. The entry onto the property alleged by Plaintiffs is of a transitory nature; its purpose is merely to locate illegal immigrants and apprehend them.[11] No Border Patrol agents are permanently stationed on the right-of-way. The Border Patrol entries alleged here are the sort of infrequent and transitory physical invasions that have been found to lack the permanence and significance necessary to qualify as a physical taking. As the Federal Circuit has noted,

> [a] physical occupation, as defined by the [Supreme] Court, is a permanent and exclusive occupation by the government that destroys the owner's right to possession, use, and disposal of the property.

Boise Cascade Corp. v. United States, 296 F.3d 1339, 1353 (Fed. Cir. 2002). Transitory physical invasions do not rise to the level of a permanent physical occupation: "[p]hysical invasions (as distinct from physical occupations) thus fall outside the Loretto rule." Id. In the instant case, the alleged Border Patrol crossings of the right-of-way are, as admitted by Plaintiff, transitory in nature and, thus, cannot form the basis for a permanent physical taking claim.

---

[11] Plaintiffs have submitted a May 13, 2008, letter that the Ladd family Plaintiffs sent to Joe Cruz, United States Border Patrol. See Docket No. 64-2 (Exhibit 4). The letter improperly suggests that the portion of the railroad corridor that abuts the Ladd family Plaintiffs' property has been abandoned when, in fact, it has not. In the letter, the Ladd family Plaintiffs assert that they own the land underlying the railroad corridor that abuts their property and incorrectly allege that the United States' counsel has stated that "the federal government's jurisdiction over our land ceased on January 29, 2007." Id. The letter purports to quote statements by Defendant's counsel that SPROC had consummated abandonment of 28.1 miles of the railroad right-of-way. Indeed, SPROC has consummated abandonment of 28.1 miles of the railroad right-of-way. See Ex. F. However, the Ladd family Plaintiffs' property does not abut any of these 28.1 miles of abandoned corridor. Neither Defendant nor its counsel have ever stated that federal jurisdiction over the railroad corridor that abuts the Ladd Family Plaintiffs' property has ended. It has not.

## II. PLAINTIFFS DO NOT POSSESS A COMPENSABLE PROPERTY INTEREST IN THE RAILROAD CORRIDOR BECAUSE THE PRIVATE CONVEYANCE DOCUMENTS GRANTED FEE TITLE TO THE RAILROAD.

As described in Defendant's opening memorandum, much of the railroad corridor that abuts the named Plaintiffs' properties was conveyed to the railroad through ten private conveyance documents.[12/] See Docket No. 56, Defs.' SJ Mem. at 30-36 & Straup Decl. These conveyance documents demonstrate the original landowners' intent to convey fee title to the railroad.

The two deeds that conveyed a portion of the railroad corridor that abuts the Lindsey, Castro, and Heinzl Plaintiffs' properties expressly state that the original landowners granted "fee" title to the railroad. See id. at 34-35, Straup Decl. Ex. 7 (conveying "in fee simple, all that certain lot, piece or parcel of land"), Ex. 8 (conveying "in fee somple [sic], all that certain lot, piece or parcel of land"). Although Plaintiffs acknowledge that the deeds state that the land is conveyed in fee simple, they nonetheless argue that "this is not outcome determinative." Docket No. 63, Pls.' SJ Opp'n at 37. However, Plaintiffs provide no basis in Arizona law for this Court to depart from the plain meaning of the language of the conveyance documents. Plaintiffs cite excerpts of Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996) (en banc), to support their argument. However, the Federal Circuit's analysis of the conveyance instruments in that case was based on Vermont statutes and case law, which are not relevant here. Under Arizona law, if a deed is "unambiguous, the intent of the parties must be discerned from the four corners of the

[12/] Portions of the corridor were also conveyed through the General Railroad Right-of-Way Act of 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)) (the "1875 Act"). Defendant has moved to stay resolution of Plaintiffs' 1875 Act claims pending resolution by the Federal Circuit of Ellamae Phillips Co. v. United States, No. 2008-5042 (Fed. Cir.). See Docket Nos. 54, 68.

document." Spurlock v. Santa Fe Pacific R. Co., 143 Ariz. 469, 474 (Ariz. App. 1984). These two deeds plainly purport to convey land in "fee simple." There is no language in the deeds that limit this conveyance nor is there language reserving in the grantors any reversionary interests. As such, these documents conveyed the lands in fee to the railroad. Cf. Molina v. Ramirez, 138 P. 17, 19-20 (Ariz. 1914) (holding that a deed that purported to convey lands described in fee simple is "unquestionably a fee-simple deed").

The remaining deeds also demonstrate an intent to convey fee title to the railroad. Plaintiffs argue that "under Arizona law," an instrument conveying a "right of way" to a railroad conveys only an easement.[13/] See Pls.' SJ Opp'n at 28-29 (citing Atlantic & P.R. Co. v. Lesueur, 19 P. 157 (Ariz. Terr. 1888), and Boyd v. Atchison, T. & S.F. Ry. Co., 4 P.2d 670 (Ariz. 1931)). This argument fails for two reasons. First, the two cases cited by Plaintiffs – Lesueur and Boyd – did not interpret Arizona state law, but rather analyzed a specific, federal land grant – the Act of Congress of July 27, 1866.

