**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JACK LADD and MARIE LADD, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-271 L |
| v. | ) | |
| | ) | Honorable Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO SUPPLEMENT THE RECORD**

Although Plaintiffs believe the government's attempt to supplement the record is improper for the reasons stated in Plaintiffs' Motion in Response to Defendant's Motion to Supplement the Record, Plaintiffs would be remiss not to respond to the issues raised by Defendant in the "letter" submitted to the Court on August 6, 2008, from David M. Konschnik, Director of the STB.

Therefore, in response to the government's "supplementation" of the record, the Plaintiffs note the following three points.

**POINT ONE:** **It is not necessary to establish that a railroad right of way was abandoned in order for landowners to bring a claim for the Trails Act taking their reversionary interest in their land.**

To the extent that the government is arguing in its "supplemental" filing that abandonment of the railroad right of way has not occurred, under settled law of the Federal Circuit, such is an irrelevant consideration.

The Federal Circuit in *PRESEAULT II* wrote, "we find the question of abandonment is not the defining issue, since whether abandoned or not the Government's use of the property for a public trail constitutes a new, unauthorized use." *PRESAULT V. UNITED*

*STATES, (PRESEAULT II),* 100 F.3d 1525, 1549 (Fed. Cir. 1996). The Federal Circuit again reiterated this point in *TOEWS*:

> Further, it is the Government's view that, under California law, there was no abandonment or extinguishment of the easements caused by the federal actions under §8(d) of the [Trails Act]. The trial court concluded that, as a factual matter, the railroad's management had acted in an unequivocal and decisive manner clearly showing an intention to abandon that section of the line. *** However, just as the trial court itself indicated that its conclusion on this matter was not necessary to the result reached, for the reasons that follow we need not definitively decide this issue either." *TOEWS*, 376 F.3d at 1371,1375 – 76 (Fed. Cir. 2004). (emphasis supplied).

The Federal Circuit expressly held that landowners' claim for a Trails Act taking arose upon issuance of the NITU even though "the railroad continued to use the right-of-way for railroad purposes after the NITU was issued" and the railroad had not abandoned the right of way. *BARCLAY V. UNITED STATES*, 4432 F.3d 1368, 1374 (Fed. Cir. 2006). "But even if under state law, the reversion would not occur until after federal authorization of abandonment, that state law reversion was still delayed by the issuance of the NITU, and the claim still accrued with the issuance of the NITU. It similarly makes no difference that the railroad use may have continued after the NITU issued. The termination of railroad use was still delayed by the NITU." *Id.* (emphasis supplied.)

These holdings by the Federal Circuit make clear that the issue of abandonment is wholly irrelevant to the question of whether the federal government is liable for the uncompensated taking of Plaintiffs' land.

**POINT TWO: As a matter of Arizona law, the railroad's use of the easement has already been abandoned.**

The question is not who owns the land – the Plaintiffs and their predecessors have always owned the estate in the land. However, the Plaintiffs' land has been burdened by an easement for railroad use. The question of "abandonment" concerns whether the

easement was extinguished and the owner fee estate relieved of that burden when the land was no longer used for a railroad. As we note above, the government is liable for a taking of the Plaintiffs' land, even when the railroad has not yet consummated "abandonment" of the right of way.

However, even were abandonment of the right of way necessary, to the extent that the government is suggesting in its "supplemental" pleading that the STB's continued jurisdiction of the right of way means that, as a matter of Arizona law it has not been abandoned, the government is wrong.

The government and Plaintiffs agree that the railroad right of way is no longer used for the operation of a railroad. The San Pedro Railroad Operating Company ("SPROC") "decided to abandon the line in March 2005 due to limited freight business and the lack of prospects for future traffic increases." (STB's February 3, 2006, decision." *See* Defendant's Response to PFUF, 36.) The parties agree that on June 11, 2005, the SPROC received notification from the Federal Railroad Administration ("FRA") "recommending that SPROC cease railroad operation over the line due to the poor condition of a bridge at milepost 1044.4 at the northern end of the Douglas Branch." (*See* Defendant's Response to PFUF, 36-37). The parties agree that the SPROC stated that "in August 2005, heavy rains damaged substantial segments of the line" between milepost 1061.9 and 1077.9. (*See* Defendant's Response to PFUF, 37). The government further agrees that the SPROC stated that it would need $710,030 to rehabilitate the bridges along the line (which includes $136,496 to repair the bridge at milepost 1044.4) to bring the line to the FRA class 1 track standards. (*See* Defendant's Response to PFUF, 38-39). The government does not dispute that the STB found that "the subject line

currently carries no commodities because the condition of a railroad bridge located at MP 1044.4 has deteriorated so substantially that the [FRA] instructed SPROC to suspend operations over the bridge, effectively ending all rail service…" (*See* Defendant's Response to PFUF, 40). Further, the rails and ties have been removed from the former right of way.