Second, unlike the granting clause of the 1866 Act, the granting clauses in the private conveyance documents at issue here did not grant a "right of way," but instead granted pieces or parcels of land. The 1866 Act, which incorporated the Atlantic and Pacific Railroad Company, states that "the right of way through the public lands is granted . . . for the construction of a railroad and telegraph, to the extent of 100 feet on each side of said road . . . ." Lesueur, 19 P. at

[13/] Three of the ten conveyance documents make no reference to a "right of way." See Straup Decl. Exs. 7, 8, 10. As such, Plaintiffs' argument must fail with respect to these land grants. See 23 Am. Jur. 2d Deeds § 227 ("In the absence of language relating to the use or purpose of the grant, or limiting directly or indirectly the estate conveyed, a conveyance of a definite strip, piece, parcel, or tract of land is generally construed as passing an estate in fee.").

158 (citing 14 Stat 292) (emphasis added). In contrast to this grant of a "right of way," the private conveyance documents at issue in this case all grant "land" to the railroad. Specifically, the six deeds that granted a portion of the corridor that abuts the Ladd Plaintiffs' property state that they "doth bargain, sell, grant, alien, release, remise and confirm . . . the following described piece or parcel of land situate in the County of Cochise, Territory of Arizona, as and for a right-of-way of the El Paso and Southwestern Railroad, through, along and over the same . . . ." Straup Decl. Ex. 1 (emphasis added); see also id. Exs. 2-6 (containing almost identical language). The two deeds that conveyed a portion of the corridor that abuts the Miller Plaintiffs' property similarly convey land. See Straup Decl. Ex. 9 (conveying a "strip of land"), Ex. 10 (conveying "described lands").

Plaintiffs note that some of the conveyance documents state that the grant of land was "as and for a right of way" of the grantee railroad (see Straup Decl. Exs. 1-6, 9). As Defendant has shown, however, Arizona state law indicates that language describing the purpose of a land grant will not convert an otherwise fee simple land grant into a lesser estate.[14] Cf. Lacer v. Navajo County, 687 P.2d 404 (Ariz. App. 1983). In addition, while not controlling precedent, courts in other jurisdictions that have considered similar conveyance documents that grant a piece or parcel of land to a railroad company, but which state that the conveyance of land is for a right of way or railroad purposes, have held that the railroad held fee title.[15] E.g. Hash v. United States,

---

[14] The United States believes that the Arizona state law cited herein shows that the relevant conveyance documents transferred fee title to the railroad. However, should this Court determine that there is not controlling precedent, certification of the issue to the Arizona Supreme Court may be appropriate. See Ariz. Rev. Stat. Ann. § 12-1861 (2008).

[15] Plaintiffs correctly state that the nature of the property interest conveyed by the private conveyance documents is a matter of Arizona state law. Pls.' SJ Opp'n at 31. Yet, Plaintiffs

454 F. Supp. 2d 1066, 1076-77 (D. Idaho 2006) (deed granting "a strip of land for a right of way . . . " held to convey fee title to railroad); Penn Cent. Corp. v. Commonwealth Edison Co., 512 N.E.2d 118, 119-21 (Ill. App. 1987) (deed granting land "for purpose of enabling Company to construct their said Road . . ." held to convey fee title to railroad); Rowell v. Gulf, M. & O.R. Co., 28 So.2d 209, 211 (Ala. 1946) ("in deeds granting 'land' rather than a 'right,' the fact that the instrument contains additional language embodying some reference to its contemplated use as a 'right of way' does not without further qualifying terms operate to limit the estate conveyed or cut it down from a title in fee to an easement.") (citation omitted); Killgore v. Cabell County Ct., 92 S.E. 562 (W. Va. 1917) (a grant of land "for the construction of a double track of railway" conveyed an estate in fee simple absolute); see also 74 C.J.S. Rail § 185; 65 Am. Jur. 2d Rail § 54; 23 Am. Jur. 2d Deeds § 267.

Because Plaintiffs have not shown that they have any reversionary interest in the railroad corridor, this Court should grant summary judgment in favor of Defendant.

---

extensively rely upon decisions reached under other states' law. Id. & App. A; Opening Mem. App. 4. In particular, Plaintiffs emphasize the Maryland Supreme Court's analysis of whether a grant of a "right of way" to a railroad was a fee or easement under Maryland state law. See Chevy Chase Land v. United States, 733 A.2d 1055 (Md. 1999) (cited and described as "[e]specially noteworthy" in Pls.' SJ Opp'n at 31-32 n. 87)). In addition to not being controlling law, the Chevy Chase Land court analyzed a conveyance document that contained very different language in its granting clause. There, the disputed conveyance was the grant of "a free and perpetual right of way;" the court emphasized that "[t]he granting clause does not state that a piece of land is being conveyed nor does it provide any indication that an estate in fee simple was intended to be conveyed." Id. at 1065-66. In contrast, as described above, all of the conveyance documents at issue here state that a piece of land is being conveyed and, moreover, two of the conveyance documents expressly state that a "fee simple" is intended to be conveyed.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendant's opening memorandum, Defendant respectfully requests that the Court grant its motion for summary judgment.

July 3, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024