In a similar case, the Kansas Supreme Court noted that rails and ties had been removed, railroad operations over the land had ceased and that the easement was in a state of disrepair and fences had not been maintained. On this basis, the Kansas Supreme Court considered the railroad easement abandoned. The court held that, "A rule in the overwhelming majority of cases[1] on the subject is that evidence of an intention to abandon an easement for a railroad right of way may be found in the deliberate removal of tracks rendering the operation of a railroad impossible." *Pratt v. Griese* 196 Kan. 182, 409 P.2d 777, 781 (1966).

Apart from the federal Trails Act and the STB's issuance of the NITU and the STB's continuing jurisdiction of the former railroad right of way, the Ladd's and the other Plaintiffs would have the right to use and possess their land. Under Arizona law, the right of way has been abandoned for railroad purposes. The only reason the Plaintiffs cannot access their property is because the NITU precluded their right under Arizona law to do so.

---

[1] The Kansas Supreme Court (as does Arizona) looked to other jurisdictions. The Court was correct. The overwhelming majority of jurisdictions hold that a railroad's intention to abandon a right of way has been established when the rails and ties are removed. We could compile numerous cases from almost every state (we have not researched the law in Hawaii) reaching such a holding. Should this court find it helpful, the Plaintiffs would gladly provide such a national summary of cases reaching this holding.

**POINT THREE: So long as the STB retains jurisdiction of the right of way "interim trail use" and "railbanking" pursuant to the Trails Act is a possibility. The fact that the "negotiating period" under the original NITU has ended is meaningless.**

The government's supplemental pleading notes that the negotiating period for a "trail use agreement" under the original NITU and the first extension has expired. So what. So long as the STB retains jurisdiction over the Ladd's (and the other Plaintiffs') land, the STB can authorize it to be converted to trail use and "railbanked" under the Trails Act and for so long as the STB retains jurisdiction over the Plaintiffs' land, it has precluded their "reversionary" right to their property.

The government itself acknowledges that the NITU is the event that created the taking irrespective of abandonment. (*See* Plaintiffs' Response to the Defendant's Cross-Motion for Summary Judgment (Document 63), 19-25 (Section I.(C) i.-iii.)). Even though the negotiating period in the original NITU has expired, the STB has precluded abandonment, and so long as the STB retains jurisdiction over the right of way, it may issue another NITU. The STB will grant repeated extensions to NITU's and may authorize trail use even though the negotiation period under the original NITU has expired so long as the STB retains jurisdiction. *See* JOST V. SURFACE TRANSPORTATION BOARD, 194 F. 3d 79 (D.C. Cir. 1999) (holding that the STB "shall impose a trail condition, and not permit abandonment of a line whenever a railroad is prepared to convey the right-of-way to a [trail sponsor] 'the statute gives the [STB] 'little, if any, discretion to forestall a voluntary agreement to effect a conversion to trail use.'").

The government agrees that "Where, as here, the carrier has not consummated the abandonment at the end of the previously imposed negotiating period and has indicated its willingness to continue negotiations by requesting an extension…the NITU

negotiating period may be extended." (*See* Defendant's Response to Plaintiffs' Proposed Findings of Fact ("PFUF") (Document 55), 44).

Under the Federal Circuit's decisions in JOST and BARCLAY, and the STB's own statements, the fact that the original NITU negotiating period expired means nothing. The original NITU operated to take the Plaintiffs' reversionary right to their land and their reversionary right to their land remains "taken" by the STB so long as the STB retains jurisdiction of their land. Also, so long as the STB retains jurisdiction of the Plaintiffs' land, trail use remains a possibility. And, therefore, Plaintiffs' reversionary rights to their property have been taken. The government's "supplemental" statement does not change this fact.

| | |
|---|---|
| Date: August 6, 2008 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>MEGHAN S. LARGENT<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br>ATTORNEYS FOR PLAINTIFFS |